1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| PATRICK KUNKEL, | CASE NO. 1:09-cv-00686-YNP PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| N. DILL, et al., | |
| Defendants. | (Doc. 1) |
| _____ / | RESPONSE DUE WITHIN 30 DAYS |

10

11

12

13

14

15

16          Plaintiff Patrick Kunkel ("Plaintiff") is a state prisoner proceeding pro se and in forma

17  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

18  California Department of Corrections and Rehabilitation and is incarcerated at Kern Valley State

19  Prison in Delano, California ("KVSP").  Plaintiff is suing under section 1983 for the violation of his

20  rights under the Eighth and Fourteenth Amendments of the U.S. Constitution.  Plaintiff names Nate

21  Dill (associate warden), Kelly Harrington (warden), A. Hedgpeth (warden), M. Knowles (warden),

22  Chris Chrones (warden), C. Pfeiffer (appeal coordinator), S. Adame (office tech), Tarek Tadros

23  (dentist), M. Mendoza (dentist assistant), James A. Smith (chief dental officer), Guadalupe M.

24  Garcia (dentist), S. Nguyen (dentist), S. Zamora (health care manager), H. Tyson (captain), Sherry

25  Lopez (chief medical officer), Dr. Akanno (doctor), Araich (nurse practitioner), H. Ducusin

26  (registered nurse), S. Wright Pearson (supervising registered nurse), Mohammad Ali (supervising

27  registered nurse), Dileo (doctor), Mackey (licensed vocational nurse), George (registered nurse),

28  Robaina (registered nurse), Vaughan (certified nurse assistant), and M. Nair (supervising registered

1

1   nurse) as defendants.  For the reasons set forth below, the Court finds that Plaintiff's complaint states

2   some cognizable claims and orders Plaintiff either to notify the Court of his willingness to proceed

3   only on the claims found to be cognizable, or to file an amended complaint that cures the deficiencies

4   identified by the Court in this order.

5   **I.       Screening Requirement**

6       The Court is required to screen complaints brought by prisoners seeking relief against a

7   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

8   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

9   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

10  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

11  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

12  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

13  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

14      "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

15  exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S.

16  506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and

17  plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).

18  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the

19  grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  However, "the liberal pleading

20  standard . . . applies only to a plaintiff's factual allegations."  Neitze v. Williams, 490 U.S. 319, 330

21  n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements

22  of the claim that were not initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257

23  (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

24  **II.      Background**

25      Plaintiff claims that Defendants violated his rights under the Eighth Amendment by delaying

26  his dental care, providing deficient dental care, and providing deficient medical care for an ankle

27  injury.

28  ///

2

1    On July 18, 2006, Plaintiff filled out a request seeking dental care for a broken tooth.

2  Plaintiff was not seen until February 1, 2007 despite filing numerous requests.  On February 1,

3  Defendant Garcia determined that there was a deep hole in Plaintiff's tooth that needed to be filled

4  right away.  Plaintiff was told that he would be called back within a week to fix the problem.

5  Plaintiff was refused treatment on February 8, 2007 and over the next four months, Plaintiff filed

6  repeated requests for dental treatment.

7    On April 2007, Plaintiff requested an Olsen Review of his medical file.  Plaintiff was given

8  an Olsen Review on May 24, 2007 and discovered that his dental records were missing from his file.

9  Plaintiff was brought in to dental on May 25, 2007 and was told that the hole in his tooth was so

10  large that the tooth may have to be pulled.  Defendant Garcia filled the cavity in Plaintiff's tooth.

11  Plaintiff's tooth continued to hurt after it was filled and Plaintiff continued to make requests for

12  treatment.  Plaintiff learned that from February 1, 2007 through May 25, 2007, dental staff attempted

13  to call Plaintiff into dental to fix his tooth, but due to custody issues, the correctional officers would

14  not bring Plaintiff to dental.  Plaintiff did not see a dentist again until July 6, 2007.  Defendant

15  Tadros told Plaintiff that he had found no problem with his tooth.  Plaintiff asked Defendant Smith

16  for a second opinion.  Defendant Smith told Plaintiff that the filling looked like it was placed on the

17  nerve and that Plaintiff probably needed a root canal.  However, Smith informed Plaintiff that CDCR

18  does not perform root canals on molar teeth.  Plaintiff was told by Defendant Tadros that he probably

19  had a sinus problem which was causing the tooth ache.  Plaintiff was told to try to handle the pain

20  to see if it improved and to contact medical if there were further problems.

21    On July 7, 2007, Plaintiff had Defendant Davis call dental to pull the tooth.  On July 11,

22  2007, Plaintiff was seen by Defendant Tadros who refused to pull Plaintiff's tooth.  Plaintiff was

23  instead given antibiotics for a possible infection.  On July 13, 2007, Plaintiff was seen by Defendant

24  Araich and told that he did not have a sinus problem.  On August 12, 2007, Plaintiff's temporary

25  filling fell out, and a replacement filling fell out the same day it was put in.  On August 29, 2007,

26  Plaintiff was seen by Defendant Nguyen.  Plaintiff was told that his tooth had to be pulled.

27  Defendant Nguyen refused to give Plaintiff a root canal.

28  ///

1    Plaintiff also claims that he was not given proper medical treatment for his ankle.  Plaintiff

2  was shot in the ankle and knee on June 26, 1998.  A metal hardware was placed in his ankle.  On

3  November 25, 1998, Plaintiff's ankle was not healing correctly and a bone graft was performed.  On

4  August 13, 1999, Plaintiff was scheduled to have the hardware in his ankle removed after

5  experiencing pain.  On September 16, 1999, Plaintiff was transferred into the custody of the

6  California Department of Corrections with a transfer form stating that the hardware in his left ankle

7  had to be removed.

8    On December 1, 2004, Plaintiff was seen by an orthopedic specialist after experiencing pain

9  in his ankle.  Plaintiff was told that due to the extent of the injury he would have chronic pain.

10  Plaintiff was told that if he could deal with the pain, it was recommended to keep the hardware in

11  his ankle.  In fall of 2006, the pain in Plaintiff's ankle began to get more severe.  Plaintiff was seen

12  by Defendant Akanno.  In January 2007, Plaintiff was prescribed pain medication for the chronic

13  pain in his ankle.

14    On June 15, 2007, Plaintiff was seen by Defendant Araich after experiencing more pain in

15  his ankle.  Defendant Araich ordered x-rays, a pediatrist consult, an orthopedic consult, and

16  increased pain medication.  On July 15, 2007, Plaintiff was taken off all of his pain medication by

17  Defendant Araich without receiving any x-rays, a pediatrist consult, or an orthopedic consult.  From

18  July 15, 2007 to October 2007, Plaintiff filed numerous medical requests for his ankle pain.  On July

19  20, 2007, Plaintiff received an x-ray.  On August 10, 2007, Plaintiff was seen be Defendant Ariach.

20  Plaintiff was told that he was taken off his medication because Defendant Ariach though Plaintiff

21  was faking his pain.  Defendant Ariach recommended an orthopedic consult.

22    On September 6, 2007, Plaintiff was seen by the orthopedic specialist who recommended

23  surgery on Plaintiff's left ankle to remove the hardware.  Plaintiff requested treatment from

24  Defendant Ariach for his pain, but was denied again.  On September 16, 2007, Defendant Ariach

25  filed the paperwork for Plaintiff to see a podiatrist.  On September 18, 2007, Plaintiff was seen by

26  the podiatrist and received a cortisone shot in the ankle.  Plaintiff was also warned about the dangers

27  of a "gangleous" cyst on the side of his ankle.  On October 30, 2007, the podiatrist recommended

28  surgery to remove the cyst.  Defendant Ariach saw Plaintiff after the podiatrist visit and stated that

1   she believed the sores on Plaintiff's ankle were self-inflicted, contrary to the podiatrist's diagnosis.

2   On November 14, 2007, Plaintiff had surgery on his ankle to remove the hardware. Plaintiff was told

3   that only two screws got out, the rest got stripped, and the metal plate was left in.

4        Plaintiff returned to KVSP without any pain medication. Medical staff was not available

5   when Plaintiff got back. At 10:30 p.m., Plaintiff had to go "man down" to seek medical help and

6   received pain medication and an ice pack. Plaintiff filed an administrative appeal concerning the

7   lack of post-op care. On November 16, 2007, Plaintiff informed Defendant Araich that the hardware

8   was not completely removed and the cyst was not removed. Defendant Araich did not believe

9   Plaintiff. On November 18, 2007, Plaintiff was told by medical staff that he could not have an ice

10  pack. After calling Defendant Akanno, Plaintiff was given an ice pack for one night. The next day,

11  Plaintiff was denied ice packs.

12       On November 21, 2007, Defendant Araich filed paperwork for Plaintiff to be seen by the

13  orthopedic specialist. On November 25, 2007, Plaintiff filed additional medical requests because

14  his ankle was swelling and he was not getting ice packs. On December 2, 2007, Plaintiff filed a

15  request to see the orthopedic specialist. On December 4, 2007, Plaintiff's sutures were removed.

16  On December 10, 2007, Plaintiff filed a medical request because his ankle was red and leaking fluids

17  from the suture holes. On December 13, 2007, Plaintiff was finally seen by the orthopedic surgeon.

18  On March 3, 2008, Plaintiff was seen by the podiatrist who recommended special shoes to support

19  Plaintiff's ankle.

20  **III.**    **Discussion**

21      **A.**    **Eighth Amendment Claims**

22       The Eighth Amendment prohibits the imposition of cruel and unusual punishments and

23  "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"

24  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.

25  1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1)

26  the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S.

27  825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective

28  requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson,

1    501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met

2    where the prison official's act or omission results in the denial of "the minimal civilized measure

3    of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective

4    requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison

5    official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S.

6    at 302-303). A prison official acts with deliberate indifference when he/she "knows of and

7    disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be

8    aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

9    and he must also draw the inference." Id.

10   "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action

11   under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "A 'serious' medical need exists if the

12   failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

13   wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on

14   other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (quoting Estelle, 429

15   U.S. at 104). Delay of medical treatment can amount to deliberate indifference. See Jett v. Penner,

16   439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett

17   v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000)

18   (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); McGuckin, 974 F.2d at 1059;

19   Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). However, "a complaint that a

20   physician has been negligent in diagnosing or treating a medical condition does not state a valid

21   claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become

22   a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97,

23   106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious

24   medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974

25   F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

26   A defendant is only liable under section 1983 for the constitutional violations that they cause.

27   "The inquiry into causation must be individualized and focus on the duties and responsibilities of

28   each individual defendant whose acts or omissions are alleged to have caused a constitutional

6

1    deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).  Therefore, the Court analyzes

2    each individual defendant's actions and/or omissions to determine whether their conduct rises to the

3    level of a constitutional violation.

**1.      Delay in Medical Treatment**

5          Plaintiff alleges that he first filed an administrative appeal on June 18, 2006.  Plaintiff was

6    not seen by dental staff for a diagnosis until February 1, 2007.  Plaintiff experienced another four

7    month delay after he was diagnosed and did not received treatment for his dental problems until May

8    2007.  Plaintiff alleges that he experienced immeasurable amounts of pain and that his dental

9    conditioned worsened due to the delay.  Thus, Plaintiff states a cognizable claim under the Eighth

10   Amendment against Defendants who caused the delay in his medical treatment and acted with

11   deliberate indifference because they had actual knowledge that the delay posed an excessive risk to

12   Plaintiff's health.

**i.      C. Pfeiffer**

14         Plaintiff alleges that C. Pfeiffer was the appeals coordinator responding to Plaintiff's

15   administrative appeals.  Plaintiff alleges that Pfeiffer continuously screened out Plaintiff's appeals

16   that stated he was in serious amounts of pain.  Thus, Defendant Pfeiffer had knowledge that Plaintiff

17   needed dental treatment and delayed treatment by screening out Plaintiff's administrative appeals.

18   Plaintiff states a cognizable claim against Defendant Pfeiffer for delaying Plaintiff's dental treatment.

**ii.      Guadalupe M. Garcia, M. Mendoza, and S. Adame**

20         Plaintiff alleges that Defendants Garcia, Mendoza, and Adame knew about Plaintiff's

21   problem since he was first diagnosed on February 1, 2007.  However, Plaintiff does not allege how

22   they caused Plaintiff's treatment to be delayed.  In fact, Plaintiff alleges that between February 1,

23   2007 to May 25, 2007, dental staff, which presumably refers to Garcia, Mendoza, and Adame, tried

24   to call Plaintiff for treatment, but correctional officers refused to bring him due to custody issues.

25   Therefore, Plaintiff fails to state a cognizable claim against Defendants Garcia, Mendoza, and

26   Adame for the delay in Plaintiff's dental treatment.

27   ///

28   ///

### iii.     H. Tyson

Plaintiff alleges that H. Tyson was the correctional captain that was responsible for making sure Plaintiff was escorted to his emergency medical appointments.  Although Plaintiff alleges that correctional officers were not escorting Plaintiff to his appointments because of correctional issues, Plaintiff does not identify what the correctional issues were.  Plaintiff fails to allege that Defendant Tyson acted with deliberate indifference.  Plaintiff does not allege if Defendant Tyson had actual knowledge of an excessive risk to Plaintiff's health if Plaintiff was not escorted to his medical appointments.  Deliberate indifference requires actual knowledge of an excessive risk -- it does not rise to the level of an Eighth Amendment violation if Defendant Tyson should have known about the risk to Plaintiff's health.  Plaintiff fails to state a cognizable claim against Defendant Tyson for violating the Eighth Amendment.

### iv.     M. Knowles, Chris Chrones, and A. Hedgpeth

Plaintiff alleges that M. Knowles, Chris Chrones, and A. Hedgpeth were wardens responsible for making sure there was sufficient dental staff and prison guards to escort inmates to dental.  Plaintiff also alleges that the wardens delayed his medical care by signing off on "PSRs", documents that appear to be related to the custody issues that prevented Plaintiff from getting to dental appointments. Plaintiff does not allege what the custody issues that prevented him from going to the dental appointments were.  It is not clear if the custody issues were legitimate, or if they were mere pretext for causing harm to Plaintiff.  Nor does Plaintiff allege that Knowles, Chrones, or Hedgpeth had actual knowledge about Plaintiff's need for dental care.  In other words, Plaintiff does not allege that Knowles, Chrones, and Hedgpeth had actual knowledge that signing off on the "PSRs" posed an excessive risk of harm to Plaintiff. Plaintiff fails to state a cognizable claim against Defendants Knowles, Chrones, and Hedgpeth for violation of the Eighth Amendment.[1]

///

///

---

[1]To the extent that Plaintiff seeks to hold wardens Knowles, Chrones, and Hedgpeth liable under a theory of respondeat superior, he also fails to state a cognizable claim.  Supervisory personnel are generally not liable under section 1983 for the actions of their employees.  See infra Part III.A.3.

1          **2.      Sufficiency of Medical Treatment**

2          Plaintiff claims the dentists, dental assistants, and nurses violated his rights Eighth

3    Amendment rights by providing deficient dental care.  Plaintiff alleges that medical staff made

4    erroneous diagnoses of his dental problem and provided inadequate treatment for his tooth.

5                    **i.      Guadalupe M. Garcia**

6          Plaintiff alleges that Guadalupe M. Garcia was a dentist at KVSP.  Plaintiff saw Defendant

7    Garcia on February 1, 2007.  Garcia informed Plaintiff that there was a large, deep hole in his tooth

8    that needed to be filled right away, and told Plaintiff that he would be called back within a week to

9    fix the problem.  Garcia saw Plaintiff again on May 25, 2007.  Garcia told Plaintiff that the hole in

10   his tooth was so large that the tooth would have to be pulled.  Garcia filled Plaintiff's cavity, but

11   after the numbing agent went away, the pain returned.  On August 12, 2007, the filling fell out and

12   the pain became unbearable again.

13         Plaintiff's allegations against Defendant Garcia do not rise to the level of a constitutional

14   violation.  It could be implied from Plaintiff's allegations that Garcia provided negligent dental care

15   because the filling she made fell out and the pain remained.  However, the Eighth Amendment's

16   requirement of deliberate indifference is a more culpable standard than negligence.  In order to

17   constitute an Eighth Amendment violation, Garcia must have acted with deliberate indifference.

18   Plaintiff does not allege that Garcia deliberately provided deficient dental care knowing that it would

19   cause an excessive risk to Plaintiff's health.  Plaintiff fails to state a claim against Defendant Garcia

20   for violating the Eighth Amendment.

21                   **ii.      M. Mendoza**

22         Plaintiff alleges that M. Mendoza was a dental assistant at KVSP.  Mendoza was present

23   when Plaintiff was seen by Defendant Garcia on February 1, 2007.  Mendoza helped perform the

24   dental examination and took x-rays.  On May 24, 2007, Plaintiff told Mendoza about the missing

25   dental records in his file.  Mendoza told Plaintiff that she did not have Plaintiff's records or requests.

26         Plaintiff's allegations against Defendant Mendoza do not rise to the level of a constitutional

27   violation. Defendant Mendoza's conduct during the February 1, 2007 dental examination does not

28   appear to be deficient.  Nor does Plaintiff allege that Mendoza took Plaintiff's dental records out of

1  his file, or that Mendoza did so knowing of an excessive risk to Plaintiff's health.  Plaintiff fails to

2  state a claim against Defendant Mendoza for violating the Eighth Amendment.

3                            **iii.    Tarek Tadros**

4        Plaintiff alleges that Tarek Tadros was a dentist at KVSP.  Tadros saw Plaintiff on July 6,

5  2007 and told Plaintiff that he found no problems with his tooth from the x-rays he took.  Tadros told

6  Plaintiff that sinus problems were probably causing the tooth ache.  Plaintiff alleges that a second

7  opinion from Defendant James A. Smith suggested that the filling was placed on Plaintiff's nerve

8  and Plaintiff required a root canal.  Tadros advised Plaintiff to try to handle the pain and call medical

9  if the pain got worse.  On July 11, 2007, Plaintiff saw Tadros again and asked him to pull the tooth.

10  Tadros refused and instead gave Plaintiff antibiotics for a possible infection.  Tadros saw Plaintiff

11  on August 13, 2007 and replaced Plaintiff's temporary filling, but the filling fell out the same day.

12  On August 26, 2007, Tadros saw Plaintiff and noticed swelling and infections in his gums and teeth.

13  Tadros again refused to pull the tooth because of infection and an abscess.  Tadros put in another

14  temporary filling that fell out the next day.

15        Plaintiff fails to allege that Defendant Tadros' actions amounted to deliberate indifference.

16  At most, Plaintiff has alleged that Tadros' diagnosis and treatment of Plaintiff was negligent.

17  Establishing negligence is not sufficient to state an Eighth Amendment claim.  Plaintiff does not

18  allege that Tadros deliberately mis-diagnosed Plaintiff knowing that it would pose an excessive risk

19  to his health.  The allegations show that Tadros provided Plaintiff with antibiotics and attempted to

20  provide fillings for Plaintiff's cavities.  Plaintiff's allegations do not show that Tadros acted with

21  deliberate indifference.  Plaintiff fails to state a cognizable claim against Defendant Tadros for

22  violating the Eighth Amendment.

23                            **iv.    James A. Smith**

24        Plaintiff alleges that James A. Smith was a dentists at KVSP.  After Defendant Tadros told

25  Plaintiff that he believed his pain was from a sinus problem Plaintiff requested a second opinion

26  from Smith.  Smith told Plaintiff that it looked like the filling in his tooth was placed on a nerve and

27  that Plaintiff probably required a root canal.  Plaintiff was told that CDCR does not provide root

28  ///

1    canals on molar teeth.  Plaintiff asked Smith why he has to suffer immeasurable pain after making

2    multiple requests to be treated and Smith allegedly told Plaintiff that he fell through the cracks.

3           Plaintiff claims that Defendant Smith recommended a root canal but CDCR did not provide

4    root canals.  Plaintiff instead received temporary fillings and antibiotics.  However, whether

5    Defendant Smith's actions rose to the level of deliberate indifference in violation of the Eighth

6    Amendment depends on the level of care required by the Eighth Amendment.  Although the

7    recommended root canal may have been a more ideal method of treatment, the failure to provide the

8    root canal does not necessarily amount to an "unnecessary and wanton infliction of pain" in violation

9    of the Eighth Amendment.  Plaintiff provides no allegations that Defendant Smith refused to provide

10    a root canal with actual knowledge that the planned course of treatment would be ineffective and

11    cause the unnecessary and wanton infliction of pain.  Plaintiff fails to state a cognizable claim

12    against Defendant Smith for violation of the Eighth Amendment.

13                **v.**      **Araich**

14           Plaintiff alleges that Araich is a registered nurse at KVSP.  Araich saw Plaintiff about his

15    possible sinus problems after Defendant Tadros told Plaintiff that his pain was stemming from a

16    sinus problem.  Araich told Plaintiff that he did not have any sinus problems.

17           Plaintiff fails to allege that Araich's diagnosis was incorrect or that Araich acted with

18    deliberate indifference.  It is not clear how Araich's actions harmed Plaintiff or exposed Plaintiff to

19    an excessive risk of harm.  Because it is not clear that Plaintiff was harmed or exposed to harm,

20    Plaintiff has not established that Araich acted with deliberate indifference – knowledge of an

21    excessive risk of harm to Plaintiff.  Plaintiff fails to state a cognizable claim against Defendant

22    Araich for violating the Eighth Amendment with respect to his claims concerning dental treatment.

23                **vi.**      **S. Nguyen**

24           Plaintiff alleges that S. Nguyen was a dentist at KVSP. Nguyen saw Plaintiff on August 29,

25    2007. Nguyen told Plaintiff that "there was a peno[sic] abcess[sic] and periapreal[sic] abcess[sic]

26    on my tooth and irriversible[sic] pulpitis[sic] on my tooth." (Compl. ¶ 70.)  Nguyen told Plaintiff

27    that the tooth must come out and was given stronger antibiotics for the infection.  Nguyen refused

28    to give Plaintiff a root canal.

1    Plaintiff fails to allege that Defendant Nguyen acted with deliberate indifference.  Nguyen

2    is only liable for an Eighth Amendment violation if he had actual knowledge of an excessive risk to

3    Plaintiff's health.  Nguyen is not liable under the Eighth Amendment if he negligently failed to

4    provide proper treatment.  Plaintiff does not allege that Nguyen knew that Plaintiff required a root

5    canal and deliberately refused to provide one knowing that it would expose Plaintiff to an excessive

6    risk of harm.  Plaintiff fails to state a cognizable claim against Defendant Nguyen for violation of

7    the Eighth Amendment.

**3.      Dental Treatment Claims Against Supervisory Personnel**

9    Plaintiff alleges that N. Dill (associate warden) and Sharon Zamora (health care manager)

10   were informed of the deficient dental care that Plaintiff was receiving and failed to remedy it.

11   Supervisory personnel are generally not liable under section 1983 for the actions of their employees

12   under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory

13   position, the causal link between him and the claimed constitutional violation must be specifically

14   alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438,

15   441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983

16   based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim

17   that supervisory defendants either: personally participated in the alleged deprivation of constitutional

18   rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a

19   policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving

20   force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal

21   citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

22   Plaintiff alleges that he sent Dill a copy of an administrative appeal regarding his missing

23   dental records.  Plaintiff also alleges that his mother called Dill several times concerning Plaintiff's

24   dental problems, and that Plaintiff also wrote Dill on several occasions regarding his dental

25   problems.

26   Zamora answered Plaintiff's second level appeal concerning his dental care on November

27   14, 2007. Zamora told Plaintiff that the prison only had three dentists and dental assistance and were

28   only available for emergency treatment.

1    Plaintiff seeks to hold Defendants Dill and Zamora liable for having knowledge of the

2  inadequate medical care and failing to take steps to remedy it.  As discussed above, see supra Part

3  III.A.2, Plaintiff fails to state a cognizable constitutional claim regarding the level of treatment he

4  received from medical staff between May 2007 and August 2007.  Although Plaintiff states a

5  cognizable claim for the initial delay in receiving dental care from June 2006 to May 2007, Plaintiff

6  does not allege that Defendants Dill or Zamora were notified of the delay at a point in time when

7  they had the opportunity to remedy the delay.  Plaintiff fails to state a claim against Defendants Dill

8  and Zamora for violation of the Eighth Amendment.

9                              **4.      Ankle Treatment Claims**

10    Plaintiff injured his ankle at some point before he was in CDCR custody.  Hardware was

11  inserted in Plaintiff's ankle to treat the injury.  Plaintiff alleges that medical staff violated his rights

12  under the Eighth Amendment by failing to provide proper medical treatment when it became

13  necessary to remove the hardware in his ankle.  Plaintiff also alleges that medical staff failed to

14  provide necessary post-operative care after Plaintiff received surgery to remove the hardware in his

15  ankle.

16                              **i.      Akanno**

17    Plaintiff alleges that Dr. Akanno saw Plaintiff in Fall 2006 about the pain in his ankle.

18  Akanno prescribed pain medication for Plaintiff in January 2007.  On November 18, 2007, Plaintiff

19  alleges that medical staff called Akanno after Plaintiff requested an ice pack after Plaintiff received

20  surgery on his ankle.

21    It is not clear what the basis of Plaintiff's claims against Defendant Akanno are.  Plaintiff

22  does not allege any facts that show that Defendant Akanno provided deficient medical care, or was

23  deliberately indifferent.  Plaintiff does not allege what Defendant Akanno said when medical staff

24  called him on November 18.  Thus, it is not clear if or how Akanno was responsible for preventing

25  Plaintiff from receiving an ice pack.  Plaintiff fails to state a cognizable claim against Defendant

26  Akanno for violating the Eighth Amendment.

27  ///

28  ///

1        **ii.      Araich**

2        Plaintiff alleges that Defendant Araich saw Plaintiff numerous times regarding his ankle pain.

3    On June 15, 2007, Araich ordered x-rays, increased pain medication, and consults with a pediatrist

4    and orthopedic specialist.  On July 15, 2007, Araich took Plaintiff off his pain medication.  Plaintiff

5    was left in constant pain.   On July 20, 2007, Araich was supposed to arrange for Plaintiff's

6    orthopedic consult but failed to file the proper paperwork.  Araich wrote in Plaintiff's file that

7    Plaintiff did not seem in pain because he laughed at a guard's joke.  Araich ordered x-rays for

8    Plaintiff.  On August 10, 2007, Araich told Plaintiff that she had cut off Plaintiff's pain medication

9    because she thought Plaintiff was faking and was manipulative.  She recommended an orthopedic

10   consult and filed the proper paperwork.  On September 9, 2007, Araich denied pain treatment after

11   Plaintiff saw the orthopedic specialist who recommended surgery to remove the hardware in his

12   ankle.  On September 16, 2007, Araich filed the paperwork for Plaintiff to see the podiatrist.  On

13   October 30, 2007, Araich saw Plaintiff after his podiatrist consult.  Araich stated that she thought

14   the sores on his ankle were self-inflicted, conflicting with the podiatrist's recommendation that

15   Plaintiff required surgery to remove the cyst.  On November 16, 2007, Araich saw Plaintiff and did

16   not believe Plaintiff when he told her that the doctors did not fully remove the hardware in his ankle,

17   nor removed the cyst.  On November 21, 2007, Araich filed paperwork for Plaintiff to see the

18   orthopedic specialist.

19       Plaintiff's allegations regarding Defendant Araich's conduct does not rise to the level of

20   deliberate indifference.  Plaintiff alleges that Araich did not believe that Plaintiff was in pain and

21   instead believed that Plaintiff was lying about his pain and was manipulatively attempting to obtain

22   pain medication.  Plaintiff appears to base his claim on the fact that Araich should have known

23   Plaintiff was in pain.  Araich's belief that Plaintiff was lying, even if unreasonable, at most amounts

24   to negligence, which is insufficient to meet the higher subjective standard of deliberate indifference.

25   The standard of deliberate indifference requires Araich to have had actual knowledge that Plaintiff

26   was in severe pain. Plaintiff fails to state a cognizable claim against Defendant Araich for violation

27   of the Eighth Amendment.

28       **iii.      Mackey**

1      Plaintiff alleges that Mackey is a licensed vocational nurse.  On February 18, 2009, Mackey

2   told Plaintiff that Plaintiff's prescription pain medication was lost.  Mackey only received three pills

3   from "CTC", who refused to issue any more pills because the previous ones were lost.  Plaintiff

4   alleges that they were stolen by D-yard medical.  On February 19, 2009, Mackey and Defendant

5   George asked Plaintiff if he was allergic to anything, then provided Plaintiff with a different brand

6   of pain medication.

7      Plaintiff fails to allege any conduct by Defendant Mackey that implicates the Eighth

8   Amendment.  Plaintiff does not allege that Defendant Mackey was responsible for losing or stealing

9   Plaintiff's prescription medicine.  Further, Defendant Mackey provided Plaintiff with a different

10   brand of pain medication after his prescription was lost.  Plaintiff fails to state a cognizable claim

11   against Defendant Mackey for violation of the Eighth Amendment.

12                          i**v.**      **George**

13      Plaintiff alleges that George is a registered nurse.  On February 19, 2009, George and

14   Defendant Mackey asked Plaintiff if he was allergic to anything, then provided Plaintiff with a

15   different brand of pain medication after his prescription pain medication was lost.

16      Plaintiff fails to allege any conduct by Defendant George that implicates the Eighth

17   Amendment.  Defendant George provided Plaintiff with a different brand of pain medication after

18   his pain medication prescription was lost.  Plaintiff fails to state a cognizable claim against

19   Defendant Mackey for violation of the Eighth Amendment.

20                          **v.**      **Sherry Lopez**

21      Plaintiff alleges that Sherry Lopez is the chief medical officer at KVSP.  On February 20,

22   2009, after Plaintiff's pain medication was lost, Plaintiff was told that his pain medication was re-

23   ordered on February 14.  Plaintiff was also told that Lopez had to sign off on the medication before

24   he would receive it.

25      Plaintiff does not specifically allege that Lopez caused Plaintiff's medication to be delayed.

26   Plaintiff does not allege that Lopez did not sign off on Plaintiff's medication.  Nor does Plaintiff

27   allege that Lopez was deliberately indifferent by refusing to sign off on the medication with actual

28   ///

1   knowledge of an excessive risk to Plaintiff if she did not sign off on his pain medication.  Plaintiff

2   fails to state a cognizable claim against Defendant Lopez for violation of the Eighth Amendment.

3                                 **vi.**      **Robaina**

4        Plaintiff alleges that Robaina is a registered nurse.  On February 25, 2009, Robaina saw

5   Plaintiff and spoke to him about his administrative appeal regarding his missing pain medication.

6   Robaina told Plaintiff that it was the pharmacy's fault and refused to let Plaintiff see a doctor

7   because the pain medication had already been re-ordered.

8        Plaintiff fails to allege that Defendant Robaina acted with deliberate indifference.  Plaintiff

9   was interviewed by Defendant Robaina about his missing pain medication.  Plaintiff complains that

10  Defendant Robaina did not allow Plaintiff to see the doctor.  Robaina apparently believed that a

11  doctor visit would be unnecessary because Plaintiff's pain medication had already been ordered.

12  Thus, Defendant Robaina did not act with deliberate indifference because she did not have actual

13  knowledge of an excessive risk to Plaintiff.  Plaintiff fails to state a cognizable claim against

14  Defendant Robaina for violation of the Eighth Amendment.

15                                **vii.**     **Mohammad Ali**

16       Plaintiff alleges that Mohammad Ali is a registered nurse at KVSP.  On August 9, 2007, Ali

17  read Plaintiff's medical appeal and Plaintiff was seen by Defendant Araich the next day.  On

18  November 15, 2007, Plaintiff filed an administrative appeal after he returned from surgery because

19  he was not receiving post-op care.  Plaintiff alleges that Ali did not answer his appeal, which should

20  have been heard within five days because it was an emergency appeal.  Plaintiff's appeal was not

21  heard until December 18, 2007.

22       It is not clear how the handling of the August 9 medical appeal was inappropriate.  Plaintiff

23  filed an appeal for medical treatment, Ali read it, and Plaintiff saw Araich the next day.  Plaintiff

24  does allege that after he returned from surgery on his ankle in November, he was in pain and needed

25  pain medication and ice packs to keep the swelling in his foot down.  Plaintiff alleges that Ali

26  ignored his appeal, which should have been treated as an emergency appeal.  Plaintiff's appeal was

27  not heard until a month later and his ankle became more swollen, fluid and blood leaked from his

28  sutures, and his leg was discolored.  Plaintiff sufficiently alleges that Ali knew Plaintiff needed

1 emergency treatment and that Plaintiff's ankle injury worsened as a result of the delay in treatment.

2 Plaintiff states a cognizable claim against Defendant Ali for violation of the Eighth Amendment.

3                     **viii.**     **Dileo**

4         Plaintiff alleges that Dileo is a medical doctor at KVSP.  On March 2, 2009, Dileo saw

5 Plaintiff because of his ankle pain.  Dileo told Plaintiff that he was fine without performing an

6 examination or looking at Plaintiff's chart.  Plaintiff alleges that Dileo knew that the medical staff

7 was in trouble for losing Plaintiff's medication and that Dileo was retaliating against Plaintiff for

8 filing an administrative appeal against the medical staff.  Dileo kicked Plaintiff out of his office after

9 Plaintiff requested a chrono.

10         Plaintiff alleges that Defendant refused to perform an examination in retaliation for Plaintiff's

11 administrative appeals against medical staff.  Liberally construed, Plaintiff has alleged that refusing

12 to diagnose or treat a patient seeking medical attention constitutes deliberate indifference,

13 particularly when done in a retaliatory manner.  Plaintiff states a cognizable claim against Defendant

14 Dileo for violation of the Eighth Amendment.

15                     **ix.**     **Sharon Zamora, H. Ducusin, S. Wright-Pearson, and C. Pfeiffer**

16         Plaintiff alleges that Sharon Zamora, H. Ducusin, and S. Wright-Pearson answered Plaintiff's

17 administrative appeal that he initially filed on August 5, 2007 concerning Araich's failure to treat

18 Plaintiff's medical problems. Zamora, Ducusin, and Wright-Pearson's November 15, 2007 response

19 stated that Araich was looked into, but did not provide any reasons for the delay or denial of medical

20 treatment. Plaintiff alleges that C. Pfeiffer screened out one of Plaintiff's appeals on October 4, 2007

21 for no reason.

22         As mentioned above, Araich's actions do not rise to the level of a constitutional violation.

23 See supra Part III.A.3.ii.  Therefore, Defendants Zamora, Ducusin, Wright-Pearson, and Pfeiffer are

24 not liable for failing to intervene through the administrative appeals process.  Plaintiff fails to state

25 a cognizable claim against Defendants Zamora, Ducusin, Wright-Pearson, and Pfeiffer for violation

26 of the Eighth Amendment.

27 ///

28 ///

1     **B.     Fourteenth Amendment Due Process Claims**

2         Plaintiff claims that Defendants' actions violated his rights under the Due Process Clause of

3     the Fourteenth Amendment.    Plaintiff's Fourteenth Amendment claims mirror his Eighth

4     Amendment claims.  "[W]here a particular amendment provides  and explicit textual source of

5     constitutional protection against a particular sort of government behavior, that Amendment, not the

6     more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's

7     claims."  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and

8     brackets omitted).  Plaintiff's claims are explicitly protected under the Eighth Amendment.  Plaintiff

9     does not have a separate cause of action under the Fourteenth Amendment.

10        **C.     Claims Against Defendants Harrington, Vaughan and M. Nair**

11        Plaintiff names Harrington (warden), Vaughan (certified nurse assistant) and M. Nair

12    (supervising registered nurse) as defendants.  However, Plaintiff's complaint lacks any factual

13    allegations regarding actions or omissions by either Defendant Harrington, Defendant Vaughan or

14    Defendant Nair.  As such, Plaintiff fails to state any cognizable claims against either Defendant

15    Harrington, Vaughan or Nair.

16    **IV.    Conclusion and Order**

17        Plaintiff's complaint states cognizable claims against Defendant Pfeiffer for delaying

18    Plaintiff's dental care and against Defendants Ali and Dileo for denying and delaying Plaintiff's

19    medical care for his ankle.  Plaintiff's complaint fails to state claims against any other defendants.

20    The Court will provide Plaintiff with the opportunity to file an amended complaint curing the

21    deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir.

22    1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his

23    amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

24    complaints).

25        If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only

26    on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and

27    the Court will issue a recommendation for dismissal of the other claims and defendants, and will

28    forward Plaintiff three (3) summonses and three (3) USM-285 forms for completion and return.

1    Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of

2    process.

3          If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).

4    Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

5    constitutional or other federal rights: "The inquiry into causation must be individualized and focus

6    on the duties and responsibilities of each individual defendant whose acts or omissions are alleged

7    to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

8    With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P.

9    10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other

10   words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's

11   complaint because at this stage Plaintiff's factual allegations will be accepted as true.

12         Although Plaintiff's factual allegations will be accepted as true and that "the pleading

13   standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain

14   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

15   Ashcroft v. Iqbal, No. 07-1015, 2009 U.S. LEXIS 3472, 2009 WL 1361536, *28 (U.S. May 18,

16   2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial

17   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

18   inference that the defendant is liable for the misconduct alleged."  Id. at *29 (citing Twombly, 550

19   U.S. at 556).

20         Finally, Plaintiff is advised that an amended complaint supercedes the original complaint.

21   Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

22   (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior

23   or superceded pleading."  Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged

24   in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d

25   at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth,

26   114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint

27   must be completely stated again in the amended complaint.

28   ///

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Pfeiffer, Ali, and Dileo for deliberate indifference toward Plaintiff's medical needs in violation of the Eighth Amendment; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:    August 31, 2009**                    **/s/ Sandra M. Snyder**
                                                UNITED STATES MAGISTRATE JUDGE