**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK KUNKEL, | CASE NO. 1:09-cv-00686-YNP PC |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | (Doc. 8) |
| N. DILL, et al., | |
| Defendants. | |

    Plaintiff Patrick Kunkel ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Kern Valley State Prison ("KVSP") in Delano, California. Plaintiff is suing under section 1983 for the violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff names C. Pfeiffer (appeals coordinator), Dileo (medical doctor), Mohammad Ali (nurse), N. Dill (associate warden), H. Tyson (captain), Araich (nurse), M. Mendoza (dental assistant), S. Adame (office tech), Mackey (nurse), Sharon Zamora (health care manager), Robaina (nurse), Sherry Lopez (chief medical officer), and Guadalupe M. Garcia (dentist) as defendants. For the reasons set forth below, the Court finds that Plaintiff's First Amended Complaint states cognizable claims against Defendants Garcia, Mendoza, Araich, Mackey, Robaina, Dileo, Dill, Pfeiffer, Ali, and Zamora for violation of the Eighth Amendment. Plaintiff's remaining claims under the Fourteenth Amendment and against Defendants Tyson, Adame, and Lopez will be dismissed without leave to amend.

///

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II. Background

### A. Procedural Background

Plaintiff filed the Original Complaint in this action on April 17, 2009. (Doc. #1.) The Court screened Plaintiff's Original Complaint on September 1, 2009. (Doc. #7.) The Court found that Plaintiff's Original Complaint stated some cognizable claims and gave Plaintiff the option of either

proceeding only on the claims found to be cognizable or filing an amended complaint that cured the deficiencies in the claims that the Court found non-cognizable. Plaintiff filed his First Amended Complaint on October 8, 2009. (Doc. #8). This action proceeds on Plaintiff's First Amended Complaint.

### B. Factual Background

Plaintiff claims that Defendants violated his rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment through their failure to provide adequate dental treatment and medical treatment. Plaintiff claims that he had serious medical needs with respect to a broken tooth and with respect to an injury to his ankle.

Plaintiff broke his tooth on July 18, 2006. (Compl. ¶ 18.) Plaintiff turned in approximately 20 dental requests over the next 7 months but was not seen by dental staff. (Compl. ¶ 19.) Plaintiff alleges that it is the job of Defendants Mendoza, Adame, and Garcia to read dental requests and make sure prisoners are called in for "triage exams." (Compl. ¶ 19.) Plaintiff filed two administrative appeals concerning his lack of dental treatment. (Compl. ¶ 20.) On February 1, 2007, Plaintiff was finally seen by dental staff. (Compl. ¶ 21.) Garcia and Mendoza examined Plaintiff and told him that there was a deep hole that needs to be filled right away. (Compl. ¶ 23.) Plaintiff was told that he would be called back within a week to fix the problem. (Compl. ¶ 24.)

On February 8, 2007, Plaintiff was called to dental to be interviewed about his administrative appeal. (Compl. ¶ 25.) Defendants Adame, Garcia, and Mendoza were present. (Compl. ¶ 25.) Plaintiff's administrative appeal requesting that his tooth be fixed was granted, but Plaintiff was not given immediate treatment. (Compl. ¶ 25.) Plaintiff asked why his tooth would not be fixed that day and Mendoza told Plaintiff that they will fix the tooth when dental staff are ready. (Compl. ¶ 25.) Over the next four months, Plaintiff filed approximately 15 dental requests and three administrative appeals seeking dental treatment. (Compl. ¶ 26-27.) In April 2007, Plaintiff requested an "Olsen review" of his medical file. (Compl. ¶ 28.) Plaintiff was called in for an Olsen review on May 24, 2007. (Compl. ¶ 30.) Plaintiff was told that his medical file was not there because "A-yard dental" had it. (Compl. ¶ 30.) When Plaintiff received his medical file, almost all of his dental records were missing. (Compl. ¶ 31.) When Plaintiff got back to A-yard, Plaintiff

spoke with Mendoza about the missing dental records, and Mendoza told Plaintiff that she did not have his records. (Compl. ¶ 32.) Plaintiff claims that Mendoza, Adame, and Garcia lied because they actually did have Plaintiff's file. (Compl. ¶ 33.) Plaintiff filed an administrative appeal concerning his missing dental records and sent a copy of the appeal to Defendant Dill. (Compl. ¶ 34.)

On May 25, 2007, Plaintiff was brought into dental to fix his tooth. (Compl. ¶ 36.) Plaintiff was told by Garcia that the hole was so large and close to the nerve that the tooth might have to be pulled. (Compl. ¶ 36.) Garcia filled the cavity the same day. (Compl. ¶ 37.) While having his cavity filled, Plaintiff saw his dental records that were missing and requested a copy. (Compl. ¶ 37.) Plaintiff's request was refused and Plaintiff was told that he had to file an Olsen review. (Compl. ¶ 37.) Plaintiff filed an Olsen review on May 25, 2007, but many of the "original requests" had been thrown out. (Compl. ¶ 38.) Plaintiff alleges that Garcia, Mendoza, and Adame were at fault for the missing requests because they were the last persons to have access to Plaintiff's records. (Compl. ¶ 38.) Plaintiff alleges that Defendants intentionally lost Plaintiff's records because they found out about a pending lawsuit and wanted to "cover" themselves. (Compl. ¶ 39.)

Plaintiff was told that dental staff had tried to call Plaintiff into dental to fix his tooth between February 1, 2007 and May 25, 2007, but "PSRs" or "custody issues" prevented Plaintiff from being brought in. (Compl. ¶ 40.) Plaintiff contends that either dental staff are lying about their attempts to summon Plaintiff, or Defendant H. Tyson is at fault for cancelling the appointments. (Compl. ¶ 41.)

After Plaintiff's tooth was fixed on May 25, 2007, Plaintiff filled out another request for treatment because the numbing agent wore off. (Compl. ¶ 44.) Adame answered an administrative appeal on June 8, 2007 and informed Plaintiff that he would be seen within two weeks. (Compl. ¶ 47.) Plaintiff was not seen until July 6, 2007. (Compl. ¶ 44, 47.) On August 29, 2007, Plaintiff's tooth was pulled "due to a peno ab[s]cess, periapreal ab[s]cess and irr[e]versible palpitis" on his tooth. (Compl. ¶ 48.)

Plaintiff alleges that his mother called Defendant Nate Dill several times between February 1, 2007 and August 29, 2007 and informed Dill of Plaintiff's dental needs. (Compl. ¶ 45.) Plaintiff

4

also wrote to Dill several times asking for help. (Compl. ¶ 46.) Plaintiff thus alleges that Dill was placed on notice of a serious problem and did nothing to make sure that the problem was addressed. (Compl. ¶ 45.)

On June 26, 1998, Plaintiff was shot in the ankle and knee and had a mental plate placed in his ankle. (Compl. ¶ 64.) On November 25, 1998, Plaintiff's ankle was not healing correctly and he received a bone graft. (Compl. ¶ 65.) On August 13, 1999, Plaintiff experienced pain and was taken to Arrowhead Regional Medical Center and was scheduled to have the metal plate removed. (Compl. ¶ 66.) On September 16, 1999, Plaintiff was transferred to the California Department of Corrections with a transfer form stating that the metal plate had to be removed from his ankle. (Compl. ¶ 67.) On December 1, 2004, Plaintiff was seen by an orthopedic specialist. (Compl. ¶ 68.) The specialist recommended that the metal plate be left in Plaintiff's ankle until the pain became more severe. (Compl. ¶ 68.) In the fall of 2006, the pain in Plaintiff's ankle became more severe and Plaintiff was seen by Defendant Akanno. (Compl. ¶ 69.) In January 2007, Plaintiff was put on pain medication by Akanno for his ankle pain. (Compl. ¶ 70.)

On June 15, 2007, Plaintiff was seen by Defendant Araich, who ordered x-rays, a pediatrist consult, and increased pain medication. (Compl. ¶ 71.) Plaintiff was also told that he would receive an orthopedic consult. (Compl. ¶ 71.) On July 15, 2007, Plaintiff was taken off his pain medication before he received any x-rays, a pediatrist, or an orthopedic consult. (Compl. ¶ 72.) Plaintiff was left in constant pain. (Compl. ¶ 72.) Plaintiff alleges that this was done without looking through Plaintiff's file. (Compl. ¶ 72.) Plaintiff filed numerous medical requests for pain treatment between July 15, 2007 and October 2007. (Compl. ¶ 73.) On July 20, 2007, Araich was supposed to request an orthopedic consult but failed to file the proper paperwork. (Compl. ¶ 74.) Araich wrote in Plaintiff's file that he did not appear to be in pain because he laughed at a guard's joke. (Compl. ¶ 74.) On July 20, 2007, Plaintiff received x-rays. (Compl. ¶ 75.) On August 9, 2007, Defendant Mohammad Ali read Plaintiff's medical appeal and Plaintiff was seen by Araich the next day. (Compl. ¶ 77.) On August 10, 2007, Plaintiff was told by Araich that he was not receiving pain medication because Araich believed that Plaintiff was manipulative and faking his symptoms. (Compl. ¶ 78.) Plaintiff recommended an orthopedic consult and filed the proper paperwork.

(Compl. ¶ 78.) On August 20, 2007, Plaintiff requested to see the pain specialist because he believed that Araich was deliberately making Plaintiff suffer. (Compl. ¶ 79.) Plaintiff requested a second opinion about his condition but Araich refused. (Compl. ¶ 79.)

On September 6, 2007, Plaintiff was seen by a specialist who recommended that Plaintiff be scheduled for surgery and the metal plate removed from his ankle as soon as possible. (Compl. ¶ 80.) On September 9, 2007, Plaintiff placed a medical request but his request was denied again by Araich. (Compl. ¶ 81.) Plaintiff alleges that Araich denied Plaintiff's appeal because Plaintiff complained about Araich in a prior administrative appeal. (Compl. ¶ 81.) On September 16, 2007, Araich filed the paperwork for Plaintiff to see the podiatrist. (Compl. ¶ 82.) On September 18, 2007, Plaintiff was seen by the podiatrist and received a cortazone shot in the ankle. (Compl. ¶ 83.) Plaintiff was also warned about the dangers of a "gangleous cyst" on the side of his ankle. (Compl. ¶ 83.) On October 30, 2007, the podiatrist recommended that Plaintiff receive surgery to remove the cyst. (Compl. ¶ 84.) The podiatrist also noticed an infection over the "screw area" of the metal plate that gave Plaintiff "problems." (Compl. ¶ 84.) Plaintiff was seen by Araich the same day, who claimed that Plaintiff's ankle sores were self-inflicted. (Compl. ¶ 85.)

On November 14, 2007, Plaintiff received surgery to remove the metal plate in his ankle. (Compl. ¶ 86.) Plaintiff was told that only two screws were removed because the rest got stripped and the plate remained in his ankle. (Compl. ¶ 86.) Plaintiff was told that if the pain persisted, he should file another request to remove the screws and plate. (Compl. ¶ 86.)

When Plaintiff returned to KVSP after receiving surgery, Plaintiff was denied any pain medication or an ice pack. (Compl. ¶ 87.) Plaintiff was told by medical staff in "CTC" that the medical staff at the "building" would handle it. (Compl. ¶ 87.) When Plaintiff arrived at the building, there was no medical staff available. (Compl. ¶ 87.) Plaintiff was forced to go "man down" at night to receive pain medical and an ice pack. (Compl. ¶ 87.)

On November 15, 2007, Plaintiff was told by medical staff that he would not receive pain medication until the next day. (Compl. ¶ 88.) Plaintiff filed an administrative appeal concerning the lack of post-op care. (Compl. ¶ 89.) Plaintiff was seen by Araich on November 16, 2007. (Compl. ¶ 90.) Plaintiff informed Araich that neither the metal plate nor the cyst was removed, but

Araich did not believe Plaintiff. (Compl. ¶ 90.) On November 18, 2007, Plaintiff was told by Araich that he would not receive an ice pack even though one was ordered for him previously. (Compl. ¶ 91.) Medical staff contacted Akanno, who wrote the initial prescription, but Plaintiff was only give a single ice pack for that night. (Compl. ¶ 91.) Plaintiff was denied ice packs after that night and the swelling in his ankle worsened, causing the stiches to rip and leak fluid. (Compl. ¶ 92.) Araich refused to do anything and told Plaintiff to file another appeal. (Compl. ¶ 92.) On November 21, 2007, Araich filed the paperwork for Plaintiff to see an orthopedic specialist. (Compl. ¶ 93.) On November 25, 2007, Plaintiff filed more medical requests due to the extreme swelling in his ankle, lack of ice packs, blood leaking from the sutures, and discoloration up and down his leg. (Compl. ¶ 94.) Plaintiff's sutures were removed on December 4, 2007. (Compl. ¶ 96.) On December 10, 2007, Plaintiff made another medical request because his ankle was still red and leaking fluids. (Compl. ¶ 97.)

On December 13, 2007, Plaintiff was seen by an orthopedic surgeon. (Compl. ¶ 98.) On March 3, 2008, Plaintiff was seen again by the podiatrist, who recommended that Plaintiff see an "orthotist[sic]" to receive special shoes to support his ankle. (Compl. ¶ 99.) Plaintiff saw the podiatrist again on June 2, 2008 and received a cortazone shot. (Compl. ¶ 100.) The podiatrist submitted paperwork to see the "orthotist[sic]" to receive special shoes. (Compl. ¶ 100.) Plaintiff did not see an "orthotist[sic]" for shoes until September 9, 2008. (Compl. ¶ 101.) On September 29, 2008, Plaintiff began receiving pain medication from Dr. Patel. (Compl. ¶ 102.) On October 15, 2008, Plaintiff went to see the "orthotist[sic]" because the wrong-sized shoes were ordered. (Compl. ¶ 104.) On January 5, 2008, Plaintiff submitted a medical request about his shoes and was told by registered nurse Moody that KVSP cancelled their contract with the "orthotist[sic]" and Plaintiff would have to wait. (Compl. ¶ 105.) Plaintiff filed another administrative appeal about his shoes on January 11, 2009. (Compl. ¶ 106.)

On February 18, 2009, Plaintiff was told by licensed vocational nurse Macky that Plaintiff's prescription pain medication was lost. (Compl. ¶ 107.) Macky told Plaintiff that they only received 3 pills from "central medical." (Compl. ¶ 108.) Plaintiff alleges that his pills were stolen by "D-yard medical." (Compl. ¶ 108.) On February 19, 2009, Plaintiff ran out of pain medication and Macky

and registered nurse George gave Plaintiff another brand of pain medication that night. (Compl. ¶ 109.) On February 20, 2009, Macky and registered nurse Robaina told Plaintiff that his medication was re-ordered but that the chief medical officer, Sherry Lopez, had to sign off on it before Plaintiff would receive it. (Compl. ¶ 110.) Plaintiff also had a doctor's appointment on February 20, 2009, but when he arrived at medical, he was refused treatment because medical staff said that Plaintiff did not have his chart. (Compl. ¶ 111.) Plaintiff alleges that Robaina and Macky lied to him about being unable to receive treatment because he had been seen by medical without a chart on numerous occasions. (Compl. ¶ 111.) Plaintiff claims that Robaina and Macky lied about re-ordering Plaintiff's medication because his chart did not indicate that they had re-ordered pain medication for Plaintiff. (Compl. ¶ 111.) Plaintiff alleges that Robaina and Macky were retaliating against Plaintiff because he filed an administrative appeal against them. (Compl. ¶ 111.)

On February 25, 2009, Plaintiff was seen by Robaina about an appeal Plaintiff filed about missing medication. (Compl. ¶ 113.) Robaina told Plaintiff that it was the pharmacy's fault. (Compl. ¶ 113.) Robaina refused to allow Plaintiff to see the doctor that day despite being in extreme pain. (Compl. ¶ 113.) On March 2, 2009, Plaintiff was seen by doctor Dileo about his ankle pain. (Compl. ¶ 115.) Plaintiff complains that Dileo did not examine or look at Plaintiff's chart but concluded that Plaintiff was fine. (Compl. ¶ 115.) Plaintiff claims that Dileo was retaliating against Plaintiff for the administrative appeals that he filed against medical staff. (Compl. ¶ 115.) When Plaintiff requested a chrono from Dileo that summarized his findings, Dileo kicked Plaintiff out of his office. (Compl. ¶ 115.)

Plaintiff was moved to another yard at KVSP on March 4, 2009. (Compl. ¶ 116.) Plaintiff was seen by Dr. Patel on March 12, 2009 and received an orthodontist consult and pain medication. (Compl. ¶ 118.) In June 2009, Plaintiff was seen by the orthodontist specialist, Dr. Smith, who deemed it necessary to remove the plate in Plaintiff's ankle. (Compl. ¶ 119.) On August 20, 2009, Plaintiff received surgery on his ankle. (Compl. ¶ 120.) The surgery was unsuccessful and Smith ordered a consult with UC Davis due to complications during surgery. (Compl. ¶ 120.) Around September 17, 2009, Plaintiff began experiencing pain in his ankle, and submitted a medical request. (Compl. ¶ 121.) On September 18, 2009, Plaintiff was seen by registered nurse Amazon, who told

8

Plaintiff that he would speak to a doctor about it. (Compl. ¶ 122.) Over the next few days, Plaintiff's ankle began swelling and fluid leaked from the sutures. (Compl. ¶ 123.) Plaintiff submitted more medical requests. (Compl. ¶ 123.) On September 21, 2009, Plaintiff could not handle the pain and had floor staff allow Plaintiff to go to medical. (Compl. ¶ 124.) Plaintiff was seen by registered nurse Sarah who said Plaintiff's ankle looked infected. (Compl. ¶ 125.) Sarah asked Plaintiff if he wanted more pain medication, or what other treatment Plaintiff wanted done and Plaintiff told her to "send me somewhere that will do something [be]cause everyone can see there[']s something wrong, yet medical has failed to do anything." (Compl. ¶ 125.) Sarah consulted with Araich, who said that Plaintiff was supposed to have surgery, so they (the doctors performing the surgery) can deal with it. (Compl. ¶ 126.) Plaintiff claims that Araich was still upset because Plaintiff filed an appeal against her. (Compl. ¶ 126.) Plaintiff was told to leave because nothing was going to be done. (Compl. ¶ 126.)

On September 22, 2009, Plaintiff against went to medical. (Compl. ¶ 127.) Amazon told Plaintiff to come back in an hour. (Compl. ¶ 128.) On September 22, 2009, Plaintiff was seen by Dr. Patel who told Plaintiff that he had a serious infection. (Compl. ¶ 130.) Plaintiff was given antibiotics and pain medication. (Compl. ¶ 130.)

**III.    Discussion**

    **A.    Eighth Amendment Claims**

Plaintiff claims that Defendants violated his constitutional rights under the Eighth Amendment by providing deficient medical care. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the

minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id. However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Plaintiff's Eighth Amendment claims for deliberate indifference to his medical needs are raised against (1) dental staff Defendants who provide deficient treatment for his dental problem; (2) medical staff Defendants who provided deficient treatment for his ankle problem; and (3)
///

supervisory and appeal coordinator Defendants who were informed of Plaintiff's deficient dental and medical treatment and failed to take action to ensure Plaintiff received proper treatment.

### 1. Defendant Dental Staff

Plaintiff claims that the deficient dental treatment that he received violated his rights under the Eighth Amendment. In order to constitute an Eighth Amendment violation, Defendants who provided deficient treatment must (1) have failed to provide treatment for a serious medical need that resulted in further significant injury or the unnecessary and wanton infliction of pain and (2) have had actual knowledge of that risk of harm to Plaintiff. Plaintiff alleges that he had a serious medical need because his tooth caused "immeasurable pain" and the delays resulted in further significant injury as his cavity worsened and the tooth eventually had to be extracted.

#### i. Guadalupe M. Garcia

Defendant Guadalupe M. Garcia is a dentist at KVSP. Plaintiff alleges that Garcia, along with Mendoza, examined Plaintiff's tooth and told Plaintiff that there was a deep hole that needed to be filled right away. Garcia granted Plaintiff's later appeal requesting that his tooth be fixed. Garcia later told Plaintiff that the hole in his tooth was so large and close to the nerve that it may have to be pulled. Garcia filled Plaintiff's cavity in the meantime. Plaintiff also accuses Garcia of removing "incriminating documents" from his dental file to protect herself from a pending lawsuit. Plaintiff also attributes the delays in his dental treatment to Garcia's failure to summon him for treatment. While Garcia told Plaintiff that she made attempts to summon him for treatment, Plaintiff claims that Garcia was lying.

Plaintiff alleges that Garcia delayed Plaintiff's dental treatment by failing to summon him for treatment. As a result, Plaintiff suffered "immeasurable pain." Plaintiff further alleges that Garcia was aware of Plaintiff's pain and dental needs. Thus, Plaintiff states a cognizable claim against Defendant Garcia for violating the Eighth Amendment.

#### ii. M. Mendoza

Defendant M. Mendoza is a dental assistant at KVSP. Plaintiff alleges that Mendoza, along with Garcia, examined Plaintiff's tooth and informed him of the deep hole that needed to be filled right away. Mendoza granted Plaintiff's subsequent appeal requesting treatment for his tooth. When

Plaintiff did not receive immediate treatment, Mendoza told Plaintiff that his tooth would be fixed when dental staff was ready to treat Plaintiff. Plaintiff accuses Mendoza of removing "incriminating documents" from his dental file to thwart a future lawsuit from Plaintiff. Plaintiff also claims that Mendoza delayed Plaintiff's dental treatment by failing to call Plaintiff in for treatment.

Plaintiff alleges that Mendoza delayed Plaintiff's dental treatment by failing to summon him for treatment, resulting in "immeasurable pain." Plaintiff alleges that Mendoza was aware of the pain that Plaintiff was in and his serious need for dental treatment. Plaintiff states a cognizable claim against Defendant Mendoza for violating the Eighth Amendment.

### iii.   S. Adame

Defendant S. Adame is an "office tech" at KVSP. Plaintiff alleges that Adame was present during an interview in February 2007 concerning an administrative appeal that Plaintiff filed in order to get treatment for his tooth. Plaintiff's administrative appeal was granted at that interview, but Plaintiff did not receive immediate treatment. Plaintiff also alleges that Adame later lied to Plaintiff about the location of his dental records, in an effort to protect medical staff from a future lawsuit. Adame also answered one of Plaintiff's administrative appeals on June 8, 2007 and at the time told Plaintiff he would be seen for dental treatment within two weeks. However, Plaintiff was not seen within two weeks.

Plaintiff fails to allege that Adame delayed or interfered with Plaintiff's treatment. Plaintiff's allegations only demonstrate that Adame assisted in "covering up" past incidents in an effort to protect medical staff from a future law suit. Adame's actions in "covering up" the misconduct of co-workers does not violate Plaintiff's Eighth Amendment rights because the Eighth Amendment does not grant Plaintiff a constitutional guarantee to the vindication of his claims against prison officials. Adame's actions did not cause Plaintiff's treatment to be denied or delayed, Adame only interfered with Plaintiff's ability to prove misconduct committed by other prison officials. Plaintiff alleges that Adame told Plaintiff that he would be seen for dental treatment within two weeks but that Plaintiff was not seen within two weeks. However, Plaintiff does not allege how Adame is responsible for Plaintiff's lack of treatment within those two weeks. Plaintiff fails to state any claims under the Eighth Amendment against Defendant Adame.

Plaintiff was previously informed of the deficiencies in his claims against Defendant Adame. (Order Requiring Pl. Either to File Am. Compl. or to Notify Ct. of Willingness to Proceed Only on Claims Found to be Cognizable 7:19-26, September 1, 2009.) Plaintiff's First Amended Complaint fails to meaningfully address the deficiencies in his claims that were specifically identified by the Court. As such, the Court finds that Plaintiff's claims against Defendant Adame are not capable of being cured by granting further leave to amend. Plaintiff's claims against Defendant Adame will be dismissed without leave to amend.

### iv. H. Tyson

Defendant H. Tyson is a correctional officer at KVSP. Plaintiff alleges that Tyson may have been responsible for failing to escort Plaintiff to his dental appointments. Plaintiff was told by dental staff that they had attempted to call Plaintiff into dental to fix his tooth, but that the correctional officers would not bring him in because of custody issues. Plaintiff claims that dental staff are lying, and if they are not lying, then Defendant Tyson is at fault for failing to escort Plaintiff to his dental appointments because of the "custody issues."

Plaintiff alleges that Tyson may have caused Plaintiff's medical treatment to be delayed because he did not escort Plaintiff to his dental appointments due to "custody issues." However, Plaintiff does not allege that Tyson did so with deliberate indifference. Plaintiff does not allege that Tyson had actual knowledge of Plaintiff's serious medical need--Plaintiff does not allege that Tyson knew that his failure to escort Plaintiff to his dental appointments would result in further injury or the unnecessary and wanton infliction of pain. Thus, Plaintiff fails to state any claims under the Eighth Amendment against Defendant Tyson.

Plaintiff was previously informed of the deficiencies in his claims against Defendant Tyson. (Order Requiring Pl. to File Amended Compl. 8:1-11, September 1, 2009.) Plaintiff's First Amended Complaint fails to meaningfully address the deficiencies in his claims that were specifically identified by the Court. As such, the Court finds that Plaintiff's claims against Defendant Tyson are not capable of being cured by granting further leave to amend. Plaintiff's claims against Defendant Tyson will be dismissed without leave to amend.

///

### 2. Medical Staff Defendants

Plaintiff claims that the deficient medical treatment that he received for his ankle violated his rights under the Eighth Amendment. In order to constitute an Eighth Amendment violation, Defendants who provided deficient treatment must (1) have failed to provide treatment for a serious medical need that resulted in further significant injury or the unnecessary and wanton infliction of pain and (2) have had actual knowledge of that risk of harm to Plaintiff. Plaintiff alleges that he had a serious medical need because his ankle injury caused severe pain and the delays in treatment caused a serious infection.

#### i. Araich

Defendant Araich is a nurse practitioner at KVSP. Plaintiff alleges that Araich first saw Plaintiff about his ankle problem on June 15, 2007. Araich ordered x-rays, a pediatrist consult, and increased pain medication. Plaintiff was also told that he would receive an orthopedic consult. Plaintiff claims that Araich failed to file paperwork necessary for consults, resulting in delay in Plaintiff's treatment. Plaintiff contends that Araich did this in retaliation for administrative appeals that Plaintiff had filed against Araich. Araich also withheld post-operative treatment from Plaintiff, such as ice packs, after Plaintiff received surgery on his ankle.

Plaintiff alleges that Araich continuously delayed and denied treatment for Plaintiff's ankle injury. Plaintiff claims that Araich did this despite having actual knowledge of Plaintiff's serious need for medical treatment because Araich was retaliating against Plaintiff for filing administrative appeals. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Araich.

#### ii. Mackey

Defendant Mackey is a licensed vocational nurse at KVSP. Plaintiff alleges that Defendant Mackey told Plaintiff that his pain medication was lost on February 18, 2009 and that he would only receive 3 pills. Plaintiff contends that his pills were stolen by "D-yard medical". When Plaintiff ran out of pain medication, Mackey gave Plaintiff a different brand of pain medication. Mackey later told Plaintiff that his medication was re-ordered, but that it had to be approved by the chief medical officer before he would receive it. Plaintiff claims that Mackey lied about re-ordering his medication

14

because his chart did not indicate that his pain medication was ordered. On another occasion, Mackey refused to allow Plaintiff to see the doctor because Plaintiff did not have his chart. Plaintiff claims that this rule was fabricated because he had seen the doctor without his chart on numerous other occasions. Plaintiff alleges that Mackey was retaliating against Plaintiff for filing administrative appeals against medical staff.

Plaintiff alleges that Mackey deprived Plaintiff of pain medications by failing to actually re-order them. Plaintiff also alleges that Mackey fabricated a reason to prevent Plaintiff from seeing the doctor for treatment out or retaliation for filing administrative appeals against medical staff. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Mackey.

### iii. Robaina

Defendant Robaina is a registered nurse at KVSP. Plaintiff alleges that Defendant Robaina told Plaintiff on February 20, 2009 that his pain medication was ordered, but he could not receive it until chief medical officer Sherry Lopez signed off on it. Plaintiff claims that Robaina lied about ordering his medication because his chart did not indicate that his pain medication was ordered. Plaintiff also alleges that Robaina lied to Plaintiff when she said Plaintiff could not receive treatment because Plaintiff did not have his chart. Plaintiff claims that he has seen doctors on numerous occasions without having his chart. Plaintiff claims that Robaina lied to him because of administrative appeals that Plaintiff filed against medical staff. On February 25, 2009, Plaintiff claims Robaina refused to allow Plaintiff to see the doctor even though Plaintiff was in extreme pain.

Plaintiff alleges that Robaina deprived Plaintiff of pain medications by failing to order it for Plaintiff. Plaintiff also alleges that Mackey fabricated a reason to prevent Plaintiff from seeing a doctor for treatment out of retaliation for filing administrative appeals against medical staff. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Robaina.

### iv. Dileo

Defendant Dileo is a doctor at KVSP. Plaintiff alleges that Defendant Dileo saw Plaintiff on March 2, 2009. Plaintiff complains that Dileo concluded that Plaintiff did not have any medical problems without examining Plaintiff's chart or ankle. Plaintiff claims that Dileo was retaliating

///

against him for filing administrative appeals against medical staff. When Plaintiff requested a chrono that detailed Dileo's findings, Plaintiff was kicked out of his office.

Plaintiff alleges that Dileo ignored Plaintiff's serious medical condition without conducting an examination or looking at Plaintiff's chart in retaliation for filing administrative appeals. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Dileo.

### 3. Supervisory/Appeals Coordinator Defendants

Plaintiff claims that Defendants that held positions as supervisors and appeals coordinators are liable for violating the Eighth Amendment because they were informed of Plaintiff's serious medical needs and failed to take appropriate action to ensure that Plaintiff received proper medical treatment. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff claims that supervisors and appeals coordinators are liable for knowing about ongoing constitutional violations related to his health care and failing to act to prevent them.

#### i. **N. Dill**

Defendant Dill is an associate warden at KVSP. Plaintiff alleges that Dill was informed about Plaintiff's need for dental treatment on several occasions through communications from Plaintiff and Plaintiff's mother. Plaintiff thus alleges that Dill had knowledge of Plaintiff's need for treatment and did nothing to make sure that Plaintiff's dental problems were addressed. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Dill.

### ii.  C. Pfeiffer

Defendant C. Pfeiffer is an appeal coordinator at KVSP. Plaintiff alleges that Pfeiffer was the appeal coordinator that responded to his appeals for medical treatment. Plaintiff claims that he repeatedly informed Pfeiffer through his appeals that he was in serious pain but Pfeiffer screened out his appeals. Plaintiff alleges that Pfeiffer also "illegally screened out" Plaintiff's appeals about his ankle treatment as well. Plaintiff thus alleges that Pfeiffer had knowledge of Plaintiff's need for treatment and failed to take appropriate action to prevent the ongoing constitutional violations related to his need for treatment. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Pfeiffer.

### iii.  Mohammad Ali

Defendant Mohammad Ali is a supervising registered nurse at KVSP. Plaintiff does not allege that Ali was directly involved in providing medical or dental care to Plaintiff. Plaintiff alleges that Ali read a medical appeal from Plaintiff on August 9, 2007. Plaintiff was seen by Defendant Araich the next day. Plaintiff also complains that Ali had "no answer" to an administrative appeal that Plaintiff filed on November 15, 2007. Plaintiff's allegations fail to establish a claim with respect to Ali's treatment of Plaintiff's August 9, 2007 appeal. Plaintiff filed an appeal processed by Ali and Plaintiff was seen by a nurse the next day. It is unclear how Ali's actions with respect to the August 9, 2007 appeal was deficient. However, Plaintiff alleges that on November 15, 2007, Ali was put on notice of Plaintiff's serious need for medical attention after he returned from surgery, and Ali failed to provide any response to Plaintiff's appeal. Thus, Plaintiff alleges that Ali had actual notice of Plaintiff's serious need for medical attention and failed to take appropriate action to prevent an ongoing constitutional violation from occurring. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Ali.

### iv.  Sharon Zamora

Defendant Sharon Zamora is the health care manager at KVSP. Plaintiff alleges that Defendant Sharon Zamora answered Plaintiff's second level appeal on November 14, 2007. Zamora informed Plaintiff that the prison only employed three dentists and dental assistants and could only perform emergency treatment. Plaintiff claims that Zamora refused to investigate Plaintiff's

complaints that dental staff were providing inadequate dental treatment. On November 15, 2007, Zamora responded to Plaintiff's appeal concerning Defendant Araich. Plaintiff alleges that Zamora covered up Araich's negligence and deliberate indifference by failing to provide a satisfactory response to Plaintiff's appeal. Plaintiff claims that Zamora's unwillingness to investigate the wrongdoing committed by the medical staff makes her liable for violating Plaintiff's rights.

Plaintiff claims that Zamora failed to properly investigate past wrongdoing committed by medical staff. However, Plaintiff does not have a constitutional right to vindication of his claims against prison officials. Therefore, Zamora's failure to properly investigate past wrongdoing does not violate the Eighth Amendment. However, the Eighth Amendment does require Zamora to take appropriate action to prevent ongoing constitutional violations from occurring. Thus, Plaintiff may state a claim against Zamora under the theory that Zamora was put on notice by Plaintiff through his appeals of an ongoing constitutional violation related to his deficient medical care, and Zamora failed to take appropriate action to prevent the ongoing constitutional violation from occurring. Plaintiff states a cognizable claim for violation of the Eighth Amendment against Defendant Zamora.

### v.     Sherry Lopez

Defendant Sherry Lopez is the chief medical officer at KVSP. Plaintiff alleges that on February 20, 2009, he was told by nurse Robaina that he could not receive his pain medication until Lopez signed off on it. Plaintiff's complaint lacks any other factual allegations concerning actions or omissions by Lopez. Plaintiff does not allege that Lopez had actual knowledge of Plaintiff's medical needs, or that Lopez deliberately failed to sign off on Plaintiff's pain medication. Plaintiff alleges that his pain medication was never ordered in the first place. It is unclear how Lopez violated Plaintiff's constitutional rights. Plaintiff fails to state a claim under the Eighth Amendment against Defendant Lopez.

Plaintiff was previously informed of the deficiencies in his claims against Defendant Lopez. (Order Requiring Pl. to File Amended Compl. 15:20-16:2, September 1, 2009.) Plaintiff's First Amended Complaint fails to meaningfully address the deficiencies in his claims that were specifically identified by the Court. As such, the Court finds that Plaintiff's claims against

///

Defendant Lopez are not capable of being cured by granting further leave to amend. Plaintiff's claims against Defendant Lopez will be dismissed without leave to amend.

### B. Fourteenth Amendment Claims

Plaintiff claims that Defendants violated his rights under the Fourteenth Amendment by causing "immeasurable physical and mental pain" and by depriving Plaintiff of "liberty, life, and property without the due process of law" by exposing Plaintiff to an unreasonable risk of harm. Plaintiff's right to be free from cruel and unusual punishment, which encompasses Plaintiff's right to be free from "immeasurable physical and mental pain" as well as Plaintiff's right to medical treatment for serious needs, is explicitly protected by the Eighth Amendment. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). Since the rights at issue are explicitly protected under the Eighth Amendment, Plaintiff's Fourteenth Amendment claims are superfluous. Plaintiff's claims will be treated as arising under the Eighth Amendment, not the Fourteenth Amendment.

Plaintiff was previously informed of the deficiencies in his Fourteenth Amendment claims. (Order Requiring Pl. to File Amended Compl. 18:1-9, September 1, 2009.) Plaintiff's First Amended Complaint fails to meaningfully address the deficiencies in his claims that were specifically identified by the Court. As such, the Court finds that Plaintiff's Fourteenth Amendment claims are not capable of being cured by granting further leave to amend. Plaintiff's Fourteenth Amendment claims will be dismissed without leave to amend.

### IV. Conclusion and Order

Plaintiff's complaint states cognizable claims against Defendants Garcia, Mendoza, Araich, Mackey, Robaina, Dileo, Dill, Pfeiffer, Ali, and Zamora for deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment. However, Plaintiff does not state cognizable claims for violation of the Fourteenth Amendment and Plaintiff does not state any cognizable claims against Defendants Adame, Tyson, or Lopez. Plaintiff was provided with the opportunity to amend

and his First Amended Complaint failed to remedy the deficiencies with these claims. The court finds that the deficiencies with Plaintiff's Fourteenth Amendment claims and claims against Defendants Adame, Tyson, and Lopez are not curable by further amendment of his complaint. Accordingly, it is HEREBY ORDERED that:

1. This action proceed on Plaintiff's First Amended Complaint, filed on October 8, 2009, against Defendants Garcia, Mendoza, Araich, Mackey, Robaina, Dileo, Dill, Pfeiffer, Ali, and Zamora for violation of the Eighth Amendment; and

2. Plaintiff's Fourteenth Amendment claims and Plaintiff's claims against Defendants Adame, Tyson, and Lopez be dismissed for failure to state a claim.

IT IS SO ORDERED.

**Dated:   December 14, 2009**             /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE