1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  PATRICK KUNKEL,                            CASE NO. 1:09-cv-00686-LJO-BAM PC

10             Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                             RECOMMENDING GRANTING IN PART
11     v.                                    AND DENYING IN PART DEFENDANTS
                                             DILL, GARCIA, MENDOZA, PFEIFFER AND
12  N. DILL, et al.,                         ZAMORA'S' MOTION FOR SUMMARY
                                             JUDGMENT
13             Defendants.
                                             (ECF No. 130)
14
                                      /      OBJECTIONS DUE WITHIN THIRTY DAYS
15

16  **I.    Procedural History**

17          Plaintiff Patrick Kunkel ("Plaintiff") is a state prisoner proceeding pro se and in forma

18  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the

19  first amended complaint, filed October 8, 2009, against Defendants Garcia, Mendoza, Araich,

20  Mackey, Robaina, Dileo, Dill, Pfeiffer, Ali, and Zamora for deliberate indifference in violation of

21  the Eighth Amendment.  On October 12, 2011, Defendants Dill, Garcia, Mendoza, Pfeiffer, and

22  Zamora filed a motion for summary judgment. (ECF No. 130.) On November 14, 2011, Defendants

23  Ali, Araich, Dileo, Mackey, and Robaina filed a motion for summary judgment.[1]  (ECF No. 137.)

24  After receiving several extensions of time, Plaintiff filed an opposition[2] to Defendants Dill, Garcia,

25

26          [1]Defendants Ali, Araich, Dileo, Mackey, and Robaina's motion for summary judgment and corresponding
27  filings will be addressed by separate findings and recommendations to issue at a later date.

28          [2]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
    Court in an order filed on January 14, 2010.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 15.)

Mendoza, Pfeiffer, and Zamora's motion for summary judgment on December 5, 2011. (ECF No. 139.)  Defendants Dill, Garcia, Mendoza, Pfeiffer, and Zamora filed a reply and an objection to Plaintiff's exhibits in support of his opposition on December 8, 2011. (ECF No. 140.)  On January 17, 2012, Plaintiff filed an opposition to Defendants Ali, Araich, Dileo, Mackey, and Robaina's motion for summary judgment. (ECF No. 145.)  Defendants Ali, Araich, Dileo, Mackey, and Robaina filed a reply on January 24, 2012. (ECF No. 146.)  Plaintiff filed a surreply to Defendants Ali, Araich, Dileo, Mackey, and Robaina's reply on February 10, 2012, and Defendants filed a motion to strike Plaintiff's surreply on February 13, 2012. (ECF No. 147, 148.)  Plaintiff filed a motion to file a surreply on February 27, 2012. (ECF No. 149.)  Defendants filed a reply to Plaintiff's motion to file a surreply on February 29, 2012. (ECF No. 150.)

The Court has painstakingly waded through all documents submitted addressing this motion, opposition, and reply.  In arriving at this findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## II.   Motion for Summary Judgment Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

1  which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S.

2  at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

3       If the moving party meets its initial responsibility, the burden then shifts to the opposing

4  party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.</u>

5  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence

6  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

7  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

8  material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475

9  U.S. at 586 n.11. If the non-moving party fails to establish that a genuine issue for trial exists "the

10  moving party is entitled to judgment as a matter of law." <u>Long v. County of Los Angeles</u>, 442 F.3d

11  1178, 1185 (9th Cir. 2006) (quoting <u>Celotex</u>, 477 U.S. at 323).

12       The parties bear the burden of supporting their motions and oppositions with the papers they

13  wish the Court to consider and/or by specifically referencing any other portions of the record for

14  consideration. <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

15  The Court will not undertake to mine the record for triable issues of fact. <u>Simmons v. Navajo</u>

16  <u>County, Arizona</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

17  **III.**   **Summary of Plaintiff's Allegations**

18       Plaintiff broke his tooth on July 18, 2006 and turned in approximately twenty requests for

19  dental service over the next seven months before he was seen by dental staff. Plaintiff was seen by

20  Defendants Garcia and Mendoza on February 1, 2007, who told him that he had a hole in his tooth

21  that needed to be fixed right away. Plaintiff was told that he would be called back within a week to

22  have the tooth fixed. (First Amend. Compl. ¶¶ 18, 19, 22, ECF No. 8.)

23       Plaintiff filed two administrative appeals concerning the lack of dental treatment. (<u>Id.</u> at ¶

24  20.) On February 8, 2007, Plaintiff was called to be interviewed regarding his administrative appeal.

25  Plaintiff's request for treatment was granted, but he was not given immediate treatment. Plaintiff

26  asked why his tooth could not be fixed that day and was informed that dental staff would fix the

27  tooth when they were ready. (<u>Id.</u> at ¶ 25.)

28       Over the next four months Plaintiff filed approximately fifteen dental requests and three

3

administrative appeals seeking dental treatment. (Id. at ¶ 26.) In April 2007, Plaintiff requested an "Olsen Review" of his medical file. Plaintiff was called in for the Olsen Review on May 24, 2007, and was told that his medical file was not available because "A-yard dental" had it. (Id. at ¶ 30.) When Plaintiff received his medical file almost all the dental records were missing. (Id. at ¶ 31.) Plaintiff filed an administrative appeal regarding the missing dental records and sent a copy of the appeal to Defendant Dill. (Id. at ¶ 34.) From February 1, 2007, though May 25, 2007, Plaintiff's mother called several times and spoke with Defendant Dill or his office regarding Plaintiff's dental issues. (Id. at ¶ 35.)

On May 25, 2007, Plaintiff was brought for an appointment to have his tooth repaired. Defendant Garcia informed Plaintiff that the hole was so large and close to a nerve that they might have to extract the tooth. (Id. at ¶ 38.) Defendant Garcia filled the cavity that same day. Plaintiff noticed that his dental records were missing and requested a copy. Plaintiff was told that he would have to request an Olsen Review to receive a copy of his dental records. (Id. at ¶ 39.) Plaintiff was informed that dental staff had tried to have Plaintiff brought for an appointment to have his tooth fixed between February 1, 2007, and May 25, 2007, but "PSR" or "custody issues" prevented Plaintiff from being brought in. (Id. at ¶ 40.)

Plaintiff filled out another request for treatment after the numbing agent wore off. (Id. at ¶ 44.) Plaintiff received a response on June 8, 2007, stating that he would be seen within two weeks. Plaintiff was not seen until July 6, 2007. (Id. at ¶ 46.) On August 29, 2007, Plaintiff's tooth was extracted. Plaintiff's mother called Defendant Dill several times between February 1, 2007, and August 29, 2007, informing Defendant Dill of Plaintiff's dental needs. (Id. at ¶ 48.) Plaintiff filed appeals complaining that Defendant Pfeiffer failed to perform his duties as appeal coordinator. (Id. at ¶ 49.) Defendant Zamora answered Plaintiff's appeal at the second level and refused to investigate the staff involved. (Id. at ¶ 54.)

In January 2007, Plaintiff was placed on pain medication by Dr. Akanno due to an old injury that had resulted in the insertion of a metal plate in his ankle. (Id. at ¶¶ 64, 56, 69.) On June 15, 2007, Plaintiff was seen by Defendant Araich who ordered x-rays, a consultation with a podiatrist, and increased pain medication. Plaintiff was also told that he would receive an orthopedic consult.

1  (Id. at ¶ 71.)  Plaintiff was taken off the pain medication on July 15, 2007, leaving him in constant

2  pain.  (Id. at ¶ 72.)

3  On August 9, 2007, Plaintiff's medical appeal was reviewed by Defendant Ali, and Plaintiff

4  was seen by Defendant Araich on August 10, 2007.  (Id. at ¶ 77.)  Defendant Araich told Plaintiff

5  that he was not receiving pain medication because she believed he was manipulative and faking his

6  symptoms.  Defendant Araich then ordered an orthopedic consult.  (Id. at ¶ 79.)  Plaintiff requested

7  a second opinion, but Defendant Araich refused.  Plaintiff requested to be seen by a pain specialist

8  on August 20, 2007.  (Id. at ¶ 79.)

9  On September 6, 2007, Plaintiff was seen by a specialist who recommended that he have

10  surgery to remove the metal plate from his ankle as soon as possible.  (Id. at ¶ 80.)  On September

11  18, 2007, Plaintiff was seen by the podiatrist and received a cortisone shot in his ankle.  Plaintiff was

12  warned of the dangers of a "gangleous cyst" on the side of his ankle.  (Id. at ¶ 83.)  On October 30,

13  2007, the podiatrist noticed that Plaintiff had an infection over the "screw area" of the metal plate

14  that was giving Plaintiff problems and recommended that Plaintiff receive surgery to remove the

15  cyst.  (Id. at ¶ 84.)  On the same day Plaintiff saw Defendant Araich who claimed the sores on

16  Plaintiff's ankle were self inflicted.  (Id. at ¶ 85.)

17  Plaintiff had surgery to remove the metal plate on November 14, 2007, and was informed that

18  only two screws were removed because the rest were stripped.  The metal plate was left in Plaintiff's

19  ankle and he was told that if the pain persisted he should file another request to have the metal plate

20  and screws removed.  (Id. at ¶ 86.)  Plaintiff did not receive pain medication or an ice pack after

21  surgery.  (Id. at ¶¶ 87, 88.)  On November 18, 2007, Defendant Araich told Plaintiff he would not

22  receive an ice pack even though one had previously been ordered.  Defendant Akanno wrote a

23  prescription for a single ice pack for that night and Plaintiff did not receive any additional ice packs.

24  (Id. at ¶ 91.) The swelling in Plaintiff's ankle worsened and his stitches ripped and fluid leaked.  (Id.

25  at ¶ 92.)

26  Plaintiff's sutures were removed on December 4, 2007.  (Id. at ¶ 96.)  On December 10,

27  2007, Plaintiff filed another medical request because his ankle was still red and seeping fluid.  (Id.

28  at ¶ 97.)  Plaintiff was seen by an orthopedic surgeon on December 13, 2007.  (Id. at ¶ 98.)  On June

5

2, 2008, Plaintiff saw the podiatrist and received a cortisone shot in his ankle.  On September 29, 2008, Plaintiff was prescribed pain medication by Dr. Patel.  (Id. at ¶ 102.)

On February 18, 2009, Plaintiff was told by Defendant Mackey that his pain medication had been lost.  (Id. at ¶ 107.)  Plaintiff ran out of pain medication on February 19, 2009, and Defendants Mackey and Robaina told Plaintiff that his pain medication was reordered, but needed to be signed off by Defendant Lopez before he could receive it.  (Id. at ¶ 110.)  Plaintiff alleges that Defendants Mackey and Robaina lied to Plaintiff about being able to receive treatment and about reordering his pain medication in retaliation for his filing an administrative appeal against them.  (Id. at ¶ 111.)  On February 25, 2009, Defendant Robaina interviewed Plaintiff for his appeal on the missing medication and refused to allow Plaintiff to see a doctor despite his being in extreme pain.  (Id. at ¶ 113.)

On March 2, 2009, Plaintiff was examined by Defendant Dileo regarding his ankle pain.  Defendant Dileo did not examine or look at Plaintiff's chart, but concluded that Plaintiff was fine, allegedly in retaliation for administrative appeals Plaintiff filed against medical staff.  (Id. at ¶ 115.)

On September 21, 2009, Plaintiff was seen in medical and informed that his ankle looked as if it was infected.  Plaintiff claims that Defendant Araich refused to treat his infected ankle because he had filed an appeal against her.  (Id. at ¶¶ 125, 126.)  Plaintiff was seen by medical on September 22, 2009, and was treated by Dr. Patel who told Plaintiff he had an infection and prescribed antibiotics and pain medication.  (Id. at ¶ 130.)

Plaintiff alleges that Defendants Pfeiffer, Ali, and Zamora screened his appeals and failed to correct the deficiencies in his medical care.  (Id. at ¶¶ 51, 54, 132, 136.)

**IV.**   **Motion for Summary Judgment**

    **A.**   **Defendants' Statement of Undisputed Facts**

1.   Defendant Garcia is a registered dentist in the State of California.  (ECF No. 103-5, ¶ 1.)

2.   Defendant Garcia graduated with a doctorate in dental surgery from the University of San Francisco in 1973.  (Id.)

3.   Defendant Garcia has been employed as a dentist with the California Department of Corrections and Rehabilitation ("CDCR") at Kern Valley State Prison ("KVSP") since September 2005.  (Id.)

4.      Defendant Garcia's responsibilities at KVSP include the dental treatment of inmates.  (Id. at ¶ 2.)

5.      One of the inmates Defendant Garcia treated was Plaintiff.  (Id.)

6.      Defendant Mendoza is a registered dental assistant in the State of California. (ECF No. 130-11, ¶ 1.)

7.      Defendant Mendoza has been employed as a dental assistant with CDCR at KVSP since February 26, 2007. ((Id.)

8.      After a training period, Defendant Mendoza began assisting with the dental treatment of inmates.  (Id.)

9.      Defendant Mendoza's responsibilities at KVSP include assisting with the dental treatment of inmates.  (Id. at ¶ 2.)

10.     Defendant Mendoza has assisted with Plaintiff's dental treatment.  (Id.)

11.     As a dental assistant, Defendant Mendoza does not determine when an inmate's teeth can be fixed or what treatment the inmate can receive.[3]  (Id. at ¶ 3.)

12.     The treating dentist must determine when to provide treatment and what kind of treatment to provide.  (Id.)

13.     Defendant Mendoza's duties in treating patients are directed by the dentist.  (Id.)

14.     If an inmate wants to request a dental appointment for any reason, he must submit a CDCR 7362 form (Health Care Services Request) describing the reason he is requesting an appointment. (ECF No. 130-5, ¶ 3.)

15.     A medical clinic nurse will receive the form and sometimes stamp a priority on the form based on the inmate's reason for requesting the appointment.  (Id.)

16.     The form is sent to the dental clinic for review by a dentist.  (Id.)

17.     The dentist will review the inmate's request and dental records and determine what dental

---

[3] Plaintiff disputes this as Defendant Mendoza hears inmate appeals and therefore must have some involvement in when an inmate is seen.  (Opp. 3-4, ECF No. 139.)  Although Plaintiff refers to Exhibit 24, no. 10, the Court assumes he meant to refer to Exhibit 24, no. 1, which states that Defendant Mendoza answers inmate appeals at the first level of review.

        All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    priority to give the inmate.  (Id.)

2    18.    In 2006 and 2007, due to dental staff shortages, dental priorities were merely guidelines to

3           determine the time in which the inmate should be seen.[4]  (Id. at ¶ 4.)

4    19.    Defendant Mendoza can only mark a priority on a Health Care Request form (Form 7362)

5           or Progress Note (Form 237-C) after the dentist informs her of what priority to mark on the

6           form.  (ECF No. 130-11, ¶ 4.)

7    20.    After Defendant Mendoza or the dentist marks a priority on the appropriate form, a copy of

8           the form is given to the office technician to record and schedule an appointment.  (Id.)

9    21.    Defendant Mendoza does not schedule dental appointments for inmates.  (Id. at ¶ 5.)

10   22.    The dentist and office technicians schedule dental appointments for inmates.  (Id.)

11   23.    It is not Defendant Mendoza's duty to ensure that inmates are called in to be seen by the

12          dentist.[5]  (Id.)

13   24.    A review of Plaintiff's dental records demonstrates that on July 18, 2006, Plaintiff submitted

14          a Health Care Services Request form alleging that he had broken a piece of his tooth the day

15          before and there was now a sharp piece bothering him.[6]  (ECF No. 130-5, ¶ 5.)

16   25.    Plaintiff submitted a Health Care Services Request form on October 27, 2006, complaining

17          that his tooth was starting to bother him a lot and he needed to have it filled.  (Id.)

18   26.    The form was marked "urgent" by the medical clinic nurse, but after review of Plaintiff's

19

20       [4] Plaintiff disputes this as the refusal to properly staff the prison is not an excuse to deliberately not
     following the CDCR rules and regulations and court ordered stipulation agreed to in Perez v. Tilton.  (Id. at 4.)

21       [5] Plaintiff disputes this as he believes it is Defendant Mendoza's duty to follow CDCR rules and regulations
     and if an inmate is suffering from pain it is her duty to make sure the inmate is seen.  Plaintiff was not seen within the
22   KVSP and CDCR policy and was known to be in pain.  Also, in 2005 dental assistants read dental requests and
     ducated patients.  (Id.)
23          A ducat is a written pass issued to summon inmates for medical or other appointments.

24       [6] Plaintiff disputes facts No. 24 through 31.  Plaintiff states that he filed no less than thirty four requests to
     get his tooth treated.  (Id. at 6.)  Plaintiff alleges that Defendants are attempting to deceive the court by stating that
25   Plaintiff has filed only two requests for treatment when he filed more than thirty four requests.
            Although it is clear that Plaintiff filed at least twenty six requests for treatment it has not been established
26   that he filed more than thirty four.  Plaintiff appears to identify additional requests based on the housing number
     stated in the log.  Additionally, approximately half of these requests for services are beyond the time period found to
27   be at issue for Plaintiff's dental claims.  Plaintiff states that he filed additional requests and speculates as to the
     information that would be contained in those complaints.  The Court does not find that by only presenting available
28   documentary evidence Defendants have engaged in any attempt to mislead the Court or misstate facts.

dental records, Defendant Garcia determined that the proper priority for Plaintiff's complaint was "r=2" or a routine triage appointment.[7]  (Id.)

27.    It appeared that Plaintiff merely had a cavity.  (Id.)

28.    Rarely is emergency treatment needed for cavities.  (Id.)

29.    Plaintiff was seen by Defendant Garcia on February 1, 2007.  (Id. at ¶ 6.)

30.    Plaintiff's chief complaint concerned restoration of the filling of his upper right molar.[8]  (Id.)

31.    During the visit, Defendant Garcia determined that the filling in tooth #3 (upper right molar) was decayed and should be restored.  (Id.)

32.    A filling is a way to restore a tooth damaged by decay (cavity) back to its normal function and shape.  (Id.)

33.    A note on a request form submitted by Plaintiff provides that Plaintiff was seen on February 8, 2007, to discuss his inmate appeal regarding treatment for tooth #3, and that he appeared satisfied regarding the planned treatment for his tooth.[9]  (Id.)

34.    Plaintiff was scheduled to be treated on March 15, 2007; however, the appointment was cancelled by KVSP custody due to security reasons at the prison.[10]  (Id. at ¶ 7.)

35.    If prison custody does not bring an inmate to the dental clinic, Defendant Garcia cannot treat

---

[7] Plaintiff disputes this as a patient must be seen within ten days after the request for treatment is received. Defendants Garza and Mendoza failed to arrange for an appointment within ten days of his request for treatment. (Id.)

[8] Plaintiff states that he never had a filling in tooth #3.  The hole was caused by the broken tooth.   (Id. at 7.) Plaintiff's dental records show that he was seen in March 2004, complaining of a hole in tooth 3, and the treatment notes state that a possible filling was needed. (ECF No. 139-1 at 28.)  On April 4, 2004, Plaintiff's records show that tooth 3 was treated, however it is unclear if the tooth was filled.  (ECF No. 139-1 at 29.)

[9] Plaintiff disputes this as Defendant Garcia stated in his request for admissions that an appeal was not located and he denied that he heard Plaintiff's appeal on February 8, 2007. Defendant Mendoza also claimed Plaintiff did not file an inmate appeal.  (ECF No. 139 at 7-8.)

Defendant Garcia stated in the response to request for admissions that he did not recall Plaintiff's inmate appeal, and was unable to locate the appeal. (ECF No. 139-6 at 165, Response No. 5.)  While Plaintiff states that Defendant Mendoza claimed he did not file an inmate appeal, a review of her responses reveals that Defendant Mendoza denied having heard Plaintiff's appeal on February 8, 2007, because a review of the tracking log did not show that an appeal was granted on February 8, 2007. (ECF No. 139-6 at 174, Response No. 11.)  The Court notes that since Defendant Zamora was not employed at KVSP on February 8, 2007, she could not have been involved in hearing Plaintiff's appeal.

[10] Plaintiff disputes facts No. 34 through 37 because KVSP regulations state that lock downs shall not prevent the completion of scheduled appointments.  (ECF No. 139 at 8.)

1    him.  (Id.)

2    36.   Defendant Garcia could only schedule another time to treat the inmate after Defendant Garcia

3          returned to the inmate yard.  (Id.)

4    37.   On May 10, 2007, Plaintiff was scheduled to be treated by Defendant Garcia, but he was not

5          seen due to another custody issue at the prison.  (Id.)

6    38.   On May 23, 2007, Plaintiff submitted a request form complaining of pain in his broken tooth.

7          (Id.; ECF No. 130-11, ¶ 6.)

8    39.   Defendant Mendoza reviewed Plaintiff's request on May 25, 2007.  (Id.)

9    40.   The request form indicated that Plaintiff needed a restorative filling in tooth #3 and that an

10         urgent appointment was needed.  (Id.; ECF No. 130-5, ¶ 7.)

11   41.   Plaintiff was seen by Defendants Garcia and Mendoza on the same day, May 25, 2007.  (ECF

12         No. 130-11, ¶ 6; ECF No. 130-5, ¶ 7.)

13   42.   Defendant Garcia noted that Plaintiff was missing a filling in tooth #3.  (Id.)

14   43.   A full mouth x-ray (FMX) was taken and Defendant Garcia restored the filling in Plaintiff's

15         tooth #3.  (Id.; ECF No. 130-11, ¶ 6.)

16   44.   Plaintiff was seen by Dr. Tadros on July 6, 2007.  (ECF No. 130-5, ¶ 8.)

17   45.   Plaintiff complained of feeling pain in tooth #3.  (Id.)

18   46.   Dr. Tadros' progress note confirmed that the filling was done on tooth #3 forty five days

19         prior and that it was in good functional condition.  (Id.)

20   47.   Dr. Tadros did not observe any broken tooth structures, swelling or signs of infection.  (Id.)

21   48.   Dr. Tadros determined that no treatment was needed at that time, and ordered that Plaintiff

22         receive a follow-up appointment in one month.  (Id.)

23   49.   Plaintiff was seen by Dr. Tadros again on July 11, 2007.  (Id.)

24   50.   Dr. Tadros noted that Plaintiff complained of pain, so he prescribed Amoxicillin and ordered

25         that Plaintiff receive a follow-up exam in two weeks.  (Id.)

26   51.   Amoxicillin is a penicillin antibiotic used to treat many different types of infections caused

27         by bacteria.  (Id.)

28   52.   Plaintiff was seen on July 13, 2007, by nurse practitioner Araich who prescribed Plaintiff

1    Naproxen for pain.  (Id.)

2    53.    Naproxen is a nonsteroidal anti-inflammatory used to treat pain or inflammation.  (Id.)

3    54.    On July 27, 2007, Plaintiff was treated again by Dr. Tadros.  (Id.)

4    55.    Plaintiff stated that tooth #3 felt much better.  (Id.)

5    56.    Dr. Tadros found no swelling or signs of infection.  (Id.)

6    57.    A panoramic radiograph was taken of Plaintiff's mouth.  (Id.)

7    58.    Dr. Tadros indicated that no treatment was needed at that time.  (Id.)

8    59.    Dr. Tadros provided Plaintiff with a Health Care Services Request form if Plaintiff felt

9           further dental care was needed.  (Id.)

10   60.    On August 13, 2007, Plaintiff was treated by Dr. Tadros who noted that Plaintiff had lost the

11          filling in tooth #3.  (Id.)

12   61.    Dr. Tadros placed a temporary filling in tooth #3, and ordered that Plaintiff be seen again in

13          two weeks.  (Id.)

14   62.    On August 24, 2007, Plaintiff was again treated by Dr. Tadros for his complaint of pain in

15          tooth #3.  (Id.)

16   63.    Dr. Tadros observed slight swelling next to tooth #3, and opined that tooth #3 might need

17          to be extracted.  (Id.)

18   64.    Dr. Tadros renewed Plaintiff's prescription for Amoxicillin, and prescribed Motrin 600 mg.

19          (Id.)

20   65.    Dr. Tadros also ordered that Plaintiff return in two weeks for his tooth to be re-evaluated for

21          possible extraction.  (Id.)

22   66.    On August 29, 2007, Plaintiff was examined by Dr. Nguyen who determined that tooth #3

23          should be extracted.  (Id.)

24   67.    Tooth #3 was removed that day by Dr. Nguyen.  (Id.)

25   68.    Dr. Nguyen noted that Plaintiff had a prescription of Motrin (ibuprofen) for pain.  (Id.)

26   69.    Defendant Mendoza only assisted in the treatment of Plaintiff on one occasion, when she

27          assisted Defendant Garcia in the restoration of Plaintiff's filling in tooth #3 on May 25, 2007.

28          (ECF No. 130-11, ¶ 6.)

70.  Prior to May 25, 2007, Defendant Mendoza had no knowledge of the condition of Plaintiff's tooth or that he was requesting to be seen for treatment.[11]  (Id. at ¶ 7.)

71.  From December 2005 to February 2007, there was a hiring freeze at KVSP. (ECF No. 130-5, ¶ 9.)

72.  As a result, there were only three dentists and three dental assistants employed to treat all of the inmates in the institution; thereby only allowing dental staff to provide dental services on an emergency basis.  (Id.)

73.  In order to treat the inmates during this time, dentists were rotated between prison yard clinics every day or two.  (Id.)

74.  The Chief dentist would decide which yard the dentists would go to each day.  (Id.)

75.  Defendant Garcia had no control regarding which yard he went to on a particular day.  (Id.)

76.  Once Defendant Garcia was assigned to a yard, he would sort through the dental charts to determine which inmates needed care first based upon the extent of their dental needs.  (Id. at ¶ 10.)

77.  Given the resources available to Defendant Garcia, Defendant Garcia made a good faith and earnest effort to treat Plaintiff.[12]  (Id. at ¶ 11.)

78.  Defendant Garcia did not intentionally deny, delay, or interfere with Plaintiff's dental treatment in any way.[13]  (Id.)

79.  Dental staff does not keep or store inmate's medical records.[14]  (Id. at ¶ 12; ECF No. 130-11, ¶ 8.)

---

[11]Plaintiff disputes this because on May 10, 2007, Defendant Mendoza wrote that she did not see Plaintiff due to custody and PSR. On May 24, 2007, Defendant Mendoza had Plaintiff's dental records.  (Id. at 9.)
    Plaintiff states that Defendant Mendoza wrote that he was not seen on May 10, 2007, however there is no indiction who made this notation in his chart.  Additionally, although Plaintiff alleges that Defendant Mendoza had his chart on May 24, 2007, the dental record only indicates that Defendant Garcia reviewed his chart.  (ECF No. 139-1 at 31.)

[12]Plaintiff disputes this because Defendant Garcia refused to follow the rules and refused to treat Plaintiff after his repeated requests due to being in pain and in need of emergency treatment.  (ECF No. 139 at 9-10.)

[13]Plaintiff disputes this as Defendant Garcia had ample opportunity to address Plaintiff's issue, but chose not to.  (Id. at 10.)

[14]Plaintiff disputes this as Defendants admitted to doing a record review.  (Id.)

80.    The records are stored in the prison Medical Records Office.  (ECF No. 130-5, ¶ 12; ECF No. 130-11, ¶ 8.)

81.    When an inmate is going to be seen, his records are brought to the dental clinic.  (ECF No. 130-5, ¶ 12; ECF No. 130-11, ¶ 8.)

82.    After the patient is treated his records are placed back in a box and sent back to the Medical Records Office at the end of the day.  (ECF No. 130-5, ¶ 12; ECF No. 130-11, ¶ 8.)

83.    Defendants Garcia and Mendoza are not involved with transporting the records to or from the dental clinic.  (ECF No. 130-5 ¶ 12; ECF No. 130-11, ¶ 8.)

84.    Defendants Garcia and Mendoza did not steal Plaintiff's dental or medical records nor did they keep Plaintiff's dental records from him.[15]  (ECF No. 130-5, ¶ 13;ECF No. 130-11, ¶ 9.)

85.    Defendants Garcia and Mendoza cannot give an inmate his medical records directly.  (ECF No. 130-5, ¶ 14; ECF No. 130-11, ¶ 10.)

86.    Inmates can only have access to their medical records by use of an Olsen Review.  (ECF No. 130-5, ¶ 14;ECF No. 130-11, ¶ 10.)

87.    An Olsen Review is a process where an inmate submits a request to view his medical records, and then prison staff will set up a time for the inmate to review his records. Defendants Garcia and Mendoza have no duties regarding Olsen Reviews.  (ECF No. 130-5, ¶ 14; ECF No. 130-11, ¶ 10.)

88.    Plaintiff admitted that he went to the "hole" on June 7, 2007, and after that date he was not treated by Defendants Garcia or Mendoza.  (ECF No. 130-3, ¶ 3; Exh. A, Plaintiff Depo. 16:20-24, ECF No. 130-4 .)

89.    Plaintiff does not know who took his medical records.[16]  (ECF No. 130-3, ¶ 3; Exh. A, Plaintiff Depo. 29:9-10.)

---

[15]Plaintiff disputes this as Defendants Mendoza and Garcia were the last to have his medical records and they are responsible.  (Id. at 11.)

[16]Plaintiff disputes this as he was told during his Olsen Review that Defendants Mendoza and Garcia had his records, and their own records show they did a review on the same day that Plaintiff had his Olsen Review.  (Id. at 11-12.)

90.   Defendant Dill was employed as the Associate Warden for Health Care Services at KVSP from October 2005 to February 2009.  (ECF No. 130-13, ¶ 1.)

91.   Defendant Dill is currently retired.  (Id.)

92.   Defendant Dill's duty as Associate Warden for Health Care Services was to oversee the security aspect of inmate healthcare.  (Id. at ¶ 2.)

93.   This entails the security of inmates and prison staff while inmates are escorted to and from medical facilities, and while inmates are at a medical facility.  (Id.)

94.   It was Defendant Dill's job to ensure that inmates arrived at their medical appointments on time, and to ensure their and others' safety once they arrived.  (Id.)

95.   Defendant Dill is not a medical provider.  (Id. at ¶ 3.)

96.   Defendant Dill could not make determinations regarding medical treatment for inmates nor could he require medical staff to provide treatment to an inmate.[17]  (Id.)

97.   Defendant Dill had no power to determine when an inmate was scheduled for a medical appointment.  (Id.)

98.   Defendant Dill could not tell medical staff how or when to treat an inmate and had no control regarding inmate's medical records.  (Id. at ¶ 5.)

99.   Defendant Dill was not involved with transporting the records to or from the dental or medical clinics.  (Id.)

100.   Defendant Dill did not steal Plaintiff's dental or medical records nor did Defendant Dill keep Plaintiff's dental records from him.  (Id.)

101.   Plaintiff has admitted that Defendant Dill did not remove files from his medical records.  (ECF No. 130-3, ¶ 4; Exh. B, Plaintiff's Response to Defendant Dill's Request for Admission, No. 8.)

102.   Defendant Zamora has been employed with the CDCR since 2001.  (ECF No. 130-7, ¶ 1.)

103.   Defendant Zamora was the Health Care Manager at KVSP from May 2006 through August

---

[17]Plaintiff disputes this stating that if Defendant Dill was aware there was a problem he had a duty to inform staff to see Plaintiff.  Defendant Dill was aware of Plaintiff's problem due to the appeals sent directly to his office and Plaintiff's family called him.  Defendant Dill's job was to ensure compliance with the rules.  (Id. at 12.)

1   2008.  (Id.)

2   104.   Defendant Zamora's responsibilities as the Health Care Manager were purely administrative

3          and she was not involved in the day-to-day care and treatment of patients.  (Id. at ¶ 2.)

4   105.   Defendant Zamora is not a medical provider.  (Id.)

5   106.   Defendant Zamora cannot provide dental or medical treatment nor can she prescribe or order

6          dental or medical treatment to be performed.[18]  (Id.)

7   107.   Plaintiff submitted an inmate appeal dated August 27, 2007, concerning treatment for his

8          tooth.[19]  (Id. at ¶ 4.)

9   108.   Defendant Zamora reviewed this appeal at the second level of review on November 14, 2007.

10         (Id.)

11  109.   Plaintiff requested to be given a root canal, or if the tooth was extracted, to be given an

12         anchor to replace the tooth.  (Id.)

13  110.   In preparing a response to Plaintiff's appeal, Defendant Zamora reviewed his appeal, his

14         dental records, and the decisions made at the lower levels of review.  (Id. at ¶ 5.)

15  111.   Defendant Zamora's inquiry showed that Plaintiff had been seen by Dr. Tadros on August

16         24, 2007, regarding tooth #3.  (Id.)

17  112.   Dr. Tadros explained to Plaintiff that his tooth might need a filling or extraction.  (Id.)

18  113.   Plaintiff was seen and interviewed by Dr. Nguyen on August 29, 2007.  (Id.)

19  114.   Dr. Nguyen explained to Plaintiff that tooth #3 might require a root canal procedure, but per

20         Health Care Services policies and procedures, a root canal on molar teeth is an excluded

21         service and cannot be performed while an inmate is in CDCR custody.  (Id.)

22  115.   During that visit, Dr. Tadros extracted tooth #3.  (Id.)

23

24         [18]Plaintiff disputes this as Defendant Zamora might not have been able to provide treatment, but she had a
25  duty to inform staff to see a patient when there was a need for him to be seen.  (Id. at 13.)

26         [19]Plaintiff states that he also filed eleven appeals that staff lost and others were not returned.  (Id. at 13-14.)
    Plaintiff states that Defendant Zamora fails to mention his other appeals as shown in Exhibit 8.  Exhibit 8 is a single
27  appeal, Appeal No. KVSP-0 07-02198, filed May 27, 2007, in which Plaintiff grieved his missing medical records.
    (ECF No. 139-6 at 10-19.)  However this appeal, filed after Plaintiff's tooth was treated, and other appeals that
28  Defendant Zamora was unaware of, are not relevant as to whether Defendant Zamora was aware of his serious need
    for dental services and failed to respond.

116.   Plaintiff was provided antibiotics and told to continue taking his pain medication.[20]  (Id.)

117.   Dr. Tadros determined that Plaintiff did not meet the Health Care Services requirements in order to receive a replacement for tooth #3.  (Id.)

118.   Based on the information acquired, Defendant Zamora denied Plaintiff's appeal because Plaintiff could not receive a root canal or an anchor to replace the extracted tooth.  (Id.)

119.   Defendant Zamora did not personally meet with Plaintiff during the course of preparing the response to his appeal because he had previously been interviewed by a dentist at the first formal level of review.  (Id. at ¶ 6.)

120.   Defendant Zamora has never met Plaintiff.  (Id.)

121.   Plaintiff has sued Defendant Zamora because she was the health care manager at the time. (ECF No. 130-3, ¶ 3; Exh. A, Plaintiff's Depo 44:4-6.)

122.   Plaintiff believes that Defendant Zamora was deliberately indifferent because it was her responsibility to make sure the rules and regulations of the dental policy were being followed.[21]  (ECF No. 130-3, ¶ 3; Exh. A, Plaintiff's Depo 44:4-6.)

123.   Plaintiff does not believe that Defendant Zamora is responsible for his missing medical records.[22]  (ECF No. 130-3, ¶ 3; Exh. A, Plaintiff's Depo. 47:24-25; Exh. B, Response to Zamora's Request for Admission No. 8.)

124.   Defendant Pfeiffer has been employed with CDCR for fourteen years.  (ECF No. 9, ¶ 1.)

125.   Defendant Pfeiffer held the position of Appeals Coordinator at KVSP from 2006 to 2008. (Id.)

126.   As the Appeals Coordinator, Defendant Pfeiffer played no role in the clinical care and

---

[20]Plaintiff disputes this as he was given antibiotics on August 26, 2007.  (Id. at 14.)
   A review of Plaintiff's medical records shows that he received Amoxicillin on August 26, 2007, and Cephalexin on August 29, 2007.  (ECF No. 139-1 at 39, 41.)

[21]Plaintiff states that Defendant Zamora's responsibilities included budgeting, personnel staffing, and contracting, so it was her responsibility to ensure that there were not staff shortages.  Defendant Garcia states that Plaintiff was not seen because there was not adequate staff to treat inmates.  Defendant Zamora was responsible for contracting so she was the reason Plaintiff was denied treatment for over one year.  (ECF No. 139 at 14-16.)

[22]Plaintiff believes that Defendant Zamora is not responsible for his missing medical records, but is responsible for the missing exhibits of his appeal since she was the last person to have the appeal before it was returned to him.  (Id. at 16.)

1    treatment of inmates.  (Id. at ¶ 2.)

2    127.   Defendant Pfeiffer is not a licensed medical provider.  (Id.)

3    128.   Defendant Pfeiffer is not qualified to pass clinical judgment on the care that an inmate is

4          receiving.  (Id.)

5    129.   Defendant Pfeiffer is neither permitted nor qualified to recommend, grant, or deny a

6          particular type of medical treatment.  (Id.)

7    130.   Similarly, Defendant Pfeiffer does not have the authority to instruct a doctor to see a patient

8          or to provide a certain type of treatment.  (Id.)

9    131.   The role of the Appeals Coordinator is to screen and categorize inmate appeals for

10         compliance with CDCR procedures as defined by California Code of Regulations ("CCR"),

11         Title 15, §§ 3084 et seq.  (Id. at ¶ 3.)

12   132.   Defendant Pfeiffer screened an appeal, log #07-02198, submitted by Plaintiff on March 18,

13         2007.[23]  (Id. at ¶ 5.)

14   133.   In this appeal, Plaintiff claimed that he had seen a dentist on February 1, 2007, and February

15         7, 2007, because he had broken a piece of his tooth.  (Id. at ¶¶ 5, 7; Exh. A, Inmate Appeal.)

16   134.   Plaintiff alleged that the doctor took x-rays, said it was serious, and that Plaintiff should be

17         called back to see the dentist within thirty days.  (ECF No. 130-9, ¶¶ 5, 7; Exh. A, Inmate

18         Appeal.)

19   135.   Plaintiff asked to have his tooth fixed properly, if possible, and if extraction was necessary,

20         he wanted an anchor to replace the tooth.  (ECF No. 130-9, ¶¶ 5, 7; Exh. A, Inmate Appeal.)

21   136.   Plaintiff also requested x-rays and to have his teeth cleaned.  (ECF No. 130-9, ¶¶ 5, 7; Exh.

22         A, Inmate Appeal.)

23   137.   Defendant Pfeiffer's office received the appeal on April 11, 2007.  (ECF No. 130-9, ¶¶ 5, 7;

24         Exh. A, Inmate Appeal.)

25   138.   Defendant Pfeiffer reviewed Plaintiff's appeal, and on April 16, 2007, sent Plaintiff a letter

26         informing him that if he would like to access Medical Services, he must submit a request on

27   _____

28   [23]Plaintiff disputes this fact as he claims the appeal was illegally screened out.  (Id. at 16-18.)

1    a CDC Form 7362, and send it to the Medical Department for an appointment.  (ECF No.

2    130-9, ¶¶ 6, 7; Exh. A, April 16, 2007 Screening Letter.)

3    139.   A CDC Form 7362 (Health Care Services Request) is a form an inmate submits to receive

4    a medical or dental appointment.  (ECF No. 130-9, ¶ 6.)

5    140.   Defendant Pfeiffer returned the appeal to Plaintiff because a request for a dental appointment

6    is made by use of Form 7362.[24]  (ECF No. 130-9, ¶¶ 6, 7; Exh. A, April 16, 2007 Screening

7    Letter.)

8    141.   An appeal, on the other hand, is used to complain about an adverse action.  (ECF No. 130-9,

9    ¶ 6.)

10   142.   Additionally, Plaintiff claimed in the appeal that he had been seen twice by a dentist and the

11   dentist ordered that he come back in thirty days.[25]  (ECF No. 130-9,  ¶¶ 6, 7; Exh. A, April

12   16, 2007 Screening Letter.)

13   143.   Thus there was no indication that an emergency request was necessary.[26]  (ECF No. 130-9,

14   ¶¶ 6, 7; Exh. A, Inmate Appeal.)

15   144.   Furthermore, Plaintiff's appeal was not rejected.[27]  (ECF No. 130-9, ¶¶ 6, 7; Exh. A, Inmate

16   Appeal.)

17   145.   Defendant Pfeiffer submitted the appeal for an informal level review.  (ECF No. 130-9, ¶¶

18   6, 7; Exh. A, Inmate Appeal.)

19   146.   Plaintiff was dissatisfied with the response at the informal level of review, so he submitted

20   the appeal for a first formal level of decision.   (ECF No. 130-9, ¶¶ 8, 9; Exh. A, Inmate

21   Appeal, Section D; Exh. B.)

22

23   [24]Plaintiff disputes this as he claims he filed numerous requests for treatment which were not responded to

24   by staff and that was the reason for his appeal.  (Id. at 18.)

25   [25]Plaintiff disputes this because the appeal was seventeen days past the thirty day deadline in which he was
     told he would be seen.  (Id. at 19.)

26   [26]Plaintiff disputes this as guidelines exist to allow emergency appeals to be processed where there is a
     threat to an inmate's safety or other serious and irreparable harm.  (Id. at 18.)

27

28   [27]Plaintiff disputes this stating it is true the appeal was not rejected, but it was illegally screened out.  (Id.)

147. In his resubmittal, Plaintiff alleged that a dentist had tried to fix his tooth on May 25, 2007, but the filling had fallen out.[28]   (ECF No. 130-9, ¶¶ 8, 9; Exh. A, Inmate Appeal, Section D; Exh. B.)

148. Plaintiff stated that he would put in a 7362 Form to have it fixed.  (ECF No. 130-9, ¶¶ 8, 9; Exh. A, Inmate Appeal, Section D; Exh. B.)

149. Plaintiff added new information that he had an Olsen Review on May 2007, and that there were no 7362 forms in his medical records.  (ECF No. 130-9, ¶¶ 8, 9; Exh. A, Inmate Appeal, Section D; Exh. B.)

150. Plaintiff alleged that his records were illegally taken.  (ECF No. 130-9, ¶¶ 8, 9; Exh. A, Inmate Appeal, Section D; Exh. B.)

151. An inmate may not raise new allegations when submitting his appeal to the next level of review.  (ECF No. 130-9, ¶ 8.)

152. An inmate must submit a separate inmate appeal for a new grievance or new allegations. (Id.)

153. Defendant Pfeiffer reviewed Plaintiff's submittal for a first level review, and then informed Plaintiff that he was attempting to change his original appeal issue.  (ECF No. 130-9, ¶¶ 8, 9; Exh. B, June 25, 2007 Screening Letter.)

154. Defendant Pfeiffer informed Plaintiff that failure to follow instructions would result in the appeal being dismissed pursuant to C.C.R. § 3084.4(d).  (ECF No. 130-9, ¶¶ 8, 9; Exh. B, June 25, 2007 Screening Letter.)

155. Plaintiff was also told that if he thought he had received the decision in error, he could return the form to the Appeals Coordinator with an explanation of why he believed the screen out was erroneous.  (ECF No. 130-9, ¶¶ 8, 9; Exh. B, June 25, 2007 Screening Letter.)

156. Plaintiff did not write to offer any explanation.  (ECF No. 130-9, ¶ 8.)

157. On August 5, 2007, Plaintiff submitted another inmate appeal, log # 07-01806, alleging that

---

[28]Plaintiff disputes facts No. 147 through 156 because Defendant Pfeiffer did not produce any document to prove this and Plaintiff included the appeal in question in another appeal he submitted.  (Id. at 19-20.)

he was not receiving adequate pain medication for his ankle.  (ECF No. 130-9, ¶¶ 10, 12; Exh. C, Inmate Appeal.)

158.   Plaintiff requested to be seen by a specialist, to have an MRI, and to receive chronic pain treatment.  (ECF No. 130-9, ¶¶ 10, 12; Exh. C, Inmate Appeal.)

159.   Plaintiff was not satisfied with the informal level of review response, so he appealed to the first level of review.  (ECF No. 130-9, ¶¶ 10, 12; Exh. C, Inmate Appeal, Sections C, D, and F.)

160.   Plaintiff also appealed the first level of review decision.  (ECF No. 130-9, ¶¶ 10, 12; Exh. C, Inmate Appeal, Section F.)

161.   Plaintiff claimed he was denied treatment by the pain specialist, by Defendant Lopez; that he still had not seen a pain specialist; and that he believed a malpractice investigation should have been conducted.  (ECF No. 130-9, ¶¶ 10, 12; Exh. C, Inmate Appeal, Section F.)

162.   Defendant Pfeiffer reviewed this appeal and Plaintiff's explanation for requesting a second level review.  (ECF No. 130-9, ¶ 11.)

163.   Because Plaintiff had again stated different issues in his explanation, Defendant Pfeiffer informed him on October 4, 2007, that his appeal was being returned because he was attempting to change his original appeal issues.[29]  (Id. at ¶¶ 11, 12; Exh. C, October 4, 2007 Screening Letter.)

164.   Plaintiff replied with an explanation that he did not change his issues because was still complaining about receiving proper treatment for his ankle.  (ECF No. 130-9, ¶¶ 11, 12; Exh. C, October 11, 2007 Letter from Plaintiff.)

165.   Defendant Pfeiffer forwarded the appeal for a second level appeal, and did not screen it out. (ECF No. 130-9, ¶¶ 11, 12; Exh. C, Inmate Appeal, Section G.)

---

[29]Plaintiff disputes this because Defendant Pfeiffer illegally screened out Plaintiff's appeal, Plaintiff filed a response, and Defendant Pfeiffer finally forwarded the appeal.  (Id. at 21.)

1  166.  Pfeiffer has not inappropriately or illegally screened out any of Plaintiff's inmate appeals.[30]

2        (ECF No. 130-9, ¶13.)

3  167.  Defendant Pfeiffer has never met, and does not know, Plaintiff.  (Id. at ¶ 14.)

4        **B.**   **Plaintiff's Statement of Undisputed Facts**

5  1.    In Perez v. Tilton, 3:05-cv-05241-JSW (N.D.Cal), CDCR entered into a stipulation

6        concerning the dental treatment of prisoners that CDCR and all its prisons are to follow.

7        (ECF No. 139 at 23-24.)

8  2.    The California Code of Regulations contains all rule and regulations that CDCR must follow.

9  3.    The Prison Law Office rules and regulations contains the rules and regulations regarding

10       filing a medical appeal.  (Id. at 25.)

11 4.    CDCR has rules for access to primary care.  (Id.)

12 5.    KVSP has Operational Procedure No. 1000 for accessing primary care.  (Id.)

13 6.    KVSP has Operational Procedure No. 1002 for priority health care ducat utilization.  (Id.)

14 7.    KVSP has Operational Procedure No. 1020 for dental services.  (Id.)

15       **C.**   **Defendants' Evidentiary Objections**

16       Any party may object to the other's evidence on the ground that it "cannot be presented in

17 a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  As long as the requirements

18 of Rule 56 are satisfied, the evidence submitted is not required to be in a form that would be

19 admissible at trial.  Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).  In their reply,

20 Defendants object to Plaintiff's evidence on the grounds that exhibits, or portions of exhibits are

21 irrelevant, lack foundation and contain hearsay.

22       **1.**   **Relevance**

23       Given the Court's duty to determine whether there exists a genuine dispute as to any *material*

24 fact, an independent objection to evidence as irrelevant is generally both unnecessary and unhelpful.

25 E.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011 WL

26

27       [30]Plaintiff disputes this as he claims he has already proven that Defendant Pfeiffer illegally screened out
   Plaintiff's appeals over eight times.  (Id. at 21-22.)

28

1   1807384, at *3 (E.D.Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010

2   WL 2511175, at *6 (E.D.Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P,

3   2009 WL 3055222, at *3 (E.D.Cal. Sept. 21, 2009); Burch v. Regents of the University of California,

4   433 F.Supp.2d 1110, 1119 (E.D.Cal. Jun. 5, 2006).

5       In support of his opposition to Defendants' motion for summary judgment Plaintiff has

6   submitted thirty two exhibits, approximately 340 pages.  The Court has reviewed the attached

7   exhibits and for the following reasons finds that Exhibits 4, 10, 11, 13, 16, 17, 30, 31, and 32 are not

8   relevant to this action and shall be disregarded.  The Court shall not consider those portions of

9   Exhibits 1 and 9 that are not relevant to this action.

10      Exhibits 4 includes correspondence, dated June 2007 through September 2007, between the

11  Prison Law Office and CDCR regarding Plaintiff's treatment and a Prison Legal News article about

12  the stipulation entered into in Perez v. Tilton.  Correspondence that occurred after Plaintiff began

13  receiving treatment for his tooth has no relevance to the events that occurred from July 2006 through

14  May 2007.  Additionally, as discussed below, since the stipulation is irrelevant to this action the

15  newspaper article, even if Plaintiff were to be able to establish a foundation, would not be relevant.

16      Exhibit 13 is the stipulation entered into by CDCR in Perez v. Tilton.  Plaintiff argues that

17  the stipulation in Perez v. Tilton, which the CDCR agreed to follow, required that complete

18  implementation of agreed to practices and procedures was required by March 1, 2007.  The

19  Defendants knew of and violated this stipulation.  Defendant Garcia failed to follow the stipulation

20  which states that the inmate shall be ducated to the next available dental clinic.  However, the

21  violation of consent decrees, settlements, or injunctions in other cases does not provide liability in

22  this action.  See Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999); Coleman v. Wilson, 912

23  F.Supp. 1282, 1294 (E.D.Cal. 1995).  Additionally, paragraph 11 of the stipulation entered into in

24  Perez specifically states that "[n]othing in this Stipulation shall be construed to require more of

25  Defendants than is required under the Eighth Amendment."  The conditions agreed to in Perez are

26  irrelevant to Plaintiff's claims of deliberate indifference proceeding in this action.

27      Exhibit 10 is Plaintiff's denial from the California Victim Compensation and Government

28

1   Claims Board ("CVCGCB").  Since there are no state law claims proceeding in this action, the

2   CVCGCB denial is irrelevant.

3   　　　Exhibit 11 is the KVSP Incoming and Outgoing Legal Mail Record of Plaintiff's legal mail.

4   The Court fails to see the relevance of this exhibit in relation to Plaintiff's claims that his medical

5   and dental treatment were denied or delayed.

6   　　　Exhibit 14 is CCR, Title 15, revised 2009.  Defendants object to this as Plaintiff's claims

7   arose in 2007 and 2008.  "To the extent that the violation of a state law amounts to the deprivation

8   of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection

9   1983 offers no redress."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997),

10  quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996).  Should the Court find

11  Title 15 to be relevant, judicial notice shall be taken of the version in effect during the incidents

12  alleged in the complaint.

13  　　　Exhibit 16 is the KVSP Operational Procedure addressing access to primary care, revised

14  October 2010.  Exhibit 17 is KVSP Operational Procedure addressing priority health care ducat

15  utilization, revised February 2009.  The incidents alleged in the complaint occurred in 2007 and

16  2008, and policies and procedures adopted after the incidents are not relevant to this action.

17  　　　Exhibits 30, 31, and 32 are Prison Legal News articles regarding other lawsuits brought

18  against non-parties to this action which are irrelevant here.

19  　　　　　　　　**2.　　Authentication**

20  　　　To satisfy the requirement of authenticating or identifying evidence, Federal Rule of

21  Evidence 901(a) requires "the proponent must produce evidence sufficient to support a finding that

22  the item is what the proponent claims it is."  Unauthenticated documents cannot be considered in a

23  motion for summary judgment, Las Vegas Sands, LLC v. Nehme. 632 F.3d 526, 532 (9th Cir. 2011)

24  (citing Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks

25  omitted).  Therefore, lack of proper authentication is an appropriate objection where a document's

26  authenticity is genuinely in dispute.

27  　　　"An inquiry into authenticity concerns the genuineness of an item of evidence, not its

28

23

admissibility," Orr, 285 F.3d at 776, and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285 F.3d at 778 n.24) (quotation marks omitted).  No suggestion was made that these documents are not what they purport to be.

Defendants object to Exhibit 15 (Division of Corrections Health Care Services Access to Primary Care policy), Exhibit 18 (KVSP Operational Procedure 1020), Exhibit 19 (Inmate/Parolee appeals Tracking System log), and Exhibit 29 (Prison Law Office information on how to file an administrative appeal about medical care) as lacking foundation.[31]  The appearance, contents, and substance of Plaintiff's Exhibits 15, 18, 19, and 29 lead the Court to easily conclude that the documents have been authenticated by their distinctive characteristics and that they are what they appear to be.

If Defendants genuinely disputed the authenticity of any of these records, they could have made specific objections as to those records.  Notably, they did not and their bare objection to Plaintiff's prison records for lack of proper authentication is overruled.  Fed. R. Evid. 901(b)(4); Las Vegas Sands, LLC, 632 F.3d at 533.

### 3.   Hearsay

Affidavits or declarations used in support of or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge of the events detailed in the declaration."  Tracchia, 2009 WL 3055222 at * 3.

"An objection based on hearsay inherently is bound to the context in which the allegedly objectionable evidence is offered."  Sanchez v. Penner, No. CIV S-07-0542 MCE EFB P, 2009 WL 3088331, * 5 (E.D.Cal. Sept. 22, 2009).  The documents to which Defendants object on the basis of hearsay have been determined to be irrelevant and therefore the objection based on hearsay is moot.

---

[31]The Court shall not address the authenticity of those exhibits found to be irrelevant.

**D.**   **Deliberate Indifference to Serious Medical Needs**

Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).  In order to be held liable each defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 837.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.  "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

### E.    Discussion

The Court finds that Defendants have met their initial burden of informing the Court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus., 475 U.S. at 586 (1986).

Plaintiff's attempt to establish a triable issue of fact based upon the failure to provide treatment within prison guidelines fails.  Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)).  As previously stated, Section 1983 does not offer redress for a violation of "a state-created interest that reaches beyond that guaranteed by the federal Constitution." Sweaney, 119 F.3d at 1391.  Additionally, "state departmental regulations do not establish a federal constitutional violation." Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009).  The issue to be addressed here is whether the defendants were deliberately indifferent to

Plaintiff's serious medical needs.  This is not established based upon failure to comply with CDCR or KVSP guidelines for providing medical or dental treatment.

### 1.    Defendant Mendoza

Defendant Mendoza argues that summary judgment should be granted because there is no evidence that she was deliberately indifferent to Plaintiff's medical needs.  (ECF No. 130-1 at 22.) While Plaintiff alleges that Defendant Mendoza delayed treatment for his tooth from July 16, 2006, to May 25, 2007, she was not employed at KVSP until February 26, 2007, and did not begin treating patients until March 2007.  (Id. at 22-23.)  Defendant Mendoza only treated Plaintiff on one occasion and prior to this date it is undisputed that she had no knowledge of Plaintiff's dental needs.  Plaintiff went into the "hole" on June 7, 2007.  After he was transferred to the "hole," Plaintiff received treatment by Dr. Tadros and Dr. Nguyen.  (Id.)  Defendant Mendoza did not deny, delay, or interfere with Plaintiff's treatment and summary judgment should be granted.  (Id. at 24, 25.)

Plaintiff replies that Defendants have only submitted four requests for treatment, however Plaintiff submitted no less than thirty-four requests for treatment regarding his tooth.  (ECF No. 139 at 26.)  Plaintiff argues that he filed nineteen requests for treatment, and Defendant Mendoza knew of these requests and his complaints of pain, and failed to do anything to treat him.  (Id. at 27-32.)

Defendant Mendoza does not determine when an inmate is seen or what treatment is to be provided.  ((DUF 11.)  When a request for services is received, the dentist determines the priority for treatment.  (DUF 17.)  The appointment is then scheduled by the dentist and office technicians. (DUF 22.)  Nor is it Defendant Mendoza's duty to ensure that inmates are called in to be seen by the dentist.  (DUF 23.)

Defendant Mendoza has been a dental assistant at KVSP since February 26, 2007, and did not begin seeing patients until after her training period.  (DUF 7, 8.)  Therefore, she cannot be liable for any delay in treatment prior to March 2007.  On March 13, 2007,[32] Plaintiff filed a request for services stating he needed to be seen right away because he was in pain.  The form was received by

---

[32]Plaintiff identifies two requests for services that were his and were received on March 13, 2007.  (ECF No. 139-6 at 58.)

a triage nurse the same day, and an appointment was scheduled for March 15, 2007.[33]  (ECF No. 139-1 at 64; UF 34.)  On March 27, 2007, Plaintiff filed a request for services stating his tooth was hurting non stop, and the pain was becoming unbearable.  The triage nurse received the form the same day, and Defendant Garcia received the form on April 3, 2007.[34]  (Id. at 65.)  On April 16, 2007, Plaintiff filed a request for services.  On April 17, 2007, the triage nurse received the form which was marked urgent, and Defendant Garcia received the form on April 18, 2007.  (Id. at 66.)  Plaintiff was scheduled for an appointment on May 10, 2007.  (DUF 37.)  On May 23, 2007, Plaintiff filed a request for services that the triage nurse marked as urgent, Defendant Garcia assigned an r-1B priority, and Plaintiff was scheduled for an appointment on May 24, 2007.  (ECF No. 139-1 at 65.)  Defendant Mendoza completed the form on May 25, 2007, and assisted Defendant Garcia in treating Plaintiff on the same day.  (Id. at 12; UF 39, 41.)

Plaintiff claims that Defendant Mendoza was deliberately indifferent to his dental needs because she was aware of his nineteen requests for service.  However, Defendant Mendoza was not hired until the end of February 2007 and did not begin treating patients until March 2007.  Defendant Mendoza only processed Plaintiff's request for service that was submitted on May 23, 2007.  While Plaintiff claims that Defendant Mendoza was present when he was interviewed for his appeal on February 8, 2007, it is undisputed that she was not employed at KVSP at that time.

Plaintiff argues that Defendant Mendoza was able to ensure that he be seen by the dentist because she answered appeals at the first level.  Plaintiff filed an appeal that was assigned for first level review on May 7, 2007.  Defendant Mendoza reviewed this appeal at the first level on June 13,

---

[33] Plaintiff alleges that numerous requests for services have been removed from his medical records by Defendants in an attempt to cover up their deliberate indifference, and the parties spend a considerable amount of time briefing the missing records.  However, Plaintiff's claims derive from the denial or delay in receiving dental care and the alleged removal of requests for service from his medical file does not form the basis of an Eighth Amendment claim.  The Court considers the evidence of the delay and denial or services and not the absence of requests for services.  In short, the Court has given Plaintiff every favorable inference as provided under Rule 56.  Additionally, although Plaintiff alleges that Defendants Mendoza and Garcia stole his requests for service from his medical records during the review that occurred on March 24, 2007, there has been no evidence presented that these requests were ever placed in Plaintiff's medical file.

[34] Plaintiff identifies a request submitted March 29, 2007, that he states was also his request for services. (ECF No. 139-6 at 59.)

2007.  Assuming that Defendant Mendoza was aware of this appeal on May 7, 2007, the appeal had been partially granted at the informal level and Plaintiff was informed that he would be ducated to see the dentist as soon as possible.  Plaintiff was seen on May 27, 2007.  In the appeal, Plaintiff stated that his tooth was rotted and black and would probably have to be pulled.  Defendant Mendoza did not schedule inmate appointments, (DUF 21), and since Plaintiff's tooth was black and rotted at this time, the two and one half week delay would not be the cause of Plaintiff's tooth needing to be extracted, so the delay did not cause substantial harm.  Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002); Wood, 900 F.2d at 1335; Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1984).

Plaintiff does not dispute that after June 7, 2007, Defendant Mendoza was no longer responsible for his dental treatment.  (ECF No. 139 at 35.)  Additionally, while Plaintiff states that Defendant Mendoza was responsible for ensuring that he be seen because one of her responsibilities at the time of these incidents was to ducat patients for medical appointments, there is no allegation that Plaintiff was not ducated for his scheduled dental appointments.

Plaintiff has presented no evidence that Defendant Mendoza was aware of his serious dental needs prior to May 24, 2007, and failed to act.  Defendant Mendoza was not the triage nurse that processed Plaintiff's prior treatment requests.  Although Plaintiff was not brought to the dental clinic for dental appointments on March 15 and May 10, 2007, Defendant Mendoza had no control over the movement of inmates and cannot be held liable for custody staff's failure to transport Plaintiff to the clinic for treatment.  Finally, when Defendant Mendoza reviewed Plaintiff's appeal, it had been partially granted, an appointment was to be scheduled as soon as possible, and Plaintiff was treated on May 25, 2007.  Plaintiff has failed to demonstrate that Defendant Mendoza purposely ignored or failed to respond to his serious pain.  McGuckin, 974 F.2d at 1060.  Plaintiff has not raised any triable issues of material fact as to his Eighth Amendment claim against Defendant Mendoza, and Defendant Mendoza is entitled to judgment as a matter of law.

## 2.   **Defendant Garcia**

Defendant Garcia argues that from December 2006 to February 2007, dental services were

only provided on an emergency basis, and he had no control over which yard he was assigned to on a particular day. (ECF No. 130-1 at 18.) When Defendant Garcia reviewed the request submitted by Plaintiff on October 27, 2006, Plaintiff was complaining that his tooth was beginning to bother him. Defendant Garcia determined that the proper priority for Plaintiff's complaint was a routine triage appointment because it appeared that Plaintiff had a cavity and rarely is emergency treatment needed for a cavity. When Defendant Garcia treated Plaintiff on February 1, 2007, he diagnosed that the filling in tooth #3 was decayed and the filling needed to be restored. Plaintiff was seen on February 8, 2007, and appeared satisfied with the planned treatment. (Id.)

Defendant Garcia also argues that he is not responsible for Plaintiff not being brought to the medical clinic due to security issues on March 15, 2007, and May 10, 2007. Plaintiff submitted a request on May 23, 2007, complaining of pain. The request was signed on May 25, 2007, and Plaintiff was seen and treated by Defendant Garcia on that same day. After Plaintiff was transferred to the "hole" on June 7, 2007, he was no longer treated by Defendant Garcia and received constant treatment for his tooth. There is no evidence that Defendant Garcia purposely ignored or failed to respond to Plaintiff's dental needs and he is entitled to summary judgment. (Id. at 19.)

Plaintiff argues that Defendants have only submitted four requests for treatment, however Plaintiff submitted no less than thirty four requests for treatment regarding his tooth. (ECF No. 139 at 26-33.) Plaintiff's request of July 18, 2006, was marked urgent by staff and Defendant Garcia failed to follow the stipulation which states that the inmate shall be ducated to the next available dental clinic. Plaintiff was not seen for triage until February 1, 2007. (Id. at 27.) Plaintiff argues that he filed nineteen requests for treatment. Defendant Garcia knew of these requests and his complaints of pain, and failed to do anything to treat him. (Id. at 33.) Due to Defendant Garcia's failure to treat Plaintiff, he was forced to endure over a year of pain. (Id. at 37.)

According to the KVSP Procedure 1020, Dental Services, the "[a]vailability of funds, facilities, and staff shall govern the level of treatment provided." (ECF No. 139-6 at 282, § III.) The actual date and time of an inmate being seen may be impacted by enumerated factors, including custody operations. (Id. at 284, § IX(A).) Urgent/emergency dental care includes but is not limited

to "[a]cute infection that may have visible swelling; [f]ever of 101° F; [s]evere pain; [s]pontaneous bleeding; [t]rauma; [ and f]acial bone fractures. (Id. at 285, § X(A).) When the Dental Department determines that the dental request is an Immediate Care case (such as tooth ache marked on form; phrases such as "pain", "can't sleep", "broken tooth"), the inmate is to be ducated to the next available Dental Clinic. (Id. at 286, § X(C).) "Dental emergencies are defined as acute problems due to trauma and/or infections. Examples: Newly broken teeth, fractured facial bones, sudden swelling from infection, prolonged bleeding and pain caused by these conditions. . . . Emergency treatment includes those procedures for immediate relief of acute pain, prolonged bleeding and treatment of acute infection which endanger the health of the patient." (Id. at 292, §XXIV.)

On July 18, 2006, Plaintiff submitted a request for services stating that he broke his tooth and it was bothering him and "hurts some too." Plaintiff requested to be seen an soon as possible. This form shows it was received by the reviewing dentist on July 25, 2006, and was marked urgent. (ECF No. 139-1 at 3.) While Plaintiff alleges that Defendant Garcia reviewed the request, a review of the form shows that Defendant Garcia did not process this request.

On October 15, 2006, Plaintiff submitted a request for services stating that his tooth broke two months prior and was beginning to get sensitive. Plaintiff requested that he be seen as soon as possible to receive a filling. (Id. at 4.) Defendant Garcia reviewed this request and determined it was a routine triage appointment. (Id. at 4; UF 26.) On October 27, 2006, Plaintiff filed a request for services stating that his tooth was beginning to bother him a lot, and he needed to be seen as soon as possible. The request was marked urgent. (ECF No. 139-1 at 5.) Defendant Garcia reviewed the request and determined that Plaintiff had a cavity and assigned a routine triage priority to the request. (DUF 25-27.)

On November 3, 2006, Plaintiff filed a request for services stating that he had a large hole in his tooth that hurt when he drinks hot liquids. Defendant Garcia reviewed the request and marked it urgent, (within twenty four hours). (ECF No. 139-1 at 6.) On November 14, 2006, Plaintiff filed a request stating that his tooth was giving him a lot of pain on and off. Plaintiff stated this was his

fifth request.[35]  Defendant Garcia reviewed this request and marked it urgent.  (Id. at 7.)  On

December 18, 2006, Plaintiff submitted a request for services stating that his tooth was rotting and

the only way to clean it was to stick a piece of paper in it.  He complained that the pain was getting

worse all the time, and he had submitted over fifteen requests over the previous two months.[36]

Defendant Garcia reviewed the request and marked it urgent.  (Id. at 8.)

Plaintiff was seen by Defendant Garcia on February 1, 2007.  (DUF 29.)  On February 8,

2007, Defendant Garcia interviewed Plaintiff regarding his inmate appeal.  (ECF No. 139-6 at 73.)

On March 13, 2007, Plaintiff filed a request for services stating that he was ten days over due for his

appointment and he was in pain.  (ECF No. 139-1 at 9.)  Defendant Garcia reviewed this form, and

an appointment was scheduled for March 15, 2007.  However, Plaintiff was not brought to this

appointment due to custody concerns.  (DUF 34.)  On March 27, 2007, Plaintiff filed a request for

services stating he was never called back in for an appointment, and the pain was unbearable.

Defendant Garcia reviewed this request.  (ECF No. 139-1 at 10.)  On April 16, 2007, Plaintiff

submitted a request stating the pain was getting worse and worse, and he needed to be seen right

away.  Defendant Garcia reviewed this request and marked it urgent.  (Id. at 11.)  On May 10, 2007,

Plaintiff was scheduled for an appointment, but was again not brought to the dental clinic due to

custody issues.  (DUF 37.)  On May 23, 2007, Plaintiff filed a request, and he was called in and

treated on May 25, 2007.  (ECF No. 139-1 at 12; UF 38-43.)  On May 28, 2007, Plaintiff sent a letter

stating that when he drank he experienced extreme pain from his tooth.  Defendant Garcia assigned

a routine triage (r-1A) priority.  (ECF No. 139-1 at 13.)  On June 7, 2007, Plaintiff was transferred

to another yard, and the parties agree that Defendant Garcia was no longer responsible for providing

care to Plaintiff.

"[T]he existence of an injury that a reasonable doctor would find important and worthy of

comment or treatment, . . . the presence of a medical condition that significantly affects an

---

[35] The Court notes that at this point, no requests for services appear to be missing from Plaintiff's records.

[36] The Court notes that there is no record of any additional requests being submitted between November 14, 2006, and December 18, 2006, and this appears to be the sixth request Plaintiff has submitted although he states that he has submitted fifteen requests for service.

individual's daily activities, and . . . the existence of chronic or substantial pain" are indications of a serious medical need. Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citing McGuckin, 974 F.2d at 1059-1060; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). It is clear from the evidence that Defendant Garcia was aware that Plaintiff was in pain and needed treatment for his tooth. Although Defendant Garcia states that he determined that Plaintiff had a cavity and rarely does a cavity require emergency treatment, Plaintiff submitted multiple requests which let Defendant Garcia know that the pain was becoming worse and from which Defendant Garcia could determine that the condition of Plaintiff's tooth was deteriorating. While a cavity does not necessarily require emergency treatment, it is "a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000).

Defendant Garcia does not argue that Plaintiff was not suffering from a serious medical need, but claims that once it was determined that Plaintiff's need was urgent, he was treated immediately. However, according to the requests for treatment, Defendant Garcia classified Plaintiff's dental treatment as urgent on November 3 and 14, 2006, and December 18, 2006, but Plaintiff was not seen until February 1, 2007. When Defendant Garcia saw Plaintiff on February 1, 2007, he did not treat the tooth, but took x-rays and told Plaintiff to come back for a filling. Defendant Garcia saw Plaintiff for his appeal on February 8, 2007, but still did not treat Plaintiff's tooth.

When prison officials delay, deny, or intentionally interfere with treatment of an inmate's serious medical need they exhibit deliberate indifference. Wood, 900 F.2d at 1335. Defendant Garcia determined that Plaintiff's condition warranted urgent treatment as of the request submitted October 27, 2006. While Defendant Garcia could not control which yard he would go to on a particular day, (ECF No. 130-5, ¶ 9), when Defendant Garcia finally saw Plaintiff he did not treat the tooth, but told Plaintiff that he would have to return at a later date to have the tooth filled.

By February 1, 2007, Defendant Garcia was aware that Plaintiff's tooth had been deteriorating and his pain was increasing. Defendant Garcia told Plaintiff to come back in thirty days to have his tooth filled, but Defendant Garcia was aware that there was a staff shortage, and was

aware only emergency treatment would be provided.  (Id. 9.)  Plaintiff had been requesting an appointment since July, 2006, and Defendant Garcia had begun marking Plaintiff's request as urgent beginning with the October 27, 2006 request.  Yet Plaintiff was not brought in for an appointment until February 1, 2007 and not treated on that date.  Given the circumstances that existed at the prison, Defendant Garcia could be aware that Plaintiff may not be scheduled for an appointment within the thirty days.  There is a triable issue as to whether Defendant Garcia was deliberately indifferent by failing to treat Plaintiff on February 1 or 8, 2007, when he had the opportunity.

Plaintiff's tooth was not filled until May 25, 2007, more that seven months after Defendant Garcia first became aware that Plaintiff was in pain.  See Hunt v. Dental Department, 865 F.2d 198, 201 (9th Cir. 1988) (three month delay in providing dental services found to be sufficient to raise triable issue for deliberate indifference claim); Curry v. Jones, No. C 07-1413 MHP, 2010 WL 4392704, * 4 (N.D.Cal. Oct. 29, 2010) (finding triable issue of fact due to six week delay in providing dental treatment).  Chronic or substantial pain is sufficient to show a serious medical need and the knowing disregard of such a need suggests deliberate indifference.

Defendant Garcia cannot be held liable for the staffing issues due to the hiring freeze that caused the delay prior to seeing Plaintiff until February 1, 2007, or the delay caused by custody cancelling Plaintiff's scheduled appointments on March 15, 2007, and May 10, 2007.  However, in light of the evidence that Plaintiff repeatedly submitted requests for treatment stating that he was in pain, which were reviewed by Defendant Garcia and marked urgent, there is a triable issue as to whether Defendant Garcia was deliberately indifferent by failing to treat Plaintiff's tooth on February 1 or 8, 2007, when he had the opportunity.  Defendant Garcia is not entitled to judgment as a matter of law on Plaintiff's claim that Defendant Garcia failed to treat his serious dental need on February 1 and 8, 2007.  Accordingly, Defendant Garcia's motion for summary judgment should be denied for Plaintiff's claims arising out of the failure to treat Plaintiff on February 1 and 8, 2007, and granted on all other claims against Garcia.

### 3.   Defendant Dill

Defendant Dill argues that he cannot be held liable on a theory of *respondeat superior*.  (ECF

130-1 at 24.) Defendant Dill's duty was to ensure that inmates arrived at their medical appointments on time and to ensure the safety of the inmates and others once they arrived. Defendant Dill had no power to schedule medical appointments or direct an inmate's treatment. Defendant Dill was not a medical provider and could not have personally participated in any act to delay, deny, or interfere with Plaintiff's treatment and summary judgment should be granted. (Id. at 25.)

Plaintiff argues that Defendant Dill has a duty to oversee the security aspect of inmate healthcare. (ECF No. 139 at 48.) Plaintiff was not taken to dental appointments on March 15, 2007, and May 10, 2007, because custody cancelled due to security reasons. Plaintiff states that he was on lock down due to racial violence, but on these dates there were no incidents and custody was supposed to escort Plaintiff to his appointments. Additionally, regulations state that lock downs shall not prevent the completion of scheduled medical appointments. Since Plaintiff was not escorted to his medical appointments, Defendant Dill failed in his duty. (Id. at 49.) Defendant Dill was aware that Plaintiff was in pain and suffering from dental staff's failure to treat Plaintiff because his mother had spoken with Defendant Dill and his office regarding the issue, and she was informed that it would be looked into. (Id. at 50.) Plaintiff also sent requests and appeals to Defendant Dill that were not replied to. (Id. at 51.)

Defendant Dill was the Associate Warden for Health Care Services and his job was to ensure that security aspect of inmate healthcare. (DUF 92.) Defendant Dill's role was to ensure that inmates arrived at their health care appointments on time and to ensure the security of inmates and others. (DUF 94.)

While Plaintiff states the he sent letters and appeals to Defendant Dill's office, Defendant Dill has stated the he has no knowledge of any letters or appeals sent to his office by Plaintiff. (ECF No. 130-13, ¶ 4.) Plaintiff has failed to submit any evidence that any of the letters or appeals he sent to Defendant Gill's office were received or read by Defendant Gill. Plaintiff's statement that his mother informed Defendant Dill of his dental needs is hearsay. Hearsay is an out of court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not

based on the affiant's personal knowledge of the events detailed in the declaration." <u>Tracchia</u>, 2009 WL 3055222 at * 3.  Defendant Dill has submitted a declaration stating that he does not have any recollection of speaking to Plaintiff's mother.  (ECF No. 130-13, ¶ 4.)  Plaintiff has failed to submit evidence to show that Defendant Dill was aware that Plaintiff had a serious dental need.  Even if these statements were admissible, there is no evidence that Defendant Dill was responsible for scheduling dental appointments.  Indeed, Defendant Dill was not able to determine when inmates were scheduled for appointments or to direct dental staff to provide services to Plaintiff.  (DUF 96, 97, 98.)

Although Plaintiff alleges that prison regulations provide that lock downs shall not prevent the completion of scheduled medical appointments, there is no liability under § 1983 for violating prison policy.  <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting <u>Gardner v. Howard</u>, 109 F.3d 427, 430 (8th Cir. 1997)).  The failure to take Plaintiff to a medical appointment, standing alone, does not give rise to deliberate indifference in violation of the Eighth Amendment. Plaintiff has failed to produce evidence to show that Defendant Dill knew that Plaintiff was suffering from a serious medical need, or was involved in the decision to cancel Plaintiff's dental appointments.

Finally, Defendant Dill cannot be held liable on a theory of theory of *respondeat superior*. <u>Iqbal</u>, 129 S. Ct. at 1948.  It is undisputed that Plaintiff's appointments were cancelled due to custody issues at the prison, and there is no evidence that Defendant Dill was involved in the decision that resulted in Plaintiff's appointments being cancelled on March 15 and May 10, 2007. The documentation Plaintiff submits regarding the Modified Program Status of Facility A was signed by H. Tyson and A. Hedgpeth.  (ECF No. 139-1 at 48.)  Accordingly, Plaintiff has failed to submit evidence to show that Defendant Dill was personally involved in any deprivation or delay that resulted in a violation of his constitutional rights.  Plaintiff has failed to raise any triable issues of material fact regarding Defendant Dill, and Defendant Dill is entitled to judgment as a matter of law.

**4.** **<u>Defendant Zamora</u>**

Defendant Zamora argues that her only involvement in Plaintiff's dental care was preparing

the response to Plaintiff's second level appeal regarding his tooth. (ECF No. 130-1 at 25.)  It is well established that there is no constitutional guarantee to a prison grievance procedure, and defendants may not be held liable where they are only involved to the extent that they considered Plaintiff's appeal.  (Id. at 25-26.)  Defendant is not a medical provider and her duties were purely administrative.  Defendant Zamora reviewed Plaintiff's appeal and noted that he had been interviewed by Defendant Nguyen on August 29, 2007, and had his tooth extracted the same day. By the time Defendant Zamora received Plaintiff's appeal, he had received treatment.  Plaintiff sued Defendant Zamora because she was the healthcare manager, and she was responsible to make sure rules and regulations are followed.  Defendant Zamora cannot be held liable based on her review of his appeal or under the doctrine of *respondeat superior* and summary judgment should be granted. (Id. at 26.)

Plaintiff argues that, as in Redmond v. County of San Diego, 942 F.2d 1435 (9th Cir. 1991), Defendant Zamora is liable because the system is set up to provide for no accountability and the systems supervisor can be liable for managing the system. (ECF No. 139 at 43.)  The warden and health care manager are responsible for managing the health care system, including dental care.  The health care manager has complete oversight to make sure KVSP operational procedures are followed and enforced.  (Id. at 44.)  These policies were not enforced, and it was Defendant Zamora's responsibility to ensure that they were.  (Id. at 44-45.)  Defendant Zamora states that she does not know who could be at fault, so she is either deliberately lying or so ignorant of her duties that she should not be health care manager.  The prison opened with only three dentists and three dental assistants which was not enough to provide even basic dental care.  The prison was illegally opened without enough staff and Defendant Zamora was responsible for personnel staffing.  (Id. at 45.) Additionally, eighty pages of Plaintiff's appeal were missing when it was sent to Sacramento. Defendant Zamora must be responsible because she was the last person to have his appeal, and she removed the exhibits so the negligence and deliberate indifference would not be shown.  (Id. at 47-48.)

Plaintiff filed appeal no. KVSP-0 07-02198 on May 24, 2007, grieving the loss of his medical

1   records, which was reviewed by Defendant Zamora at the second level review on January 7, 2008.

2   This appeal did not include any allegations regarding denial of dental services.[37]   (ECF No. 139-6

3   at 142-144.)

4        Plaintiff filed appeal no. KVSP-0 07-01872 on August 27, 2007.   In this appeal, he requests

5   a root canal so that his tooth does not need to be extracted.   Additionally, if the tooth is pulled he

6   requests an anchor be put in.   The appeal was submitted to the second level on October 11, 2007.

7   By this time, Plaintiff had been treated and his tooth had been extracted.   Defendant Zamora

8   prepared the second level response on November 14, 2007.   (ECF No. 139-7 at 153-159.)   By the

9   time that Defendant Zamora processed this request, the Eighth Amendment violations were in the

10  past.   While Plaintiff did not receive the treatment that he desired, a root canal or anchor if the tooth

11  was extracted, Plaintiff's tooth had been treated by extraction.   Plaintiff's difference of opinion with

12  prison medical authorities as to proper treatment does not amount to deliberate indifference.

13  Franklin v. Oregon, 662 F.2d 1337, 1355 (9th Cir. 1981); Mayfield v. Craven, 433 F.2d 873, 874

14  (9th Cir. 1970).

15       The argument that anyone who knows about a violation of the Constitution, and fails to cure

16  it, has violated the Constitution himself is not correct.   "Only persons who cause or participate in the

17  violations are responsible.   Ruling against a prisoner on an administrative complaint does not cause

18  or contribute to the violation."   Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); accord

19  George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); see Owens v. Hinsley, 635 F.3d 950, 953

20  (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not

21  by their very existence create liberty interests protected by the Due Process Clause, and so the

22  alleged mishandling of [an inmate's] grievances by persons who otherwise did not cause or

23  participate in the underlying conduct states no claim").   The delay in treating Plaintiff occurred from

24  July 2006 to May 25, 2007.   By reviewing Plaintiff's appeal, Defendant Zamora is not liable for the

25  delay that occurred prior to her reviewing the appeal, nor is there any evidence that Defendant

26

27      [37]While Plaintiff argues that Defendant Zamora is liable for the loss of the exhibits from his appeal, this
    action is proceeding against Defendant Zamora for deliberate indifference to Plaintiff's serious medical needs and
28  loss of Plaintiff's exhibits does not state an Eighth Amendment claim.

1    Zamora was aware of Plaintiff's complaints prior to receiving the appeal.

2           Plaintiff also contends that Defendant Zamora was responsible for the delay in his receiving

3    treatment due to the facility only having three dentists at the time it opened which was inadequate

4    to meet the dental needs of the inmates housed at KVSP.  To the extent that Plaintiff argues that

5    Redmond v. County of San Diego allows for Defendant Zamora to be held liable under theory of

6    supervisory liability, he is incorrect.  Redmond involved a pretrial detainee who was raped while he

7    was held in the county jail.  The Redmond court recognized that some degree of individual

8    culpability is required to find deliberate indifference.  Redmond, 942 F.2d at 1442.  The individual

9    state of mind must amount to wantonness to violate the Eighth Amendment.  Id. at 1443.  The court

10   evaluated the individual actions of each defendant to determine if they acted with deliberate

11   indifference.  Id. at 1447-1449.  The defendants found to be liable had personal knowledge of the

12   danger to heterosexual inmates, but developed and implemented policies that were deliberately

13   indifferent to the personal security needs of the inmates.  Id.  In order for a supervisor to be liable

14   he must be personally involved in the constitutional deprivation or there must be a sufficient causal

15   connection between the violation and supervisors' wrongful conduct.  Id. at 1446.

16          Defendant Zamora's duties as health care manager at KVSP included budgeting, personnel

17   staffing, and contracting.  (ECF No. 139-6 at 221, Response No. 1.)  From December 2005 through

18   February 2007, there was a hiring freeze, and while Defendant Zamora was responsible for hiring

19   medical and dental staff, she was unable to control the number of staff that were hired.  (DUF 71;

20   ECF No. 139-6 at 185, Response No. 4.)

21          Prison officials may be held liable if "'policy or custom' . . . played a part in the violation of

22   federal law" McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986) (quoting Kentucky v. Graham,

23   473 U.S. 159, 166, 105 S. Ct. 3099, 3106 (1985)).  To prove liability for an action policy, the

24   plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom

25   established by a . . . policymaker possessed with final authority to establish that policy."  Waggy v.

26   Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).  Defendant Zamora was an

27   administrative employee and did not have the final authority to determine the number of medical

28

providers to be hired to staff the prison.  Since Defendant Zamora did not have the authority to hire additional staff, she was not the cause of any inadequate staffing that contributed to the delay in treating Plaintiff.

While Plaintiff claims that he filed multiple requests for service, appeals, and a complaint with the Attorney General, this is insufficient to show that Defendant Zamora had personal knowledge of his dental needs.  Absent the authority to control the number of dental staff that were hired or possessing personal knowledge of Plaintiff's need for dental treatment and failing to act, no triable issue of material fact exists.  Defendant Zamora is entitled to judgment as a matter of law on Plaintiff's claims of inadequate dental care.[38]

### 5.   Defendant Pfeiffer

Defendant Pfeiffer, who reviewed certain appeals, argues that there is no evidence he contributed to a violation or had an opportunity to prevent an ongoing violation of Plaintiff's rights.  Plaintiff submitted an appeal stating that he was to be seen by the dentist in thirty days.  There was no language in the appeal to indicate that an emergency request was necessary.  Plaintiff was merely requesting an appointment to have his tooth repaired.  The proper procedure to obtain a dental appointment is to use the CDC Form 7362.  (ECF No. 130-1 at 27.)  Defendant Pfeiffer informed Plaintiff that he needed to request an appointment using the CDC Form 7362 and submitted the appeal for an informal level decision.  (Id. at 27-28.)  Similarly, when reviewing Plaintiff's appeal regarding the request to see an orthopedic surgeon, Defendant Pfeiffer screened the initial appeal and reviewed the appeal at the second level of review.  At the second level, Plaintiff claimed that he was denied treatment by the specialist and wanted a malpractice investigation.  Since this was a different issue than was brought in the original appeal, Plaintiff's appeal was returned because he was attempting to change the initial appeal issue.  Plaintiff replied with an explanation, and the appeal was submitted to the next level for review.  Plaintiff had been interviewed by medical providers and had seen a specialist when Defendant Pfeiffer screened the appeal.  Defendant Pfeiffer did not

---

[38]Defendant Zamora's motion for summary judgment was brought only as to the dental claims.  Defendant Zamora did not move for summary judgment on the medicals, and therefore the medical claims remain in this action.

inappropriately or illegally screen out Plaintiff's appeals.  Defendant Pfeiffer did not cause harm to Plaintiff, and there is no evidence that Defendant Pfeiffer knew of and disregarded an excessive risk to Plaintiff's health or safety.  (Id. at 28.)  Defendant Pfeiffer is entitled to summary judgment.  (Id. at 29.)

Plaintiff argues that Defendant Pfeiffer is the appeals coordinator at KVSP who was assigned to Plaintiff's appeals.  Plaintiff states that Defendant Pfeiffer refused to truthfully answer his request for interrogatories and that proves that Defendant Pfeiffer failed in his duty.[39]  (ECF No. 139 at 38.) Plaintiff's appeal, filed December 27, 2006, was not heard within the CDCR guidelines.  Defendant Pfeiffer received the appeal stating that Plaintiff has submitted over twenty requests for service to no avail and then screened out the appeal because Plaintiff had to request services using a CDC Form 7362.  (Id. at 39.)  Plaintiff responded to the screen out.  Defendant Pfeiffer screened out the appeal stating that Plaintiff was required to fill in a section before hand.  This section is hardly ever used by staff, who use attachments instead.  (Id. at 40.)

Additionally, Plaintiff filed an appeal on March 18, 2007, that was not heard within the CDCR guidelines.  Defendant Pfeiffer screened this appeal out telling Plaintiff to file a request for treatment.  (Id.)  Plaintiff filed a first level appeal on May 29, 2007, that was never returned. Plaintiff argues that Defendant Pfeiffer was required to report any rule violations, but instead of doing so illegally screened out Plaintiff's appeals.  Plaintiff's appeals should have been considered as an emergency appeal.  (Id. at 41.)  Plaintiff argues there is a genuine issue of material fact because Defendant Pfeiffer illegally screened out his appeals and did not process his appeals within CDCR guidelines, and his appeal was deliberately lost or thrown away.  (Id. at 43.)

Defendant Pfeiffer is not a licensed medical provider and cannot pass clinical judgment on an inmate or recommend, grant, or deny a particular treatment.  (DUF 127, 128, 129.)  Nor does Defendant Pfeiffer have the authority to instruct a doctor to see a patient or provide a specific type of treatment.  (DUF 130.)  Defendant Pfeiffer, as Appeals Coordinator, is to screen and categorize

---

[39]A review of the requests for admissions, interrogatories, and responses submitted by Plaintiff reveals that Defendant Pfeiffer only failed to answer those admissions or interrogatories that were based on an incomplete hypothetical that precluded him from answering without more information.  (ECF No. 139-6 at 177-81, 212-217.)

inmate appeals for compliance with CDCR procedures as defined by California Code of Regulations, Title 15 §§ 3084 et seq. (DUF 125, 131.)

While Plaintiff states that he has proved that Defendant Pfeiffer "illegally" screened out his medical appeals, as discussed below, the record does not support such a claim. Plaintiff has not produced evidence that his appeals were "illegally" screened out. Additionally, this action is proceeding as a claim for deliberate indifference to Plaintiff's medical needs, and the screening of Plaintiff's appeals are relevant only as to the knowledge that Defendant Pfeiffer possessed and whether he acted or failed to act with deliberate indifference.

### a.   December 27, 2006 Appeal

On December 27, 2006, Plaintiff submitted appeal no. KVSP-0 07-00954 in which he grieved that he had a large hole in his tooth and has put in over twenty requests for service with no response. Plaintiff states that the hole is getting larger, and the tooth is turning black. Plaintiff claims to have submitted two appeals to the Chief Medical Officer that were not responded to and requests that this appeal be assigned a number, his tooth be fixed, and $15,000 for his pain and suffering. This appeal was partially granted at the informal level on March 30, 2007, and Plaintiff was informed that he would be ducated to see the dentist as soon as possible. Plaintiff submitted the appeal to the first level on April 5, 2007, stating that he has been waiting since May to have his tooth repaired and he is still in a lot of pain. (ECF No. 139-2 at 3.) Plaintiff includes a screening letter, dated April 2, 2007, that was returned by Defendant Pfeiffer, however this does not appear to be a response to this appeal. (Id. at 4.) This appeal was returned to Plaintiff with an informal level response on March 30, 2007, and Plaintiff did not submit the appeal for first level review until April 5, 2007. (Id. at 3.) Since the informal level review was completed on March 30, 2007, and the appeal was submitted to the first level on April 5, 2007, this letter screening an appeal at the informal level, dated April 2, 2007, cannot be for this appeal.

Defendant Pfeiffer returned the appeal on April 20, 2007, stating that Plaintiff had not adequately completed the form and needed to complete the next appropriate section of the appeal. (Id. at 7.) Plaintiff resubmitted the appeal on April 26, 2007, with a note stating he completed

section D as was requested. (<u>Id.</u> at 8.) This appeal was partially granted, and Plaintiff was seen and treated on May 25, 2007. (<u>Id.</u> at 3.)

Although Plaintiff claims that this appeal was "illegally" screened out, the California Code of Regulations allows an appeal to be rejected if "[t]he appeal is incomplete. . . ." Cal. Code Regs., tit. 15 §3084.3(c)(5)(2007). By Plaintiff's own admission he did not fill out section D, and therefore his appeal was incomplete. Rejecting an incomplete inmate appeal is proper, <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 825 (9th Cir. 2010), and Defendant Pfeiffer did not improperly screen out Plaintiff's appeal.

### b.  <u>March 18, 2007 Appeal</u>

On March 18, 2007, Plaintiff submitted an appeal grieving that he broke a tooth and had a hole in it. Plaintiff stated that he had placed CDC 7362 request forms every month for nine months and saw the dentist on February 1, 2007. The dentist took x-rays and told Plaintiff that it was serious and asked if he was in pain. Plaintiff told the dentist he was in pain, but because Plaintiff couldn't figure out if he was in pain when eating or drinking cold items, he was told to come back in one week. Plaintiff stated that he had been seen again on February 8, 2007, and had been told that he would be called back within thirty days and had not yet been seen. Plaintiff stated that the tooth had rotted all the way to the gum and he was in serious pain. Plaintiff requested to have his tooth properly fixed and an anchor put in if the tooth had to be pulled. Plaintiff also requested an x-ray and cleaning and $15,000 for his pain and suffering. (ECF No. 130-10, Exh. A.) Plaintiff attached a note to the appeal coordinator stating that he believed the appeal should be processed as an emergency appeal because he was in a lot of pain.[40] (<u>Id.</u> at 4.)

On April 16, 2007, Defendant Pfeiffer screened out the appeal stating the appeal process is not a request for services and informed Plaintiff that he needed to submit a CDC 7362 form to the

---

[40] The usual time limits for response do not apply to emergency appeals when circumstances exist and "the regular appeal time limits may result in a threat to the appellant's safety or cause other serious and irreparable harm." Cal. Code Regs., tit. 15 § 3084.7(a)(1). This includes, but is not limited to, "(A) Need for protective custody. (B) Decision was made to transfer the appellant to an institution housing an enemy. (C) The appellant was scheduled for parole within 15 calendar days and is appealing a serious disciplinary action resulting in credit loss extending the release date." (<u>Id.</u>) Plaintiff's appeal does not appear to meet the requirements of an emergency appeal as he was not facing "serious and irreparable harm."

1  Medical Department for an appointment. (Id. at 5.)  On April 26, 2007, Plaintiff resubmitted the

2  appeal stating that he had submitted twenty to forty requests for services, and the tooth had not been

3  fixed. (ECF No. 139-3 at 6.)  The appeal was sent on for review and partially granted at the informal

4  level on May 24, 2007, by dental technician Adame.  (Id. at 2.)

5      Plaintiff submitted the appeal to the first level on May 29, 2007, stating that his tooth had

6  been repaired and later that day when he took a drink he experienced extreme pain.  Plaintiff

7  complained that the nerve was still exposed, and he would be putting in a request for services.

8  Plaintiff complained that his medical records were missing during his Olsen review on May 24,

9  2007, and when he asked Defendant Mendoza about them, she denied having his records.  (Id.)  He

10  also asked about his missing records at his appointment on May 25, 2007, and when he asked for

11  copies Defendant Mendoza refused to give them to him.  Additionally, Plaintiff complained that he

12  had submitted an inmate appeal on March 18, 2007, and it took over two months to receive a

13  response.  Plaintiff had been submitting requests for service, and it took over three and one half

14  months to be seen.  (Id. at 7-8.)  On June 25, 2007, Defendant Pfeiffer returned the appeal stating

15  that Plaintiff was attempting to change the original appeal issue.  (Id. at 10.)

16      When Plaintiff initially filed this appeal, he stated that he had made requests for service to

17  be seen prior to his February appointments and was supposed to have been called back within thirty

18  days and had not been.  Since, on the face of this appeal, Plaintiff appears to be seeking another

19  appointment, and makes no mention of having submitted a request after the February appointments,

20  it was reasonable for Defendant Pfeiffer to respond in the manner that he did.  Plaintiff was

21  requesting to be seen by the dentist and a request for an appointment must be made on a CDC Form

22  7362 and sent to Medical Services.  (DUF 138, 139.)  Plaintiff was not complaining about any

23  adverse action that would indicate an inmate appeal was appropriate.  (DUF 141.)  Until Plaintiff

24  resubmitted the appeal with his letter stating that he had filed twenty to forty requests for service

25  without being seen, the appeal would not alert Defendant Pfeiffer that Plaintiff was complaining

26  about adverse action, rather than trying to obtain a dental appointment.

27      While Plaintiff states that this appeal was improperly screened out a second time, he did

28

include new issues in the appeal at the first level, such as his dissatisfaction with the treatment he received on May 25, 2007, the records missing from his file during the Olsen Review, that Defendant Mendoza did not provide him with a copy of his medical records at his request, and that his appeals were taking too long to be completed. An inmate may not raise new issues when submitting his appeal to the next level of review and new issues must be submitted in a separate inmate appeal. (DUF 151, 152.) This appeal was properly screened out on both occasions.

### c.    May 23, 2007 Appeal

Plaintiff submitted an appeal on May 23, 2007, grieving that he had two appeals that had not been answered and he was in extreme pain. He requested that his appeals be answered within the time limits, and he receive the treatment he needs. The appeal was answered on May 30, 2007, and Plaintiff was informed that his appeals had been answered and returned. Plaintiff submitted the appeal to the first level on June 1, 2007, stating that he did not receive KVSP-0 07-00058 back and they better check their records again. (ECF No. 139-3 at 14.) On June 11, 2007, Defendant Pfeiffer returned the appeal stating that it was an abuse of the appeal process. (Id. at 15.)

### d.    May 28, 2007 Appeal

On May 28, 2007, Plaintiff submitted an appeal grieving that he had two appeals that are overdue and he requested that they be answered within the emergency appeals limits. (Id. at 16.) Defendant Pfeiffer returned the appeal on June 25, 2007, stating that it was a request for information not an appeal, and Plaintiff needed to request the information using an inmate request for interview form. (Id. at 17.)

### e.    August 5, 2007 Appeal

Plaintiff submitted an appeal on August 5, 2007, grieving the pain in his ankle. Plaintiff received pain medication on June 15, 2007, but complained he was taken off the pain medication without an excuse. Plaintiff stated that Defendant Araich told Plaintiff that CDCR was no longer providing the medication he was on, and she would not refer him for chronic pain treatment. Plaintiff had seen Defendant Araich four to five times, and she had prescribed Salsalate, Naproxen, and Methocarbamols, along with Gabapentin. Plaintiff claimed the Gabapentin gave him some

1  relief, but none of the other medications helped.  Plaintiff claimed that his ankle hurt, and he was

2  receiving no treatment for it.  Plaintiff requested that he be sent to a pain specialist immediately, be

3  given an MRI on his ankle, and chronic pain treatment.  (ECF No. 130-10, Exh. C.)

4      Defendant Ali, partially granted the appeal at the informal level on August 9, 2007, stating

5  that Plaintiff had been referred to an orthopedic surgeon and would be receiving an appointment in

6  the near future.  Plaintiff submitted the appeal to the first level on August 24, 2007, stating that he

7  had been referred to the orthopedic specialist since June 15, 2007.  Plaintiff said he was in pain now

8  and had been told that his liver enzymes were through the roof.  He wanted an MRI and referral to

9  a pain specialist.  (Id. at 11.)  Plaintiff's appeal was partially granted at the first level on September

10  14, 2007, and he was informed he would be referred to a orthopedic specialist in the near future.

11      Plaintiff submitted the appeal to the second level on September 16, 2007, stating that he had

12  seen the orthopedic specialist on September 6, 2007, and been told that he needed surgery and there

13  were problems that needed to be fixed, such as a cyst.  Plaintiff complains that Defendant Araich told

14  Plaintiff he is fine without providing proper treatment, and he has filed an inmate appeal regarding

15  Defendant Araich.  Defendant Araich had refused to treat his pain, and he wanted her to be

16  investigated for malpractice.  (Id. at 12, 14.)  On October 4, 2007, Defendant Pfeiffer returned the

17  appeal to Plaintiff stating that he was attempting to change his original appeal issue.  (Id. at 15.)

18  Plaintiff resubmitted the appeal on October 11, 2007, stating that he was not trying to change the

19  appeal issue, but is still complaining about the improper treatment of his ankle.  Plaintiff requested

20  that the appeal be processed appropriately.  (Id. at 16.)  The appeal was submitted for further review

21  and partially granted at the Director's Level.  (Id. at 12.)

22      Once again, Plaintiff raised new issues in the appeal when he submitted it to the second level

23  of review.  Initially, Plaintiff was grieving the denial of pain medication by Defendant Araich and

24  requesting an MRI, referral to a pain management specialist, and pain management.  When Plaintiff

25  submitted the appeal at the second level, he had seen an orthopedic specialist and was grieving that

26  Defendant Araich stated he was fine, but the specialist had recommended surgery.  Plaintiff was

27  requesting that Defendant Araich be investigated for medical malpractice.  Given that Plaintiff added

28

1    new complaints in his appeal the Court does not find that this appeal was improperly screened out

2    when Plaintiff submitted it for review at the second level.

3                    **f.    Dental Appeals**

4          Plaintiff's December 27, 2006, appeal was reviewed by Defendant Pfeiffer on April 20, 2007.

5    (ECF No. 139-2 at 7).   When Defendant Pfeiffer receives an inmate appeal he is to screen and

6    categorize the appeal for compliance with Title 15 regulations.  (DUF 131.)  Defendant Pfeiffer

7    reviewed the appeal and saw that Plaintiff had not completed section D.  (ECF No. 139-2 at 7.)

8    Incomplete appeals are properly rejected. Cal. Code Regs., tit. 15 §3084.3(c)(5)(2007); Sapp, 623

9    F.3d at 825.  Defendant Pfeiffer returned the form to Plaintiff because it was incomplete.  Once

10   Plaintiff resubmitted the completed appeal, Defendant Pfeiffer forwarded it on for first level review.

11   (ECF No. 139-2 at 3.)

12         When Defendant Pfeiffer initially reviewed Plaintiff's March 18, 2007, he returned the appeal

13   because it appeared that Plaintiff was requesting an appointment with the dentist.  An inmate

14   requests a medical or dental appointment by submitting a CDC form 7362 to the Medical

15   Department.  (DUF 138, 139.)  Defendant Pfeiffer returned the appeal because Plaintiff needed to

16   request a dental appointment by using CDC form 7362.  (DUF 140.)  Once Plaintiff resubmitted the

17   appeal and provided further information, Defendant Pfeiffer forwarded the appeal for review at the

18   informal level.  (DUF 145, ECF No. 139-3 at 2, 6-7.)  Plaintiff submitted the appeal for second level

19   review on May 29, 2007.  Plaintiff added complaints regarding ineffective treatment on May 25,

20   2007; the Olsen Review that he received on May 24, 2007; and the refusal of Defendant Mendoza

21   to provide him with a copy of his dental records.  (ECF No. 139-3 at 8-9.)  Since an inmate may not

22   raise new allegations when submitting his appeal to the next level, Defendant Pfeiffer returned the

23   appeal because Plaintiff was trying to change the appeal issue.  (DUF 152, 153.)

24         Defendant Pfeiffer was not reviewing the substance of Plaintiff's appeals to determine if they

25   would be granted or denied.  It is undisputed that the purpose of Defendant Pfeiffer's review of

26   Plaintiff's appeals was to determine if they complied with the CDCR regulations and could be

27   forwarded to the correct person for review.  Upon screening the appeals, Defendant Pfeiffer found

28

that Plaintiff's appeals did not comply with the regulations, and therefore they were returned to Plaintiff. Once Plaintiff corrected the problem or clarified the issue, the appeals were submitted to the appropriate person for review. Based upon these facts, Defendant Pfeiffer did not act with the culpable state of mind that is required for a deliberate indifference claim.

"Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi, 391 F.3d at 1060, and Plaintiff has not shown that there was "a purposeful act or failure to respond to a [his] pain or possible medical need." Jett, 439 F.3d at 1096. Defendant Pfeiffer's role in reviewing the appeals was to determine if they complied with CDCR regulations and then forward them on to the appropriate official for review. Defendant Pfeiffer responded to Plaintiff's medical need by forwarding the appeal to the appropriate official once Plaintiff addressed the problems found in the appeal at each level of submission.

The May 23, 2007, and May 28, 2007, appeals were reviewed by Defendant Pfeiffer on June 11, 2006 and June 25, 2006 respectively. At that time, Plaintiff had already been treated on May 25, 2007, and there is nothing in the appeal that would inform Defendant Pfeiffer that any additional action was needed. Plaintiff has failed to establish that a triable issue of material fact exists and Defendant Pfeiffer is entitled to summary judgment on the dental claims.

## g. **Medical Appeal**

Defendant Pfeiffer's role in reviewing the medical appeal was to determine if it complied with CDCR regulations and should be submitted to the next level of review. When Plaintiff submitted his appeal at the second level on September 16, 2007, Plaintiff was being treated by Defendant Araich and had been prescribed several different medications, Salsalate, Naproxen, Methocarbamols, and Gabapentin, in an attempt to control his pain. Plaintiff had already been referred to and evaluated by an orthopedic specialist. Defendant Pfeiffer is not medically trained, and non-medical appeal reviewers "who confirm that a prisoner is receiving some medical treatment 'will generally be justified in believing that the prisoner is in capable hands.'" Pogue v. Igbinosa, No. 1:07-cv-01577-GMS, 2012 WL 603230, * 9 (E.D. Cal. Feb. 23, 2012) (quoting Wilson v. Woodford, No. 1:05-cv-00560-OWW-SMS, 2009 WL 839921, * 7 (E.D. Cal. Mar. 30, 2009));

1  Greeno, 414 F.3d at 656.

2      As shown above, Defendant Pfeiffer's role was limited.  Defendant Pfeiffer responded to

3  Plaintiff's medical need by forwarding the appeal to the Director's Level once Plaintiff addressed

4  problems in the appeal.  Plaintiff has failed to establish that a triable issue of material fact exists and

5  Defendant Pfeiffer is entitled to summary judgment on the medical claims.

6          **F.     Qualified Immunity**

7      Defendant Pfeiffer also argues that he is entitled to qualified immunity.  There is no need to

8  consider the defense of qualified immunity with respect to the claims that the Court has resolved in

9  Defendant's favor on summary judgment.  Wilkie v. Robbins, 551 U.S. 537, 567 (2007).

10  **III.    Conclusion and Recommendation**

11      Based on the foregoing, it is HEREBY RECOMMENDED that:

12      1.      Defendants' motion for summary judgment, filed October 12, 2011, be GRANTED

13              IN PART and DENIED IN PART as follows:

14          a.      Defendants Mendoza, Dill, Zamora (dental claims only), and Pfeiffer's

15                  motion for summary judgment be GRANTED; and

16          b.      Defendant Garcia's motion for summary judgment be DENIED as to the

17                  claims arising out of the treatment provided on February 1 and 8, 2007, and

18                  GRANTED on all other claims against Garcia.

19      These findings and recommendations will be submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

21  days after being served with these findings and recommendations, Plaintiff may file written

22  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

23  Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

24  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

25  1153 (9th Cir. 1991).

26      IT IS SO ORDERED.

27  **Dated:    March 7, 2012**          **/s/ Barbara A. McAuliffe**
                                        UNITED STATES MAGISTRATE JUDGE

28