1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK KUNKEL, | CASE NO. 1:09-cv-00686-LJO-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION |
| v. | FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART |
| N. DILL, et al., | (ECF No. 137) |
| Defendants. | |
| / | OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Motion for Summary Judgment**

## I.    Procedural History

Plaintiff Patrick Kunkel ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the First Amended Complaint, filed October 8, 2009, against Defendants Garcia, Araich, Mackey, Robaina, Dileo, Ali, and Zamora for deliberate indifference in violation of the Eighth Amendment. On October 12, 2011, Defendants Dill, Garcia, Mendoza, Pfeiffer, and Zamora filed a Motion for Summary Judgment.  (ECF No. 130.)  On November 14, 2011, Defendants Ali, Araich, Dileo, Mackey, and Robaina filed a Motion for Summary Judgment.  (ECF No. 137.)  After receiving several extensions of time, Plaintiff filed an Opposition[1] to Defendants Dill, Garcia, Mendoza, Pfeiffer, and Zamora's Motion for Summary Judgment on December 5, 2011.  (ECF No. 139.) Defendants Dill, Garcia, Mendoza, Pfeiffer, and Zamora filed a Reply and an Objection to Plaintiff's

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on January 14, 2010.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 15.)

Exhibits in Support of his Opposition on December 8, 2011. (ECF No. 140.) On January 17, 2012, Plaintiff filed two documents entitled Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment for Araich, Ali, Aackey, Robaina, and Dileo, Statement of Facts and Declaration, and Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants Motion for Summary Judgment for Araich, Ali, Mackey, Robaina, and Dileo, Plaintiff's Dispute of Defendants' Facts. (ECF Nos. 145, 154.) Defendants Ali, Araich, Dileo, Mackey, and Robaina filed a Reply on January 24, 2012. (ECF No. 146.) Plaintiff filed a Surreply to Defendants Ali, Araich, Dileo, Mackey, and Robaina's Reply on February 10, 2012, and Defendants filed a Motion to Strike Plaintiff's Surreply on February 13, 2012. (ECF No. 147, 148.) Plaintiff filed a Motion to File a Surreply on February 27, 2012. (ECF No. 149.) Defendants filed a Reply to Plaintiff's Motion to File a Surreply on February 29, 2012. (ECF No. 150.) On March 7, 2012, Findings and Recommendations issued recommending granting in part and denying in part Defendants Dill, Garcia, Mendoza, Pfeiffer, and Zamora's Motion for Summary Judgment. (ECF No. 151.) Plaintiff filed Objections on May 18, 2012, and on May 21, 2012, an Order issued adopting the Findings and Recommendations and granting Defendants Mendoza, Dill, Pfeiffer, and Zamora's (dental claims only) Motion for Summary Judgment. (ECF Nos. 160, 161.)

The Court has painstakingly waded through all documents submitted addressing this motion, opposition, and reply. In arriving at this Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## II.   Defendants' Motion to Strike Plaintiff's Surreply and Plaintiff's Motion to File a Surreply

The Local Rules provide for a motion, an opposition, and a reply. Neither the Local Rules nor the Federal Rules provide the right to file a surreply. Plaintiff moves to file a surreply in order to point out the lies allegedly included in reply to his opposition. The Court is well aware of

1   Plaintiff's position on the statements made by Defendants and finds that the Surreply is unnecessary

2   to determination of this motion.  Accordingly, Defendants' Motion to Strike Plaintiff's Surreply

3   should be granted; Plaintiff's Motion to File a Surreply, filed February 27, 2012, should be denied;

4   and Plaintiff's Surreply, filed February 10, 2012, should be stricken from the record.

5   **III.    Motion for Summary Judgment**

6         **A.    Legal Standard**

7         Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

8   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

9   is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time

10  for discovery and upon motion, against a party who fails to make a showing sufficient to establish

11  the existence of an element essential to that party's case, and on which that party will bear the burden

12  of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The "party seeking summary

13  judgment bears the initial responsibility of informing the district court of the basis for its motion, and

14  identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions

15  on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

16  issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil

17  Procedure).

18        If the moving party meets its initial responsibility, the burden then shifts to the opposing

19  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

21  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

22  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

23  material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

24  U.S. at 586 n.11.

25        Each party's position, whether it be that a fact is disputed or undisputed, must be supported

26  by (1) citing to particular parts of materials in the record, including but not limited to depositions,

27  documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

28  presence or absence of a genuine dispute or that the opposing party cannot produce admissible

1  evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  While the Court

2  *may* consider other materials in the record not cited to by the parties, it is not required to do so.  Fed.

3  R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir.

4  2001).  The parties bear the burden of supporting their motions and oppositions with the papers they

5  wish the Court to consider and/or by specifically referencing any other portions of the record for

6  consideration.  Carmen, 237 F.3d at 1031.  The Court will not undertake to mine the record for

7  triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

8       In resolving a defendant's motion for summary judgment, the court is to draw all reasonable

9  inferences in favor of plaintiff, the non-moving party, Samuels v. Holland American Line-USA, Inc.,

10  656 F.3d 948, 952 (9th Cir. 2011); Ward v. Ryan, 623 F.3d 807, 810 (9th Cir. 2010), and liberally

11  construe the filings and motions of pro se litigants, Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.

12  2010).  If the non-moving party fails to establish that a genuine issue for trial exists "the moving

13  party is entitled to judgment as a matter of law."  Long v. County of Los Angeles, 442 F.3d 1178,

14  1185 (9th Cir. 2006) (quoting Celotex, 477 U.S. at 323).

15       **B.    Plaintiff's Evidentiary Objections**

16       Plaintiff alleges that Defendants have attempted to mislead the Court by "outright lies and

17  untruths" in their Request for Admissions, have failed to turn over requested discovery, and failed

18  to produce documents which were ordered to be produced by the Court. (Plaintiff's Dispute of Facts,

19  ("PDF"), p. 2, ECF No. 154.)  On September 6, 2011, an Order issued granting in part and denying

20  in part Plaintiff's Motion to Compel.  (ECF No. 122.)  In his Motion to Compel, Plaintiff raised

21  these same arguments that Defendants have engaged in discovery misconduct.  The Court found that

22  there was no conduct on the part of Defendants in this action that would justify the imposition of

23  sanctions.

24       Plaintiff also raised the issue that Defendants had failed to produce documents that had been

25  ordered to be produced by the Court, and the Court granted Plaintiff an opportunity to file a motion

26  to compel as to those items.  Plaintiff did not file a motion to compel.  The Court will disregard

27  Plaintiff's arguments regarding the discovery misconduct of Defendants as those arguments have

28  previously been considered by the Court, and no discovery misconduct was found.

4

### C.   **Defendants' Evidentiary Objections**

Any party may object to the other's evidence on the ground that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  As long as the requirements of Rule 56 are satisfied, the evidence submitted is not required to be in a form that would be admissible at trial.  Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001).  In their Reply, Defendants object to Plaintiff's evidence on the grounds that exhibits, or portions of exhibits are irrelevant, lack foundation and contain hearsay.

### 1.   **Relevance**

Given the Court's duty to determine whether there exists a genuine dispute as to any *material* fact, an independent objection to evidence as irrelevant is both unnecessary and unhelpful.  E.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D.Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D.Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P, 2009 WL 3055222, at *3 (E.D.Cal. Sept. 21, 2009); Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1119 (E.D.Cal. Jun. 5, 2006).  Defendants' objections on relevancy grounds are therefore disregarded.

### 2.   **Authentication**

Federal Rule of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility."  A foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims" before evidence may be admitted. Fed.R.Evid. 901(a).  Unauthenticated documents cannot be considered in a motion for summary judgment.  Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011) (citing Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks omitted).  Therefore, lack of proper authentication is an appropriate objection where a document's authenticity is genuinely in dispute.

"An inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility," Orr, 285 F.3d at 776, and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285

F.3d at 778 n.24) (quotation marks omitted).  No suggestion was made that these documents are not what they purport to be.

Defendants object to Exhibit 15 (Division of Corrections Health Care Services Access to Primary Care policy), Exhibit 18 (KVSP Operational Procedure 1020), Exhibit 19 (Inmate/Parolee appeals Tracking System log), and Exhibit 29 (Prison Law Office Information on How to File an Administrative Appeal about Medical Care) as lacking foundation.  Plaintiff's Exhibit P contains CDCR Operational Procedures #1000, Access to Primary Care; Operational Procedure #1001, Inmate Infection Control Exposure Plan; Staph Infection Inmate Education Information; Staff Infection Staff Education Information; Operational Procedure #1002, Priority Health Care Ducat Utilization; Operational Procedure #(6)1008, Specialty Services; Operational Procedure #1012 Health Screening; Operation Procedure 1020, Dental Services; Lab Request Form; and Operational Procedure No. 1021(6) Diagnostic Services.  The appearance, contents, and substance of these documents allows the Court to easily conclude that the documents have been authenticated by their distinctive characteristics and that they are what they appear to be.

If Defendants genuinely disputed the authenticity of any of these documents, they could have made specific objections as to those documents.  Notably, they did not and their bare objection to Plaintiff's exhibits for lack of proper authentication is overruled. Fed. R. Evid. 901(b)(4); Las Vegas Sands, LLC, 632 F.3d at 533.

Defendants object to the first six pages of Exhibit T, and Exhibits U, X, and Y as lacking foundation.[2]  Pages 2 through 3 of Exhibit T are a copy of an e-mail message.  Pages 4 through 7 of Exhibit T appear a record of Plaintiff's medical visits.  Exhibit U contains various internet articles and chapters from a book on types of infections.  Plaintiff merely attached these documents as exhibits, which does not equate to proper authentication.  See Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1182 (9th Cir. 1988).  Defendant's Objection shall be sustained for Exhibit T, pages 2 through 7, and U.  Exhibits X and Y are Prison Legal News articles.  Newspaper and

---

[2]The Court's references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.  Therefore, Defendants objections to pages 1 through 6, refer to pages 2 through 7 of the exhibit.

magazine articles are self authenticating documents. Fed. R. Civ. P. 902(6). Defendants' motion is overruled as to Exhibits X and Y.

### 3.   **Hearsay**

Affidavits or declarations used in support of or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge of the events detailed in the declaration." Tracchia, 2009 WL 3055222 at * 3.

Defendants object to Exhibits X and Y on the grounds that they are hearsay. "An objection based on hearsay inherently is bound to the context in which the allegedly objectionable evidence is offered." Sanchez v. Penner, No. CIV S-07-0542 MCE EFB P, 2009 WL 3088331, * 5 (E.D.Cal. Sept. 22, 2009)**.** Plaintiff submits these articles for the truth of the matter asserted, and therefore, they are hearsay. Fed. R. Evid. 801(c). Defendants Objection is sustained as to Exhibits X and Y.

### D.   **Undisputed Facts**[3]

Plaintiff has had pain in his left ankle since 1998 due to a gunshot wound which required plates to be inserted into his ankle. (Defendants' Undisputed Fact ("DUF") No. 10; Plaintiff's Statement of Facts ("PSF"), p. 2.) Dr. Akanno has been treating Plaintiff for pain in his ankles since 2006. (DUF No. 11; PSF, p. 3.) On March 24, 2007, Dr. Akanno renewed Plaintiff's prescription for Tramadol for six months. (DUF No. 14; PSF, p. 3.) Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain. (DUF No. 15; PSF, p. 3.) Plaintiff saw Defendant Araich on June 15, 2007, complaining of pain in his ankle caused by the hardware inside his left ankle. (DUF No. 16; PSF, p. 4.) Defendant Araich increased Plaintiff's Tramadol from two to three times per day. (DUF No. 18; PSF, p. 4.) Defendant Araich ordered a podiatry consult. (DUF Nos. 18, 25; PSF, p. 5.)

On July 13, 2007, Defendant Araich prescribed Naproxen for Plaintiff to take three times per

---

[3] The Court has complied the undisputed facts from Defendants' Undisputed Facts, Plaintiff's Dispute of Defendants' Facts, Plaintiff's Statement of Facts, and the First Amended Complaint.

day. (DUF No. 19; PSF, p. 6.)  On July 15, 2007, Plaintiff filed a request for more pain medication. (DUF No. 20; PSF, p. 6.)  Defendant Araich determined that there was no indication to renew Plaintiff's Tramadol which had become non-formulary.[4]  (DUF No. 26; PSF, p. 7.)

On July 20, 2007, Plaintiff was seen by Defendant Araich, and was prescribed a muscle relaxer. (DUF No. 30; PSF, p. 9.)  Plaintiff had prescriptions for Naproxen and Neurontin. (DUF 30; PSF, p. 10.)  Defendant Araich ordered that Plaintiff see an orthopedist and an x-ray be performed. (DUF No. 31; PSF, p. 10.)

On September 6, 2007, Plaintiff was examined by an orthopedic specialist, Dr. Lewis, who recommended surgery to remove the hardware from Plaintiff's ankle. (DUF Nos. 44, 47; PSF, p. 12.)  Plaintiff was seen by the podiatrist, Dr. Sills, on September 18, 2007, and received a steroid injection. (DUF Nos. 54, 60; First Amend. Compl. ¶ 83.)  Dr. Sills determined that Plaintiff probably had a ganglion cyst on his ankle. (DUF No. 56, First Amended Compl. ¶¶ 83, 84.)  Plaintiff was seen by Defendant Araich on October 30, 2007. (DUF No. 73; First Amended Compl. ¶ 85.)

On November 14, 2007, Dr. Lewis performed surgery to remove the plate and screws from Plaintiff's left ankle. (DUF No. 75; PSF, p. 13.)  After surgery, Dr. Lewis prescribed Keflex, an antibiotic, Tylenol #3, Motrin, and ice packs for two weeks. (DUF No. 76; PSF, p. 16.)  Dr. Lewis recommended that Plaintiff return to see him in two weeks. (DUF No. 78; PSF, p. 17.)  Plaintiff returned from surgery at 6:30 that evening. (DUF No. 172; PSF, p. 14.)

On November 15, 2007, Plaintiff filed an inmate appeal regarding not receiving pain medication and an ice pack following surgery. (DUF No. 161; PSF, p. 14.)  Defendant Araich saw Plaintiff on November 16, 2007, and ordered ice packs for Plaintiff. (DUF No. 79; PSF p. 16.)  Plaintiff's appeal was processed as a routine appeal, and Defendant Ali was assigned to respond to the appeal on December 11, 2007. (DUF No. 163; PSF, p. 15.)  Defendant Ali was provided with

---

[4]The CDCR issues a State wide pharmaceutical formulary which indicates what medicines may be provided to inmates. (DUF No. 27.)  The inmate may not receive a non-formulary medication unless there is no acceptable alternative, the patient's circumstances warrant another medication, and the medication is approved by a committee who must determine if the non-formulary medication is appropriate for the particular patient.  (DUF No. 28.)  Defendants assert that Plaintiff was prescribed adequate alternatives to Tramadol.  (DUF No. 29.)

a due date of January 2, 2008, to respond to the appeal. (DUF No. 164; PSF, p. 15.) Plaintiff's stitches were removed on December 4, 2007, and Plaintiff returned to see Defendant Lewis on December 13, 2007. (DUF 84; PSF, p. 17.) On March 3, 2009, Plaintiff was seen by Dr. Sills. (DUF No. 90; First Amended Compl. ¶ 99.) Plaintiff was seen again by Dr. Sills on June 2, 2008, and received a steroid injection in his ankle. (DUF Nos. 94, 95; First Amended Compl. ¶ 100.)

The surgery on Plaintiff's ankle was unsuccessful. (DUF No. 128; PSF, p. 18.) On February 18, 2009, Plaintiff submitted a request stating that at noon he did not receive his pain medication because it was lost, and he was informed that the pharmacy would not replace it without a doctor's order. (DUF No. 129; PSF, p. 27.) Plaintiff asked Defendant Mackey if he could see the doctor to get the issue resolved. (DUF No. 130; PSF No. 27.) That same day a doctor wrote a prescription for Plaintiff to receive Motrin to take three times per day. (DUF 131; PSF, p. 28.) On February 19, 2009, Dr, Patel prescribed Tylenol with Codeine for Plaintiff. (DUF No. 133, PSF, p. 29.) On February 25, 2012, Plaintiff was seen by Defendant Robaina, and she referred Plaintiff to see the physician. (DUF No. 142; PSF, p. 31.)

Plaintiff was seen by Defendant Dileo on March 2, 2009. (DUF No. 148; PSF, p. 33.) Plaintiff told Defendant Dileo that Motrin was not working to address his pain. (DUF No. 151; PSF, p. 34.) Defendant Dileo prescribed Neurontin, which Plaintiff refused to take. (DUF Nos. 148, 152, 154; PSF, p. 33.)

On September 15, 2009, Defendant Araich saw Plaintiff to renew his pain medication. (DUF No. 99; PSF, p. 19.) On September 17, 2009, Plaintiff submitted a request form stating that he had not received the Tramadol prescribed by Defendant Araich. (DUF No. 103; PSF, p. 19.) Plaintiff received his Tramadol that same day. (DUF No. 104; PSF, p. 19.) On September 20, 2009, Plaintiff submitted a request regarding his pain medication. (DUF No. 106; PSF, p. 20.) Plaintiff submitted a request on September 21, 2009, stating he was in pain and needed to see the doctor. (DUF No. 110; PSF, p. 20.) Plaintiff was informed that a referral to see an outside specialist had been submitted. (DUF No. 111; PSF, p. 21.)

E.     **Plaintiff's Eighth Amendment Claims**

1.     **Legal Standard**

Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000). In order to be held liable each defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 837.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A]

1   complaint that a physician has been negligent in diagnosing or treating a medical condition does not

2   state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does

3   not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at

4   106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith,

5   974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104

6   F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish

7   deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334

8   (9th Cir. 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not

9   support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

10   **2.   Defendant Araich**

11   **a.   Defendant's Position**

12   Defendant Araich has been employed as a Nurse Practitioner with the California Department

13   of Corrections and Rehabilitation ("CDCR") at Kern Valley State Prison ("KVSP") since September

14   25, 2006. (Defendants' Memorandum of Points and Authorities, p. 5.) Defendant Araich's

15   responsibilities at KVSP include the medical treatment of inmates, and one of the inmates she has

16   treated is Plaintiff.  (Id. at 6.)

17   Defendant Araich can submit referral orders for inmates to receive specialty care by outside

18   medical providers, but she cannot schedule the appointment.  The prison's Utilization Management

19   schedulers are responsible for locating a provider and scheduling the appointment.  Appointments

20   are scheduled based on the ability to locate an outside provider who is willing, and has the time to

21   treat inmate-patients.  Defendant Araich can only submit more referrals until the inmate is scheduled

22   to be seen.  (Id.)

23   On June 15, 2007, Defendant Araich treated Plaintiff for his complaint of ankle pain which

24   Plaintiff claimed was caused by the hardware inside his left ankle.  Defendant Araich observed that

25   Plaintiff had full range of motion in his left ankle without swelling or effusion, and ordered an

26   increase of Plaintiff's Tramadol prescription to three times a day and referred Plaintiff to see a

27   podiatrist.  (Id.)

28   On July 13, 2007, Defendant Araich prescribed Naproxen for Plaintiff to take three times a

1   day. (Id.) On July 15, 2007, Plaintiff submitted a request for more pain medication. Plaintiff

2   received Gabapentin (Neurontin) twice a day on July 15, 2007. The next day, Plaintiff was told by

3   RN Torrejas that, as explained at this last doctor visit, he would be getting another medication

4   instead of Tramadol.[5] (Id. at 7.)

5          On July 20, 2007, Defendant Araich examined Plaintiff, and noted that Plaintiff wanted his

6   Tramadol back. Defendant Araich observed, however, that Plaintiff was experiencing no apparent

7   distress, that he did not seem to be in any pain, and that he had full range of motion in his ankle.

8   Defendant Araich also noted that the x-ray she ordered had not been performed. Defendant Araich

9   determined that there was no indication to renew Plaintiff's Tramadol, a medication which had

10  become non-formulary. (Id.)

11         At this visit, Plaintiff had prescriptions for Naproxen and Neurontin, and Defendant Araich

12  also prescribed Robaxin, a muscle relaxant. Defendant Araich ordered that Plaintiff receive a

13  follow-up appointment with an orthopedist, that an x-ray on Plaintiff's ankle be performed, and for

14  Plaintiff to return in two weeks for another visit. (Id.)

15         Defendant Araich examined Plaintiff again on August 3, 2007, and Plaintiff told her that

16  Naproxen did not work, and he insisted on taking Tramadol. Defendant Araich observed that

17  Plaintiff had no apparent distress, a normal gait, and that his left ankle had full range of motion. The

18  x-rays of Plaintiff's left ankle showed that the wound in his ankle had healed, and that the metal

19  hardware was in place. (Id.) Defendant Araich also noted that Plaintiff did not seem to be in any

20  pain, and that Plaintiff did push ups and strenuous workouts in the prison yard daily. Because

21  Plaintiff did not want to take Naproxen, Defendant Araich discontinued Plaintiff's prescription and

22  prescribed Salsalate, and an ankle support for Plaintiff. Salsalate is a non-steroidal anti-

23

24         [5]Plaintiff states that it is untrue that he was told on July 12, 2011 that he would be receiving other
    medications instead of Tramadol, and he did not see the doctor on July 12, 2011. (Id. at 9.) The Court assumes that
25  Plaintiff meant to reference the date of July 12, 2007, since that is the date at issue in the fact. The Court notes that
    the fact states Plaintiff was told that he would be receiving a different medication at his last doctor visit, not on July
26  12, 2007. Nor does the fact state that Plaintiff saw the doctor on July 12, 2007. While Plaintiff argues that
    Defendants are being untruthful, he is misreading the fact as stated. Finally, Plaintiff states that Defendants are being
27  untruthful because RN Campbell signed the request, not LVN Torrejas. A review of the form shows that RN
    Campbell had LVN Torrejas add Plaintiff to the MD line. The Court notes that Torrejas is an LVN, not an RN,
28  however, this misstatement does not change the fact stated, that Plaintiff was informed at this last doctor visit that he
    would be given a different medication rather than Tramadol.

inflammatory drug used to reduce pain and swelling.  Plaintiff was still taking Neurontin and Robaxin.  (Id. at 8.)

Defendant Araich saw Plaintiff again on August 10, 2007, and Plaintiff still wanted Tramadol, and was threatening to write 602s (inmate appeals) against her if he did not receive it. Defendant Araich repeatedly advised Plaintiff that Tramadol was a non-formulary medication, and since Plaintiff did 100 pushups daily, he did not seem to be in distress or pain.  Defendant Araich wrote an order for Plaintiff to receive a follow-up appointment within a month.  Defendant Araich noted the previous referral for Plaintiff to see an orthopedist was received by the specialty clinic; however, Defendant Araich submitted another referral in an effort to get Plaintiff seen as soon as possible.  (Id.)

Plaintiff received Neurontin twice on August 10, 2007.  On August 16, 2007, Defendant Araich wrote a thirty day prescription for Methocarbomol, a muscle relaxant, and renewed Plaintiff's Salsalate prescription.  (Id.)

Plaintiff saw the orthopedic surgeon, Dr. Lewis, for his ankle on September 6, 2007.  Dr. Lewis found that Plaintiff had previous surgery to repair his broken left ankle in 1999, and he diagnosed Plaintiff with peroneal tenosynovitis.  The two major tendons that go around the outside of the ankle are the peroneal tendons.  Peroneal tendon problems mostly occur where the tendons glide.  Their movement can cause irritation of the lining of the tendons.  This condition is called tenosynovitis.  Dr. Lewis recommended surgery to remove the plate and screws in Plaintiff's left ankle.  (Id.)

As a result, on September 11, 2007, Defendant Araich submitted a request for Plaintiff to see Dr. Lewis again for the removal of the hardware in Plaintiff's ankle.  (Id. at 8-9.)  On September 13, 2007, Defendant Araich renewed Plaintiff's prescription of Methocarbomol for thirty days.  On September 14, 2007, Defendant Araich renewed Plaintiff's prescription of Salsalate and Robaxin, and increased Plaintiff's prescription of Neurontin.  Defendant Araich also submitted a request for Plaintiff to see a podiatrist for his left ankle, and ordered that Plaintiff return to the medical clinic to see her in two weeks.  (Id. at 9.)

On September 15, 2007, Defendant Araich submitted orders for Plaintiff's ankle x-ray

results, and for a follow up appointment with UC Davis orthopedics once the x-rays became available.  Defendant Araich also ordered that Plaintiff return to the clinic in two to three weeks. (Id.)

On September 18, 2007, Plaintiff was seen by the podiatrist.  Plaintiff complained of pain, and that he had a lump on his ankle for two to three months.  The podiatrist, Dr. Sill, diagnosed Plaintiff with sinus tarsi syndrome, and thought that it was probable that Plaintiff had a ganglion cyst.  Sinus tarsi syndrome is an inflammatory reaction found within the sinus tarsi, which refers to an opening on the outside of the foot between the ankle and heel bone.  Conservative treatment is usually effective and surgery is rarely needed and should be considered after an adequate and thorough trial of conservative treatment.  Ganglion cysts are noncancerous fluid-filled lumps (cysts) that most commonly develop along the tendons or joints of the hands or feet.  Dr. Sill injected a steroid around the mass in Plaintiff's ankle, and ordered a follow up visit with a podiatrist in six weeks.  (Id.)

On October 14, 2007, Plaintiff submitted a request for medical services complaining of pain in his ankle.  Plaintiff claimed that the medication that he was taking was not stopping all of the pain, and that he stopped taking Salsalate.  (Id.)  The treating nurse noted that Plaintiff was scheduled for treatment November 14, 2007, and that his prescription for Robaxin had been renewed.  (Id. at 9-10.) Plaintiff received a renewal of Methocarbomol on October 16, 2007.  According to an October 17, 2007 progress note, Plaintiff was scheduled to see an orthopedic surgeon on November 14, 2007. (Id. at 10.)

Plaintiff was seen by Dr. Sill again on October 30, 2007.  Dr. Sill noted that Plaintiff had an appointment to have the hardware removed from his ankle, so he recommended that the orthopedic surgeon also remove the cystic mass at the same time.  Dr. Sill also noted that Plaintiff had received a Kenalog injection during the last podiatry appointment, which did not help.  Kenalog is a steroid that prevents the release of substances into the body that cause inflammation.  (Id.)

Dr. Sill also thought that the lump on Plaintiff's ankle was probably a little smaller.  Dr. Sill found that Plaintiff had ankle pain due to his ankle hardware and a cyst on his left ankle.  Dr. Sill ordered antibiotic ointment for Plaintiff's ankle, and that Plaintiff receive a follow up appointment

14

in four months for a possible cortizone injection or a re-evaluation. (Id.)

Defendant Araich also saw Plaintiff on October 30, 2007, and observed that Plaintiff had abrasions on three areas of his ankle, so Defendant Araich ordered Plaintiff to apply triple antibiotics to the abrasions and to follow up after surgery. (Id.)

On November 14, 2007, Dr. Lewis performed surgery to remove the plate and screws from Plaintiff's ankle. After surgery, Dr. Lewis prescribed Keflex, an antibiotic, for Plaintiff together with Tylenol #3, Motrin, and ice packs to be applied to his left ankle for two weeks. Tylenol #3 has Codeine in it and is a narcotic pain reliever used to treat moderate to severe pain. Dr. Lewis also recommended that Plaintiff receive a follow up appointment by the prison doctor within three days, and for Plaintiff to return to see him in two weeks. (Id.)

Defendant Araich saw Plaintiff on November 16, 2007, scheduled a follow up with orthopedics as recommended, and ordered ice packs for Plaintiff. Plaintiff's pain medications were renewed on November 20, 2007, by RN Torres. Defendant Araich treated Plaintiff on November 27, 2007, and ordered that Plaintiff be scheduled for his follow up appointment "ASAP". Defendant Araich informed Plaintiff that he needed to avoid injury and to care for his incision until he was seen by the orthopedist. (Id. at 11.)

On November 28, 2007, Defendant Araich renewed Methocarbomol for Plaintiff. Plaintiff's sutures were removed on December 4, 2007, and Plaintiff was seen by Dr. Lewis on December 13, 2007. Dr. Lewis recommended that Plaintiff be given ibuprofen for inflammation, and he discharged Plaintiff from his care. On January 3, 2008, Dr. Akanno renewed Plaintiff's prescription for Gabapentin for ninety days. (Id.)

On January 13, 2008, Plaintiff was seen by Dr. Akanno, but Plaintiff was unsure of why he was called. Nevertheless, Plaintiff requested an ace bandage. Dr. Akanno ordered that Plaintiff be issued an ace bandage, and that he be seen again in ninety days. (Id.)

Plaintiff was seen by Dr. Sill on March 3, 2008. Dr. Sill diagnosed Plaintiff with sinus tarsi syndrome and a cyst on his left ankle. During the visit, Dr. Sill injected Plaintiff's ankle with Kenalog-40, and recommended that Plaintiff return for a follow up visit in three months. (Id.)

On March 3, 2008, Licensed Vocational Nurse ("LVN") Velasquez submitted an order for

a follow up appointment with Dr. Sill in three months.  Plaintiff saw Dr. Sill again on June 2, 2008.

Dr. Sill gave Plaintiff another steroid injection in his ankle and recommended that he see Plaintiff

again in four months.  An order for Plaintiff to see podiatry in four months was written the same day.

(Id.)

On September 10, 2009, x-rays of Plaintiff's ankle were interpreted by an outside specialist,

Dr. Child.  Dr. Child determined that Plaintiff's old ankle fracture was healed and that there were

no new fractures.  On September 15, 2009, Defendant Araich saw Plaintiff because he wanted his

medications renewed.  Plaintiff had no ankle related complaints.  Defendant Araich noted that the

surgical site on Plaintiff's left ankle was well healed.  Defendant Araich refilled Plaintiff's Tramadol,

which Dr. Akanno had prescribed to Plaintiff since his November 2007 surgery, and Defendant

Araich ordered a follow up appointment with the orthopedist at US Davis Medical Center, and for

Plaintiff to return in two weeks.  (Id. at 12.)

On September 17, 2009, Plaintiff submitted a request for medical services because he

claimed that Defendant Araich prescribed him Tramadol, but he had yet to receive it.  Tramadol was

dispensed to Plaintiff the same day.  Plaintiff received Tramadol twice a day for the entire month of

September 2009, as Defendant Araich prescribed.  (Id.)

On September 20, 2009, Plaintiff submitted another request for medical services complaining

that he was only receiving his medication two times a day instead of three times a day.  The triage

nurse noted that Plaintiff's prescription for Tramadol was for two times a day.  The nurse spoke to

Defendant Araich, and Defendant Araich informed her that Plaintiff could return to the clinic if he

needed.  Defendant Araich also instructed her to tell Plaintiff to use his crutches because Plaintiff

stated he was not using them.  (Id.)

The next day, September 21, 2009, Plaintiff submitted another request for medical services

claiming that he was in pain, and he wanted to see the doctor.  Plaintiff was informed by the triage

nurse that a referral had been submitted for him to see an outside specialist.  The notes provide that

Plaintiff was walking on his foot without the assistance of crutches.  (Id.)  On February 23, 2009, an

x-ray of Plaintiff's ankle was taken.  No new injury was found by Dr. Liu, an outside physician to

whom Plaintiff had been referred.  (Id. at 13.)

1   Defendant Araich a moves for the Motion for Summary Judgment to be granted because there

2   is no evidence that she was deliberately indifferent to Plaintiff's medical needs.  Defendant Araich

3   prescribed medication for Plaintiff in response to his complaints of pain, and submitted referrals to

4   the orthopedists and podiatrist.  Plaintiff's disagreement with the medications that he was prescribed

5   does not establish deliberate indifference.  Defendant Araich argues that she was consistently

6   responsive to Plaintiff's medical needs.

7   **b.    Plaintiff's Position**

8   Dr. Akanno renewed Plaintiff's pain medication prescription for six months on March 27,

9   2007. (PSF, p. 3.)  On June 10, 2007, Plaintiff submitted a medical request stating that he needed

10   an ace wrap because he was not receiving the necessary support from his shoes and was experiencing

11   ankle pain and discomfort.  Plaintiff saw Defendant Araich on June 15, 2007, and his Tramodol was

12   increased to three times per day.  Plaintiff complained about side effects from the Neurontin, and

13   Defendant Araich discontinued the medication.  (Id. at 4.)  Defendant Araich also ordered an x-ray

14   and podiatry referral.  Defendant Araich forgot to file the correct paperwork for the podiatry referral

15   until September 14, 2007, and neglected to correctly complete the paperwork for Plaintiff to receive

16   the x-ray.  Plaintiff argues that although this is not deliberate indifference, the cumulative effect of

17   the errors and denials of treatment proves that Defendant Araich was deliberately indifferent to

18   Plaintiff's medical needs and excessively delayed his treatment.  (Id. at 5.)

19   On July 13, 2007, Plaintiff was issued Naproxen for an infected tooth.  On July 15, 2007,

20   Plaintiff discovered that his chronic pain medication was being stopped, even though his prescription

21   was valid through September 27, 2007, and he filed a request for services.  Plaintiff's medication

22   was stopped because it became non-formulary on July 15, 2007.  Defendant Araich did not replace

23   the prescription with a different medication, but left Plaintiff without any pain medication.  (Id. at

24   6.)

25   The medication that was discontinued, Tramadol, was to be used for moderate to moderately

26   severe pain.  Defendant Araich prescribed aspirin, Motren, ibuprofen, Naproxen, Salsalate, and

27   Robaxin at one time or another.  (Id.)  These medications are used to relieve mild to moderate pain.

28   Since these medications are not for severe pain, Plaintiff argues he was not given an adequate

alternative medication.  On July 20, 2007, Plaintiff received Methocarbamal, which is a muscle relaxer, and his pain was clearly not muscle related.  (Id. at 9.)  Defendant Araich again noted that Plaintiff was to be referred for an ortho appointment, but did not submit the correct paperwork until August 10, 2007.  (Id. at 10.)  On July 31, 2007, Defendant Araich placed Plaintiff on Neurontin, knowing that it made him sick, moody or irritated, and made his ears ring.  (Id. at 10.)

On August 5, 2007, Plaintiff filed an inmate appeal against Defendant Araich, and claims that is why she finally submitted the paperwork for Plaintiff to see a specialist.  (Id. at 10-11.)  Plaintiff submitted numerous appeals requesting a second opinion and to see a pain specialist.  (Id. at 11.)

On September 6, 2007, Plaintiff was seen by an orthopedic specialist, Dr. Lewis, who recommended surgery as soon as possible to remove the plate in his ankle.  On September 9, 2007, Plaintiff filed a request for treatment explaining he had seen the specialist and wanted stronger pain medication.  Defendant Araich refused to provide stronger pain medication, even though the specialist stated that Plaintiff needed surgery due to the plate and the pain it was causing.  (Id. at 12.)

Plaintiff argues that Defendant Araich forced him to take all types of aspirin, Motrin, and even muscle relaxers, knowing they were not working.  Defendant Araich told Plaintiff that she would continue to give the medications that weren't working, before she gave him Tramadol or something similar.  (Id. at 13.)

On November 14, 2007, Plaintiff had surgery to remove the plate and screws from his ankle. (Id.)  Plaintiff returned from surgery at 6:30 p.m. and was told by the RN that processed him that he would receive an ice pack and pain medication when he got to the building where he was housed. (Id. at 13-14.)  When Plaintiff arrived back at his building there were no medical staff.  Medical staff came on duty at 9:00 p.m. and told Plaintiff he would not be receiving his medication or ice packs until the next day.  Plaintiff had to go "man down" to receive an ice pack and pain medication.  The next day, Plaintiff did not receive pain medication or an ice pack until he went "man down" again. (Id. at 14.)  On November 15, 2007, Plaintiff filed an inmate appeal over the delay and denial of treatment.  (Id. at 14-15.)

Dr. Akanno ordered that Plaintiff receive ice packs for two weeks, but Defendant Araich decided that Plaintiff only needed ice packs for two days .  (Id. at 16.)  Plaintiff stopped receiving

1  ice packs on November 18, 2007, and the swelling in his ankle "got out of control and started leaking

2  fluids." Dr. Akanno ordered an ice pack for that night only. Plaintiff states that Defendant Araich

3  refused to provide Plaintiff with ice packs because he filed an inmate appeal against her. Plaintiff

4  was supposed to return to the specialist after two weeks, but did not return until December 13, 2007.

5  On December 4, 2007, Plaintiff had to have his sutures removed at the prison because they were

6  becoming infected. (Id. at 17.) Defendant Araich did not make sure that Plaintiff was seen by the

7  specialist within two weeks. (Id. at 17-18.)

8      The surgery was unsuccessful, and Plaintiff continued to have problems with his ankle. On

9  August 20, 2009, Plaintiff had a second surgery on his ankle. This surgery was also unsuccessful.

10 Plaintiff was referred to a specialist at UC Davis. On September 2, 2009, Plaintiff's ankle began to

11 swell and was red and painful. (Id. at 18.) Plaintiff saw Defendant Araich on September 15, 2009,

12 and pain medications were ordered. Plaintiff submitted another request for services and did not

13 receive the medication until September 17, 2009. (Id. at 19.)

14     On September 18, 2009, Plaintiff submitted another request for services stating his ankle was

15 swollen and red, and so painful that he could not sleep. (Id. at 19.) Plaintiff was seen by an RN that

16 same day and she noted that there was some swelling and redness. Plaintiff filed two requests for

17 services on September 20, 2009, and another request for services on September 21, 2009. (Id. at 20.)

18 The RNs spoke with Defendant Araich twice regarding these requests and she failed to treat Plaintiff.

19 On September 22, 2009, Plaintiff went to medical because his ankle was swollen to almost twice its

20 normal size and was red and burning. (Id. at 21.) The RN had him see Dr. Patel right away, and he

21 was prescribed two antibiotics. (Id. at 22.) Plaintiff was seen by UC Davis on January 6, 2010.

22 Plaintiff was eventually diagnosed with an infection that caused erosion of the bone that resulted in

23 his being hospitalized. (Id. at 22-23.) Plaintiff argues that the evidence shows that Defendant Araich

24 was deliberately indifferent to his serious medical needs and summary judgment should be denied.

25           **c.    Discussion**

26     "[T]he existence of an injury that a reasonable doctor would find important and worthy of

27 comment or treatment, . . . the presence of a medical condition that significantly affects an

28 individual's daily activities, and . . . the existence of chronic or substantial pain" are indications of

a serious medical need.  Doty v. County of Lassen, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citing McGuckin, 974 F.2d at 1059-1060; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  It is the existence of allegedly severe pain which is at issue here, and if the failure to treat a condition could result in the unnecessary and wanton infliction of pain, a serious medical need has been shown.  Jett, 439 F.3d at 1096 (quotations marks omitted); Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (pain resulting from pepper spray was sufficient to satisfy the objective component of an Eighth Amendment medical care claim).  Plaintiff's evidence is sufficient to state the existence of a serious medical need.

### i.     June 15, 2007 through November 13, 2007

Prior to seeing Defendant Araich, Plaintiff had been seen by several physicians who had informed Plaintiff that he would eventually need to have surgery to have the plate removed from his ankle.  (PSF, pp. 2-3.)  On March 27, 2007, Dr. Akanno told Plaintiff that if the pain in his ankle continued, the plate would have to be removed.  (Id. at 3.)   Plaintiff was prescribed Motrin (ibuprofen), Neurontin (Gabapentin), Naproxen (naprosyn), and Tramadol by Dr. Akanno.  (Araich Dec., ¶ 4; PSF, Exhibit J, pp. 5-6.)

Defendant Araich began treating Plaintiff on June 15, 2007, after he was placed in the "hole". (PSF, p. 4; Araich Dec., ¶ 5.)  On June 15, 2007, Plaintiff informed Defendant Araich that his ankle hurt and swelled due to lack of support and that the Neurontin made him feel sick and caused his ears to ring.  (PSF, p. 4.)  Defendant Araich increased Plaintiff's Tramadol to three times per day, discontinued the Neurontin, ordered an x-ray, and referred Plaintiff to a podiatrist.  (Id. at 4-5; Araich Dec., ¶ 5.)

Plaintiff argues that on June 15, 2007, Defendant Araich ordered that Plaintiff see the podiatrist, but failed to file the proper paperwork.  (PSF, p. 4.)  Plaintiff fails to submit any evidence to show that Defendant Araich failed to complete the appropriate paperwork for his referral.  Even if Defendant Araich did fail to file the proper paperwork, a delay in treatment would not rise to the level of deliberate indifference unless the delay causes substantial harm.  Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002); Wood, 900 F.2d at 1335; Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1984).  Prior to being treated by Defendant Araich,

20

Plaintiff had been informed that he would need surgery to treat his ankle if the pain continued.  In light of the fact that Plaintiff needed surgery prior to being treated by Defendant Araich, the Court fails to find any substantial harm arising from a delay in being referred to a podiatrist or orthopedist or x-rays being taken.  What is at issue here is whether Plaintiff was deprived of pain medication resulting in his being forced to endure severe pain.

Additionally, Plaintiff argues that Defendant Araich failed to comply with CDCR guidelines regarding speciality care.  However, the failure to comply with CDCR regulations does not state a claim for deliberate indifference.  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996).  Nor is there any liability under § 1983 for violating prison policy.  Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)).

On July 13, 2007, Defendant Araich prescribed Naproxen for Plaintiff to take three times a day.  (Araich Dec., ¶ 5.)  Plaintiff was seen on July 20, 2007, and requested that he receive the Tramadol back.  Plaintiff argues that he was taken off the Tramadol and left with no pain medication, however, Plaintiff was taking Naproxen and Neurontin, and Defendant Araich prescribed Robaxin on July 20, 2007.  Defendant Araich also ordered that Plaintiff receive an appointment with an orthopedist and an x-ray be performed on his ankle.[6]  (Araich Dec., ¶ 7.) Defendant Araich observed that Plaintiff was experiencing no apparent distress, that he did not seem to be in any pain, and that he had full range of motion in his ankle.  Defendant Araich determined that there was no indication to renew Plaintiff's Tramadol.  (Id.)

Plaintiff argues that the medications he was placed on were not an acceptable alternative to

---

[6]Plaintiff states that he submitted requests for services complaining of pain and his need for medication on July 15, 17, 19, 24, and 29, 2007; August 7, 16, and 23, 2007; September 4, 9, and 28, 2007; and October 14, 28, 2007, (PSF, Exhibit B, pp. 6-19), and alleges that Defendants have attempted to mislead the Court by failing to mention these requests for service.  (Plaintiff's Dispute of Facts ("PDF"), p. 8.)  A review of these documents reveals that none of them were processed by Defendant Araich, nor is there any indication that she reviewed them or had knowledge of the requests for service prior to the dates she treated Plaintiff, if at all.  Therefore, they are not relevant to Defendant Araich's knowledge of Plaintiff's medical condition.  The Court finds no attempt to mislead the Court by the failure to mention these requests for service.

Tramadol. (PSF, p. 10.) Defendants have submitted evidence that Plaintiff was receiving Naproxen, a nonsteroidal anti-inflammatory drug used to treat pain and inflammation, Neurontin, a non-narcotic, anti-epileptic medication widely used to treat chronic pain, and Robaxin, a muscle relaxant. (Araich Dec. at ¶ 4.)   This is a medical care case, and Plaintiff may not offer as evidence his own opinion on matters which require scientific, technical, or other specialized knowledge, although he may attest to medical matters that do not fall within the scope of Rule 702.  Fed. R. Evid. 701, 702.

Plaintiff also states that the medication provided was nothing more than aspirin or Motrin or was not appropriate to treat the type of pain he was experiencing.  Plaintiff is not qualified as a medical expert, and his arguments contain nonadmissible hearsay. Fed. R. Civ. P. 801(c).  Affidavits or declarations used in support of or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  "Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge of the events detailed in the declaration." Tracchia, 2009 WL 3055222 at * 3.  The admissible evidence before the Court demonstrates that Plaintiff was receiving medication other than aspirin or Motrin to treat his pain.

When Defendant Araich examined Plaintiff again on August 3, 2007, Plaintiff told Defendant Araich that Naproxen did not work and he insisted on taking Tramadol.  Because Plaintiff did not want to take Naproxen, Defendant Araich discontinued Plaintiff's prescription and prescribed Salsalate, a non-steroidal anti-inflammatory drug used to reduce pain and swelling, and an ankle support for Plaintiff.  Plaintiff was still taking Neurontin and Robaxin.  (Araich Dec., ¶ 7.)

Defendant Araich saw Plaintiff again on August 10, 2007, and Plaintiff stated that he wanted Tramadol or a similar drug.  Defendant Araich noted the previous referral for Plaintiff to see an orthopedist was received by the specialty clinic; however Defendant Araich submitted another referral in an effort to get Plaintiff seen as soon as possible.  On August 16, 2007, Defendant Araich wrote a thirty day prescription for Methocarbomol, a muscle relaxant, and renewed Plaintiff's Salsalate prescription. (Id. at 7.)  Plaintiff saw the orthopedic surgeon, Dr. Lewis, for his ankle on September 6, 2007.  Dr. Lewis recommended surgery to remove the plate and screws in Plaintiff's

left ankle.   On September 11, 2007, Defendant Araich submitted a request for Plaintiff to see Dr. Lewis again for the removal of the hardware in Plaintiff's ankle.  (Id. at ¶ 8.)

On September 13, 2007, Defendant Araich renewed Plaintiff's prescription of Methocarbomol for thirty days.  On September 14, 2007, Defendant Araich renewed Plaintiff's prescription of Salsalate and Robaxin, and increased Plaintiff's prescription of Neurontin.   On September 14, 2007, Defendant Araich also submitted a request for Plaintiff to see a podiatrist for his left ankle, and ordered that Plaintiff return to the medical clinic to see her in two weeks.  (Id.)

Plaintiff was seen by the podiatrist, Dr. Sill, on September 18, 2007, who diagnosed Plaintiff with sinus tarsi syndrome, and thought that it was probable that Plaintiff had a ganglion cyst.  Dr. Sill injected a steroid around the mass in Plaintiff's ankle, and ordered a follow up visit in six weeks.  (Id. at ¶ 9.)

On October 17, 2007, Plaintiff was treated by a nurse in response to a request that he was in pain.  The nurse noted that Plaintiff was scheduled for surgery on November 14, 2007.  Plaintiff was seen by Dr. Sill again on October 30, 2007.  Plaintiff was also seen by Defendant Araich on October 30, 2007,[7] who noted that he had an appointment to have surgery on his ankle on November 14, 2007.  Defendant Araich observed that Plaintiff had abrasions on three areas of his ankle, and ordered Plaintiff to apply triple antibiotics to the abrasions and to follow up after surgery.  (Id. at ¶ 10.)

Although Plaintiff states that he was denied pain medication, or not prescribed medication stronger than aspirin or Motrin, Plaintiff was prescribed Naproxen, a nonsteroidal anti-inflammatory drug used to treat pain and inflammation; Neurontin, a non-narcotic, anti-epileptic medication widely used to treat chronic pain; Robaxin, a muscle relaxant; Methocarbomol; a muscle relaxant; Salsalate, a non-steroidal anti-inflammatory drug used to reduce pain and swelling; and received a Kenalog injection, a steroid that prevents the release of substances into the body that cause inflammation.  Each time Plaintiff complained to Defendant Araich that the medication was ineffective in treating

---

[7]A review of the First Amended Complaint, Plaintiff's Statement of Facts, and Plaintiff's Dispute of Defendants' Facts reveals that Plaintiff's only allegation regarding treatment on this date was that Defendant Araich accused him of having self inflicted wounds.  (First Amended Compl., ¶ 85.)

his pain, Defendant Araich responded by adjusting or changing his medications.  Although Plaintiff wanted to be placed back on Tramadol, or a similar drug, and did not want to take Neurontin due to the side effects, Plaintiff's disagreement with the treatment provided does not amount to deliberate indifference.  Franklin v. Oregon, 662 F.2d 1337, 1355 (9th Cir. 1981); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

Finally, while Plaintiff alleges that Defendant Araich refused to refer him to a pain specialist, his requests were made on health services request forms submitted on July 29, 2007; August 21, 2007; and September 4, 2007, and there is no indication that Defendant Araich saw these forms as they were processed by other medical personnel.  (PSF, Exhibit B, pp. 10, 14, 15.)  There is no evidence before the Court that Defendant Araich was aware of Plaintiff's request for referral to a pain specialist and denied the request.  Additionally, Defendant Araich ordered that Plaintiff see an orthopedist and a podiatrist to evaluate his need for surgery, which Plaintiff admits was the procedure that had been recommended since 2004 to treat his ankle pain.  (Id. at 2.)

It is clear from the record before the Court that Plaintiff received medical treatment and his complaints of pain were not ignored.  Plaintiff's complaint that he should have received a stronger pain medication is no more than a difference of opinion between Plaintiff and Defendant Araich which does not give rise to an Eighth Amendment claim.  Plaintiff has failed to raised any triable issues of material fact as to his Eighth Amendment medical care claim against Defendant Araich from June 15, 2007, through November 13, 2007.

### ii.      November 13, 2007 through December 31, 2007

Following Plaintiff's surgery on November 14, 2007, Defendant Araich saw Plaintiff on November 16, 2007, and scheduled a follow up with orthopedics as recommended, and ordered ice packs for Plaintiff.  (Araich Dec., ¶ 11.)  Plaintiff claims that Defendant Araich went against the orders of Dr. Lewis and Dr. Akanno and ordered that he receive ice packs for only two more days.  (PSF, p. 16.)  A difference of opinion between medical providers regarding treatment does not amount to deliberate indifference.  Sanchez, 891 F.2d at 242.  To state a claim under these conditions requires the plaintiff "show that the course of treatment the doctors choose was medically unacceptable under the circumstances, . . . and . . . they chose this course in conscious disregard of

an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Contrary to Plaintiff's allegations, Defendant Araich did not deny him ice packs. When Plaintiff was seen by Defendant Araich she observed that Plaintiff was doing well and ordered ice packs twice a day for two more days. (PSF, Exhibit D, p. 7.) On November 18, 2007, Dr. Akanno ordered a single ice pack for that night only. (Id. at 9.) On November 25, 2007, Plaintiff filed requests for service, stating his ankle was swollen, but did not mention the need for an ice pack. (Id. at 11.) Plaintiff has failed to submit any evidence to show that Defendant Araich was aware that he was in need of ice packs after November 18, 2007, and failed to respond.

Defendant Araich treated Plaintiff on November 27, 2007, and ordered that Plaintiff be scheduled for his follow up appointment "ASAP". (Araich Dec., ¶ 11.) Plaintiff disputes the date of this visit, claiming he was seen on November 21, 2007, and was to be seen again in two weeks. Plaintiff states he was not seen again until December 13, 2007, and his stitches had to be removed because he had an infection due to not being treated on time. (PSF, p. 16.) The Court notes that in the Health Care Request Form submitted by Plaintiff on December 10, 2007, he states that his stitches were removed on or around December 5, 2007. (PSF, Exhibit D, p. 15.) Plaintiff was seen by Dr. Lewis on December 13, 2007. Dr. Lewis recommended that Plaintiff be given ibuprofen for inflammation, and he discharged Plaintiff from his care. (Araich Dec., Exhibit A, p. 2.) Plaintiff was seen on December 14, 2007, in response to his request submitted December 10, 2007. His medical records indicate that he had lesions on his chest and head. (PSF, Exhibit D, p. 16.) While Plaintiff claims that his stitches had to be removed on December 13, 2007, due to an infection, it is clear that this is not true. It appears that Plaintiff speculates that his ankle was infected because it was red and leaking fluid. However, this is insufficient to establish that Plaintiff had an infection, and the medical records of the suture removal on December 4, 2007, and his visits on December 13, and 14, 2007, do not support his claim that his ankle was infected.

Although Plaintiff complains that Defendant Araich did not ensure that he was sent back to Dr. Lewis for a two week follow-up appointment, Plaintiff was seen by medical personnel at the prison and received treatment. Defendant Araich does not schedule specialty appointments, and she submitted the request for Plaintiff to return to Dr. Lewis for a follow-up visit. Plaintiff's sutures

were removed three weeks after surgery, and he was seen by Dr. Lewis within the month and discharged from his care.

The evidence before the Court does not show that Defendant Araich acted with the culpable state of mind required to violate the Eighth Amendment.  Plaintiff has failed to raised any triable issues of material fact as to his Eighth Amendment medical care claim against Defendant Araich from November 14, 2007, through December 31, 2007.

### iii.    August 20, 2009 through September 22, 2009

On August 20, 2009, Plaintiff had another surgery in an attempt to remove the plate and screws from his ankle.  The surgeon was unable to remove the plate from Plaintiff's ankle, and Plaintiff was referred to UC Davis. (PSF, p. 18.) On August 26, 2009, Plaintiff had a tele-medicine conference with a specialist from UC Davis.  According to the report, Plaintiff stated that there were no signs of infection, and the wound was healing nicely.  (Id., Exhibit L, p. 3.)  The doctor also observed that there were no signs of infection.  The physician stated that Plaintiff's medical records needed to be reviewed before a final recommendation for treatment could be made. (Id. at 4.) Plaintiff's staples were removed on August 31, 2009.  (Id. at 7.)

On September 15, 2009, Defendant Araich saw Plaintiff.  Defendant Araich renewed Plaintiff's Tramadol prescription, ordered a follow up appointment with the orthopedist at UC Davis Medical Center, and that Plaintiff return in two weeks.. (Araich Dec., ¶ 13.)  Although Defendant Araich renewed Plaintiff's medication, he did not receive it for two days.  Plaintiff submitted a request for medical services and his medication was dispensed on September 17, 2009. (PSF, p. 19.)

Plaintiff submitted a request for medical services on September 18, 2009, stating his ankle was red and swollen.  The triage nurse examined Plaintiff and noted that Plaintiff's ankle was red and swollen.  Plaintiff was instructed to take his pain medication.  (Id., Exhibit L, p. 16.)  On September 20, 2009, Plaintiff submitted two Request for Medical Services forms complaining that he was only receiving his medication two times a day instead of three times a day.  (Id. at 17, 18.) On the same date, Plaintiff was seen by the triage nurse, who noted that Plaintiff complained that his foot felt like it was on fire and it was discharging pus.  The RN examined Plaintiff, found there were no signs of pus, and Plaintiff did not have a fever.  Plaintiff was told that he needed to use his

crutches, because he was not using them. (Id. at 18.)  The nurse spoke to Defendant Araich, and Defendant Araich informed her that Plaintiff could return to the clinic if he needed. (Araich Dec., ¶ 13.)

The next day, September 21, 2009, Plaintiff submitted another request claiming that he was in pain and that he wanted to see the doctor. (Id.)  Plaintiff's request was addressed by the triage nurse on September 22, 2009.  Plaintiff was informed by the triage nurse that a referral for him to see an outside specialist had been submitted.  (PSF, Exhibit L, p. 19.)  Plaintiff argues that this shows that the RN spoke to Defendant Araich, however this argument is not supported by the record. The triage nurse noted that Plaintiff has been seen several times by the nurse and the MD for this same thing.  There is no indication that the triage nurse spoke with Defendant Araich on this date. Plaintiff was seen by Dr. Patel on the same day and was placed on antibiotics for an infection. (PSF, p. 22.)

In his opposition, Plaintiff includes dates of service beyond those contained in his complaint. A review of these additional records shows that Defendant Araich was not involved in Plaintiff's medical care on any of these dates.  While Plaintiff speculates that he had a staff infection on September 2, 2009, the first allegation of any infection was on September 18, 2009, when Plaintiff was seen by the triage nurse who examined Plaintiff and saw no signs of pus discharging from the wound and found that Plaintiff did not have a fever.  Deliberate indifference requires that the defendant must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference.  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.

In this instance, the facts available to Defendant Araich were that the triage nurse had examined Plaintiff, she saw no signs of pus discharging from the wound, and found that Plaintiff did not have a fever.  There are no facts from which Defendant Araich would have inferred that a substantial risk of serious harm existed.  Defendant Araich was not deliberately indifferent to a serious medical need by having the triage nurse inform Plaintiff to return if he continued to have problems.

While Plaintiff alleges that Defendant Araich was deliberately indifferent by failing to treat his complaints of pain and infection, Defendant Araich only saw Plaintiff on September 15, 2009,

1  and no signs of infection were present.  During that appointment, she renewed his pain medication.

2  While Plaintiff complains that he did not receive the medication for two days, there is no evidence

3  that Defendant Araich was aware that Plaintiff was not receiving his medication or that she was

4  responsible for the denial of the medication.

5  Plaintiff has failed to raised any triable issues of material fact as to his Eighth Amendment

6  medical care claim against Defendant Araich following his surgery on August 20, 2009.

7  ### iv.   **Delay Due to Contract Disputes**

8  Plaintiff alleges that he was not seen in a timely manner by UC Davis following his tele-

9  medical conference on August 26, 2009, and his orthotic shoes were delayed[8] due to contract

10  disputes.  However, there is no evidence that Defendant Araich was involved in any delay in Plaintiff

11  being seen by UC Davis or receiving his orthotic shoes.  Defendant Araich is not liable for any

12  treatment that Plaintiff received or failed to receive after she last treated him on September 15, 2009.

13  The evidence before the Court is that Defendant Araich, a nurse practitioner, was to provide medical

14  treatment to inmates.  There is no evidence that Defendant Araich's duties included contracting for

15  services with outside providers.

16  The Court finds that Defendant Araich did not deny, dely or intentionally interfere with

17  Plaintiff's medical treatment.  Plaintiff has failed to raise any triable issues of material fact as to his

18  medical treatment by Defendant Araich, and the Court recommends that Defendant Araich's Motion

19  for Summary Judgement be granted.

20  ### 3.   **Defendants Mackey and Robaina**

21  ### a.   **Defendants' Position**

22  Defendant Mackey has been employed as an LVN at KVSP since 2007.  Her responsibilities

23  include providing general nursing and first aid to inmates under the clinical direction of the

24  physicians at KVSP.  Defendant Mackey also passes out medications to inmates; however, as an

25  LVN, Defendant Mackey is not responsible nor does her license permit her to prescribe medication

26  

27  [8]Plaintiff alleges that Defendants failed to mention that he did not receive his orthotic shoes until September
28  26, 2009, in an attempt to deceive the Court.  (PSF, p. 16.)  Since the delay in receiving Plaintiff's orthotic shoes is
not attributable to any defendant that this action is proceeding against, the Court fails to find any attempt at deception
by the failure to include the date Plaintiff received his shoes.

1    to inmates. Defendant Mackey also performs medical assessments of patients in the clinic before

2    referring the patient to a registered nurse ("RN") or physician. (Defendants' Memorandum of Points

3    and Authorities, p. 13.)

4          Defendant Robaina has been employed as an RN with the CDCR since January 2004, and

5    has been employed as a RN at KVSP since April 2008. Defendant Robaina's responsibilities at

6    KVSP include the medical treatment of inmates, and she has treated Plaintiff. On February 2, 2009,

7    Defendant Robaina renewed Plaintiff's medications. Defendant Robaina saw Plaintiff on February

8    13, 2009, and noted that there was no redness, bruising, or swelling on Plaintiff's ankle. Defendant

9    Robaina referred Plaintiff to see the doctor, and informed Plaintiff to return if his symptoms

10   persisted or became worse. Plaintiff was treated by Dr. Patel on February 16, 2009. Dr. Patel noted

11   that Plaintiff reported left ankle pain, and that the surgery to remove the plate and screws in his ankle

12   had failed. (Id.)

13         On February 18, 2009, Plaintiff submitted a request stating that at noon he was not given his

14   medication because it was lost, and that he was told by the pharmacy that they would not refill it

15   without a doctor's notes. Plaintiff claimed that he tried to see the doctor but was refused. The same

16   day, February 18, 2009, at 1:05 p.m. a doctor prescribed Motrin (ipuprofen) 600 mg for Plaintiff to

17   take three times a day for 30 days. Defendant Mackey faxed the order to the prison pharmacy, so

18   Plaintiff could receive the medication as soon as possible. (Id.)

19         On February 19, 2009, Dr. Patel prescribed Tylenol with Codeine for Plaintiff. The same

20   day, Plaintiff signed a medical administration record to receive ibuprofen. Plaintiff admits that on

21   February 19, 2009, Defendant Mackey "prescribed" him "another brand of medication after he

22   informed her that he did not receive his medication. (Id.)

23         Plaintiff submitted a request on February 23, 2009, indicating that he could not see a doctor

24   because he did not have a chart. Plaintiff was seen by Dr. Sill on February 23, 2009. Even though

25   Plaintiff's chart was not available, Dr. Sill still treated Plaintiff. Dr. Sill noted that x-rays of

26   Plaintiff's ankle were taken that day, and that the plate in his ankle was intact. Dr. Sill also noted

27   that Plaintiff had a current prescription for Motrin. Dr. Sill recommended that Plaintiff return to see

28   him again in two months. (Id.)

Defendant Robaina treated Plaintiff on February 25, 2009, and noted that Plaintiff reported that his pain was a nine out of ten.   Neither Defendant Mackey nor Defendant Robaina took Plaintiff's prescribed medication.   Defendants Mackey and Robaina are unaware of anyone inappropriately or unlawfully taking Plaintiff's medication.   (Id.)  As standard practice, Defendants Mackey and Robaina have never refused to see a patient because the patient did not have a chart, nor have they refused to allow a patient to be seen by a physician when the patient did not have a chart. (Id. at 14-15.)

Defendants state that when Plaintiff did not receive his medication, an hour later he was prescribed pain medication and Defendant Mackey faxed the order to the pharmacy so he would receive the medication as soon as possible.   The next day Plaintiff was prescribed one Tylenol with Codeine by Dr. Patel.  Defendants argue that Plaintiff was prescribed pain medication for his ankle. Plaintiff was seen by Dr. Sill on February 23, 2009.   When Defendant Robaina saw Plaintiff on February 25, 2009, and he complained of pain, she referred him to a physician.  Defendants Mackey and Robaina did not deny, delay, or interfere with Plaintiff's medical treatment.

### b.     Plaintiff's Position

Around February 1, 2009, Plaintiff was moved to D-yard.   At the time he had a prescription for Tramadol which was valid until February 25, 2009.  (PSF, p. 26.)  On February 18, 2009, Plaintiff did not receive his pain medication.  Defendant Mackey told Plaintiff that his medication was lost, and the pharmacy would not refill the prescription without an order from the doctor. Defendant Mackey refused Plaintiff's request to speak to the doctor.  (Id. at 27.)  On February 19, 2009, RN George contacted Dr. Patel who prescribed Tylenol with Codeine.  (Id. at 29.)  Plaintiff had an appointment with the doctor on February 20, 2009, but medical staff denied him access because his chart was missing.  (Id. at 30.)

On February 25, 2009, Plaintiff saw Defendant Robaina who refused to allow him to speak to the doctor regarding his missing pain medication.  (Id. at 31.)  Defendant Robaina told Plaintiff that his pain medication would be renewed, but there is no evidence that a renewal for the lost medication was submitted.  Plaintiff's attempts to appeal the denial of his medication were screened out.  (Id. at 32.)   Plaintiff argues that Defendants Robaina and Mackey refused to provide Plaintiff

with his lost pain medication and refused to allow him to see the doctor, therefore the Motion for Summary Judgment should be denied.

### c.    Discussion

The Court finds that Defendants Mackey and Robaina have met their burden of informing the Court of the basis for their motion.  Plaintiff alleges that on February 18, 2009, Defendant Mackey was passing out medication.  Plaintiff did not receive his medication.  Defendant Mackey told Plaintiff that his medication was lost and could not be replaced without an order from the doctor. Plaintiff's request to speak with a doctor was refused by Defendant Mackey.  (PSF, p. 27.)  Plaintiff claims that Defendant Mackey left him with no pain medication and no way to resolve the issue, (id. at 28), however, at 1:05 p.m. a doctor prescribed Motrin (ipuprofen) 600 mg for Plaintiff to take three times a day for 30 days.  Defendant Mackey faxed the order to the prison pharmacy, so Plaintiff could receive the medication as soon as possible.  Defendant Mackey responded to Plaintiff's serious medical need by contacting a physician who prescribed medication for Plaintiff.  Defendant Mackey then faxed the prescription to the pharmacy so Plaintiff's medication would be filled.  Defendant Mackey was not deliberately indifferent to Plaintiff's complaints of pain on February 18, 2009.

On February 19, 2009, Dr. Patel prescribed one Tylenol with Codeine for Plaintiff to be given at that time. (Robaina Dec., ¶ 4; Mackey Dec., ¶ 4; PSF, Exhibit J, p. 5.)  Plaintiff states that he had an appointment to see the doctor on February 20, 2009, but was not seen because his chart was missing.  None of the medical records in evidence reflect an entry for February 20, 2009, and Defendants Mackey and Robaina failed to address Plaintiff's allegation that they denied him treatment on February 20, 2009.  In the First Amended Complaint, Plaintiff states that he had a medical appointment on February 20, 2009, and when he arrived, Defendants Mackey and Robaina told him that he would not be seen because his chart was missing.  (First Amended Compl. ¶ 111.) The fact that Dr. Patel only prescribed a single Tylenol with Codeine tablet at 6:30 p.m. would indicate that this was to get Plaintiff through the night so the missing pain medication could be addressed the following day.

On February 23, 2009, Plaintiff was seen by Dr. Sills.  On February 25, 2009, Plaintiff was seen by Defendant Robaina.  Plaintiff described his level of pain as nine out of ten, and Defendant

1  Robaina referred him to see the doctor without addressing his complaints of pain. (PSF, Exhibit J,

2  p. 7.)  On February 27, 2009, Defendant Robaina reviewed a request form stating that the pain in

3  Plaintiff's ankle was unbearable.  (Id. at 11.)  On March 3, 2009, Defendant Robaina reviewed

4  Plaintiff's request form which stated that he was in serious pain and the doctor had asked Plaintiff

5  to leave the office without treating him.  (Id. at 13.)

6      Plaintiff argues that his prescription for Tramadol was valid until February 25, 2009, however

7  the fact that Plaintiff does not receive his choice of medication does not support a claim of deliberate

8  indifference.  Sanchez, 891 F.2d at 242.  In this instance, Plaintiff was prescribed Motrin on February

9  18, 2009, when his medication was missing.  On February 19, 2009, to address his complaints of

10  pain, Dr. Patel prescribed a single Tylenol with Codeine tablet.  Plaintiff claims that he was to see

11  a doctor on February 20, 2009, to address the lack of medication.  While it appears that Plaintiff was

12  receiving some medication, Defendants have failed to submit evidence to show that Plaintiff's

13  complaints that the medication was not sufficient to relieve his serious pain were addressed.

14      Plaintiff has raised a triable issue as to whether Defendant Mackey was deliberately

15  indifferent by failing address Plaintiff's complaints of pain on February 20, 2009, and Defendant

16  Robaina was deliberately indifferent by failing to address Plaintiff's complaints of pain from

17  February 20, 2009, through March 3, 2009.  The Court recommends that Defendants Mackey and

18  Robaina's Motion for Summary Judgment be denied.

19      **4.      Defendant Dileo**

20      **a.      Defendant's Position**

21      Defendant Dileo has been employed as a physician at KVSP since 2006.  On March 2, 2009,

22  Defendant Dileo treated Plaintiff and observed that Plaintiff had a steady gait and could easily get

23  up and down from a chair with left ankle support.  Defendant Dileo noted that Plaintiff reported a

24  sharp pain, nine out of ten, with use of his pain medications.  (Defendants' Memorandum of Points

25  and Authorities, p. 15.)  During the appointment, Plaintiff requested removal of the hardware in his

26  ankle and said he would like to be treated with Tramadol.  Plaintiff also complained that Motrin did

27  not work.  Defendant Dileo informed Plaintiff that Salsalate and Neurontin, his current medications,

28  would not damage his liver.  (Id.)

Defendant Dileo then examined Plaintiff and observed no redness or swelling of Plaintiff's ankle, and that Plaintiff had full flexion and extension of his ankle.  Plaintiff reported chronic pain, but he refused Neurontin, Motrin, and Salsalate.  Defendant Dileo renewed Plaintiff's medication chrono and also ordered aspirin.  The chrono was submitted the same day and a copy was faxed to the pharmacy.  A comprehensive chrono for Plaintiff to be able to have a brace and arch support was also submitted on March 2, 2009.  (Id.)

Defendant Dileo argues that he examined Plaintiff on March 2, 2009, and Plaintiff refused the Neurontin, Motrin, and Salsalate.  Any deny in treatment was a result of Plaintiff's own actions in refusing the pain medication.

### b.    Plaintiff's Position

On March 2, 2009, Plaintiff was seen by Defendant Dileo.  Defendant Dileo never examined Plaintiff or looked though Plaintiff's chart to see that Plaintiff had side effects when treated with Neurontin or to review the prior surgery notes.  Defendant Dileo refused to renew Plaintiff's pain medication and prescribed Neurontin.  (PSF, p. 33.)  Plaintiff told Defendant Dileo that he could not take Neurontin because it caused him to have severe mood swings.  Defendant Dileo told Plaintiff that he refused to treat him if Plaintiff would not take the Neurontin.  (Id. at 34.)  Defendant Dileo also refused to refer Plaintiff to a specialist.  (Id. at 35.)  Defendant Dileo asked Plaintiff to leave the office without examining him or providing treatment.  (Id. at 36.)  Plaintiff argues that there is a dispute of material facts and Defendant Dileo's motion for summary judgment should be denied.

### c.    Discussion

The Court finds that Defendant Dileo has met his burden of informing the Court of the basis for his motion.  Defendant Dileo treated Plaintiff on March 2, 2009.  During the appointment, Plaintiff stated that he was experiencing pain, requested removal of the hardware in his ankle, and said he would like to be treated with Tramadol.  (Dileo Dec., ¶ 3.)  Defendant Dileo states that he examined Plaintiff and observed no redness or swelling of Plaintiff's ankle, and that Plaintiff had full flexion and extension of his ankle.  (Id.)  However, Plaintiff contends that Defendant Dileo never examined his ankle.  (PSF, p. 36).  While Plaintiff's medical records reflect that Defendant Dileo did examine Plaintiff's ankle, Plaintiff's statement, based on his personal knowledge, that no

examination occurred is sufficient to create a triable issue as to whether an examination occurred.

Defendant Dileo states that although Plaintiff reported chronic pain, he refused Neurontin, Motrin, and Salsalate. (Dileo Dec., ¶ 3.) However, Plaintiff states that he only refused to take the Neurontin due to the side effects he experiences when taking it. Plaintiff claims that he informed Defendant Dileo of this, and Defendant Dileo refused to treat him unless he agreed to take the Neurontin. (PSF, p. 34.)

In light of Plaintiff's statements that Defendant Dileo failed to examine him, disregarded his complaints of pain and the side effects that he suffered when taking Neurontin, and Defendant Dileo's refusal to treat Plaintiff unless he took Neurontin, the Court finds the existence of a genuine dispute as to whether Defendant Dileo was deliberately indifferent to Plaintiff's serious medical need on March 2, 2009. Therefore, the Court recommends that Defendant Dileo's Motion for Summary Judgment be denied.

### 5.   Defendant Ali

#### a.   Defendant's Position

Defendant Ali has been employed as an RN at KVSP since 2007. (Defendants' Memorandum of Points and Authorities, p. 15.) From June 11, 2007, through February 2008, Defendant Ali's only duty was to respond to inmate appeals at the first level of review. (Id. at 15-16.) Plaintiff submitted an Inmate Appeal, Log # 07-02524, dated November 15, 2007, concerning the failure to receive pain medication and an ice pack after he had returned from surgery the previous day. Plaintiff requested that everyone involved in his treatment be investigated, and that he receive proper treatment by a doctor. KVSP's Appeals Coordinator determined that Plaintiff's Appeal should be processed as a routine appeal on December 5, 2007, and Defendant Ali was assigned to respond to the Appeal on December 11, 2007. Defendant Ali was provided a due date of January 2, 2008, to respond to the Appeal. (Id. at 16.)

Defendant Ali reviewed Plaintiff's Appeal and the attachments provided by the Appeals Coordinator's office prior to responding to Plaintiff's Appeal. Defendant Ali also interviewed Plaintiff on December 28, 2007. During the interview, Plaintiff reiterated that he wanted everyone involved with his care after surgery to be investigated, and that he wanted to receive adequate post-

operative care.  Defendant Ali also reviewed pertinent portions of Plaintiff's medical records, spoke to the medical staff at the Correctional Treatment Center ("CTC"), and spoke to Plaintiff's facility physician.  (Id.)

Defendant Ali's inquiry showed that Plaintiff was evaluated by a RN when he returned from surgery, and Plaintiff was provided with post operative instructions.  The medical staff where Plaintiff received surgery also provided Plaintiff with post operative instructions.  Additionally, Plaintiff was given Motrin and an ice pack in the CTC upon return from surgery, and Plaintiff's physician orders were faxed to the pharmacy the same day.  Plaintiff's medication was delivered to his facility the following day because he did not return from surgery until 1830 hours.  Further, Plaintiff was seen post operatively several times by his facility physician.  Based on his inquiry, Defendant Ali determined that Plaintiff's treatment after he returned from surgery was appropriate and timely.  (Id.)  Defendant Araich partially granted the appeal on January 2, 2007.  (Id. at 16-17.) Defendant Ali has never tried to cover up negligent treatment towards Plaintiff and has no knowledge of medical staff at KVSP acting negligently while treating Plaintiff.  (Id. at 17.)

Defendant Ali argues that he heard Plaintiff's inmate appeal after the alleged constitutional violations had occurred.  There is no evidence that Plaintiff suffered injury as a result of Defendant Ali's actions in responding to Plaintiff's inmate appeal.  Since Plaintiff's medical needs were responded to Defendants' Motion for Summary Judgment should be granted.

### b.    Plaintiff's Position

On November 15, 2007, Plaintiff filed an inmate appeal over the denial of pain medication and ice packs when he returned from surgery the previous day. (PSF, pp. 14-15.)  Although Plaintiff filed the appeal as an emergency appeal, Defendant Ali and his supervisors decided to process it as a regular appeal.  Defendant Ali did not hear Plaintiff's appeal until January 2, 2008.  When Defendant Ali investigated the appeal, he did not interview all the involved parties.  (Id. at 15.) Defendant Ali was deliberately indifferent to Plaintiff's lack of adequate treatment following surgery and the Motion for Summary Judgment should be denied.

### c.    Discussion

The Court finds that Defendant Ali has met his burden of informing the Court of the basis

for his motion.  On November 15, 2007, Plaintiff submitted Inmate Appeal No. KVSP-O 07-02524, grieving that he had surgery on his ankle and when he returned he was refused pain medication and an ice pack.  Plaintiff states that he yelled enough to get pain medication and an ice pack at 10:30.  (Ali Dec., Exhibit A at 6; PSF, Exhibit, p. 2.)  Plaintiff grieves that he did not receive the instructions on how to care for his ankle until the following day.  Additionally, Plaintiff was told again on November 15, 2007, that his pain medication was not sent over and he would not be receiving it.  (Ali Dec., Exhibit A at 7; PSF, Exhibit Q, p. 3.)  Plaintiff requested that everyone involved be investigated and that he receive proper treatment as recommended by his doctor.  (Ali Dec., Exhibit A at 6; PSF, Exhibit Q, p. 2.)  On December 10, 2007, the Appeal was assigned to Defendant Ali.  (Ali Dec., Exhibit A at 7.)

The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals alone cannot serve as a basis for liability under section 1983.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  In order for Defendant Ali to be deliberately indifferent, he must have been aware of Plaintiff's serious medical need and failed to adequately respond.  Simmons, 609 F.3d at 1018; see Francis v. Cate, No. 2:09-cv-0640-JAM-KJN P, 2011 WL 2119024, *10 (E.D.Cal. May 26, 2011) (to avoid summary judgment on claim that defendant was liable for his role in addressing a medical appeal, plaintiff must provide evidence that the denial of medically necessary care constituted deliberate indifference to his serious medical needs).  While Plaintiff alleges that Defendant Ali "and his supervisors" determined that the appeal should be processed as a regular appeal, the determination of how the appeal should be processed was made by the appeals coordinator prior to being assigned to Defendant Ali.  (Ali Dec. ¶ 4 , Exhibit A at 9.)

Plaintiff's appeal was not assigned to Defendant Ali until December 10, 2007.  (Ali Dec., Exhibit A at 7.)  By the time Defendant Ali received the appeal, Plaintiff had been seen by Defendant Araich on November 16, 2007.  (PSF, Exhibit D, p. 7.)  Defendant Araich ordered that Plaintiff receive analgesics as ordered and ice packs.  (Id.; Araich Dec, ¶ 11.)  Plaintiff pain medications were renewed on November 20, 2007.  Plaintiff was seen by Defendant Araich on November 27, 2007, and his Methocarbomol was renewed on November 28, 2007.  Plaintiff's sutures were removed on

December 4, 2007, and he had a follow-up appointment with Defendant Lewis on December 13, 2007. (Araich Dec., ¶ 11.) Plaintiff was interviewed by Defendant Ali on December 28, 2007. (Ali, Dec., ¶ 5.)  When Defendant Ali received and reviewed the Appeal, Plaintiff was receiving pain medication and post operative treatment.   Defendant Ali did not cause or contribute to a constitutional violation that occurred prior to his reviewing the appeal.  See George v. Smith, 507 F.3d 605, 609-610 (7th Cir. 2007).  Plaintiff has failed to set forth evidence to establish that Defendant Ali was deliberately indifferent to Plaintiff's medical needs in reviewing Plaintiff's inmate appeal.

Plaintiff alleges that Defendant Ali was deliberately indifferent by failing to conduct a thorough investigation and interview all relevant witnesses in regard to his complaint of lack of medical care following surgery.  Deciding which individuals to interview in reviewing an appeal of incidents that occurred in the past does not support a claim of deliberate indifference.  Only persons who cause or participate in a constitutional violation are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.  Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005) accord George, 507 F.3d at 609-10; see Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create liberty interests protected by the Due Process Clause, and so the alleged mishandling of [an inmate's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Although Plaintiff contends that the Appeal was not heard within the time limits established by CDCR, Section 1983 offers no redress for a violation of state law that amounts to the deprivation beyond that guaranteed by the federal Constitution, Sweaney, 119 F.3d at 1391, or for violating prison policy, Cousins, 568 F.3d at 1070.

Plaintiff has not raised any triable issues of material fact as to his Eighth Amendment medical care claim against Defendant Ali, and Defendant Ali is entitled to judgment as a matter of law.  The Court recommends that Defendant Ali's Motion for Summary Judgement be granted.

### 6.   **Defendant Zamora**

Defendants failed to bring a motion for summary judgment on Plaintiff's claims that

37

1   Defendant Zamora was deliberately indifferent by processing his medical appeals.  In the Order

2   Requiring Plaintiff to Either File an Amended Complaint or Notify the Court of Willingness to

3   Proceed on Claims Found to be Cognizable, issued September 1, 2009, a claim was only found

4   against Defendant Zamora for processing dental appeals.  In the First Amended Complaint, Plaintiff

5   alleged that Defendant Zamora was deliberately indifferent by processing his dental appeals and his

6   medical appeals grieving that Defendant Araich failed to provide adequate medical care.  A claim

7   was found based upon Defendant Zamora's processing of both the medical and dental appeals.  The

8   Court finds that, at this juncture, Plaintiff's claim against Defendant Zamora based upon her

9   processing of medical appeals should be addressed by the parties in a motion for summary judgment.

10  Accordingly, the Court recommends that Defendant Zamora be granted an opportunity to file a

11  motion for summary judgment on Plaintiff's claims that she was deliberately indifferent by

12  processing his medical appeals.

13  **IV.    Conclusion and Recommendation**

14          Based on the foregoing, IT IS HEREBY RECOMMENDED that:

15      1.      Defendants' Motion to Strike Plaintiff's Surreply, filed February 13, 2012, be

16              GRANTED;

17      2.      Plaintiff's Motion to File a Surreply, filed February 27, 2012, be DENIED, and

18              Plaintiff's Surreply, filed February 10, 2012, be STRICKEN FROM THE RECORD;

19      3.      Defendants' Motion for Summary Judgment be GRANTED IN PART AND

20              DENIED IN PART as follows:

21              a.      Defendant Araich's Motion for Summary Judgement be GRANTED;

22              b.      Defendant Mackey's Motion for Summary Judgement be GRANTED for her

23                      treatment of Plaintiff on February 15, 2007, and DENIED for her refusal to

24                      allow Plaintiff to see a physician on February 20, 2007;

25              c.      Defendant Robaina's Motion for Summary Judgment be DENIED;

26              d.      Defendant Dileo's Motion for Summary Judgment be DENIED;

27              e.      Defendant Ali's Motion for Summary Judgment be GRANTED; and

28      4.      Defendant Zamora be granted an opportunity to file a motion for summary judgment

on Plaintiff's claim that she was deliberately indifferent to his serious medical needs.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 23, 2012**          /s/ **Barbara A. McAuliffe**
                                UNITED STATES MAGISTRATE JUDGE